Transcipt of teacher's meeting

Transcript of Teacher's Conference, A Group Meeting

Transcribed by Gale Stewart 9/27/15

I think there are four voices, the Substitute Teacher (sub), an unidentified female, a second female that I have labeled P. Female, and a male. This transcript is not verbatim. Just close.


P. Female. ...Whoa.

 Not only that, but we need someone with secondary experience.

Right.

Because we are getting lost. They are hitting fifth grade and we don't know what to do. We are running ourselves.

Male Voice. If Connie came back...She is a witness. She has had elementary experience. She has worked at Williams, a really good elementary school. She has worked with us.

Sub.  I like Mabelvale. I've done a lot of subbing there. I need to be caught up. It is my preferred subbing place. I need to be caught up if you don't mind.  I know what STEM stands for.  Is it integrative project based? I was trying to look it up real quick. Project based, hands on? I am taking notes too.

Male. Yes. It is an acronym.

Female. It is an emphasis on science, technology, and math, but you need the reading and writing because all the technology goes along with it.

Female. Really and my research shows, it is a way of thinking, our textbook shows, we are not just doing worksheets. We are constructing knowledge. It is a constructivist approach.

Sub. It is constructivism. I've just learned about constructivism.

P. Female. I need to get out what you have just talked to her about. And that is [inaudible, but I think the name is ████████ And that is, we are as a team taking every single solitary thing [said with emphasis]. You can't get away with anything. Nothing. You can be a raving bitch to him.


Female. I am not letting him work with anyone. The other person does the work and he benefits.

P Female. Back to wall.

Sub. We are just giving up on him?

EXHIBIT

1

Female. Yeah. He has no respect or anything. We have been doing this since August. You have been doing it for two weeks.

Sub. So in the corner. Worksheets in the corner.

Female. We have been doing this shit since August....I'm done.

Female.  We have had meetings with his mother. Multiple, multiple times.

Sub. In the corner. Worksheets in the corner.

Male. Yeah. Eighth Period.

Sub. I don't know how I am going to control them. I will.They have senior-itis.

P. Female. Not senior-itis. They are just bad.

Sub. I have two...

He is not on a traveling classroom.

Female. He has a mouth on him.

Sub. Has this been approved? Does it have to be approved?

Male. No.

P. Female. I am not doing a darn thing for that kid. He is disrespectful. He has a mouth on him. He told me today. He is disrespectful. He is entitled.

Male. He asks you for work because he doesn't want to fail 8th grade again, but when it comes down to it, he has no initiative. So like today, he didn't turn in his homework. He emails.

Female. He is rude.

Male. Like today. He emails me and asks how can I get my grades up and then he doesn't have his late homework. I am not going to kill myself ad push myself. If you want to help yourself....

Female. I'm done.

Male. If you want to help yourself. I'll help you as much as I can.

P Female. He has a 15 in my class all four nine weeks.

Sub. A side-note. How many daily participation points do you give? I do.

P. Female. I don't give any. I don't give points for people acting right.

Female. You cant give them a zero if they are not there?

Sub. But don't they get suspended. That is how their grade is ….

Female. They are going to call you on the carpet for that….

P Female. Actually, you can.

Male. If they have been suspended more than once…The first one, you have to let them make up.

P female. I tell you Dr. Robinson. He will call you on the carpet for that.

Male. And I will pull her to the Student Handbook.

The student handbook says. The first one you get to make it up, but any subsequent suspensions if you are not there …

P female. Any unexcused or excused absences. It is a zero.

P. Female. But you cant give them a zero in participation if they haven't had a chance to participate.

Sub. Yes you can.

P female. I would fight that as a parent. So I can say, today, I am going to give you a hundred points in participation…so I say, after you are suspended, you are getting a zero out of a hundred.

Male. If you are doing an activity in your classroom and they are not there to do it, instead of putting an x in your gradebook, but a zero.

P female. Did you not get the last email. About the last one we had suspended….allowed to make up work.

Sub. B██████?

P female. ███████. {talk-over] Only when suspended?

P female. I understand that, but this is not their first rodeo/

Sub. I don't get any emails.

Sub. Please, but that doesn't mean, you've got to …come from upstairs. Even with email. I've gotten an email asking to let him make up his work.

Male. L████'s mom is done with him as well. She's been done.

P female. I understand that. She's been done.

Male. They are done.

P female. I'm done. He has been done since August. He has never ever ever done the right thing. Not once.

Male. We had one parent conference and that is all we needed. His mom, if he fails, he fails and he repeats his grade here.

Sub. Will he come here?

P. female. Not here. No. he will go to one of the bad schools. {cackles].

Male. He will go somewhere else. Dunbar, Henderson or Cloverdale. Somewhere.

P. Female. He wont be back here.

Male. He wont be back here. M▮▮▮▮▮▮▮y. He won't be back here. ▮▮▮▮▮▮e wont be back here.

Sub. So we have a 504 on that. We have to let him do his makeup work, but then he doesn't do it.

Male. He doesn't do it.

Female. I think I've only seen him once when he came back.

Male. He's back.

Sub. He's here today. I thought he had a doctor's …

Male. It doesn't matter.

Sub. I don't know what a 504 is. I'm sure I could read it.

Male. He has health issues. He has severe asthma. He misses a lot, but when you give him makeup work, he doesn't turn it in.

Sub. So he doesn't have an IEP like Will?

Male. No…so.

P female. It is still a mandated document. It is a legal document and you have to follow it.

Sub. I just haven't seen it…the email, can you forward it to me.

P female. I cant forward it to you.

Male. I don't know where it is at.

Sub. I'll have Miss Gail do it.

P female. I'm done because he has been done since August. I'm done. He never ever did the right thing, not once.

Male. We had one parent conference conference and that is all we needed to have because his mother said, if he fails, he fails.

Sub. And he repeats? Does he get his grade here?

Male. No. Dunbar, Cloverdale, Henderson. He won't be back here.

Female. He wont be back here.

P female. He is not welcome.

Male. _____ ██████. We won't be welcome here. ████████ won't be back here.

Female. What do we do about that. So we give him makeup work and he doesn't do it. I think I have only seen him once since ...been back. Like today. He didn't have his book.

Male. He is here today.

Sub. I thought he had a bunch of doctors ...

Male. He does, but he doesn't do the makeup.

Sub. I don't know what a 504 is.

Male. Basically, he has health issues. He has severe asthma. He has to miss a lot.

Sub. He doesn't have an IEP?

P female. It is still a mandated document. A legal document that you have to follow.

Sub. I'll have Miss Gail forward to me.

P female. You need to have Miss Christie to forward it.

Sub. Miss Gail forwarded the one about the grades because I am grading.

Female. As far as 504s and IEPs.

P. Female. I have it, but I'm not giving it to anybody.

Female. If you have it digitally?

Sub. I have a paper copy from Miss Ein or Klein. Eine. Rhein. I'm kind of dyslexic.

But I don't have a 504.

Sub. Does he have to ask? Do I have to present it to him in a folder. If he left …

P female. He's a fricking teenage.

Sub. Uhm. Yes I am giving out ten points a day on grades, participation, and some are losing

big time and they've known it since I got here,

Female. And that to me just sets them up to fail too.

Sub. Why?

Female. Because they are not going to do it and you know they are not going to do it.

P female. I do participation points randomly. Randomly.

Sub. Like when I give them a KWL. All I do is write a name on paper and hand it in. They get a
zero for a days participation and I've got proof.

P female. They are getting a zero on participation and the project …

Sub. KWL. That's what you know and what you want to know.

P female. I know what it is.

Sub. But that is participation. I have a hard copy. I want a hard copy to CYA myself.

P female. But with that group. You are setting yourself up for failure. And you are setting them
up for failure.

Sub. Give them 15 minutes. 10 minutes to know something and I don't do it. I don't see how that
sets them up for failure. You don't know these kids.

P female. You don't know these kids.

Sub. I am not supposed to know these kids.

P female. That is what I'm telling you. That is why we are asking you to go to this meeting…It is
what I'm telling you. I want then ti gave as good a possibility as …what I'm trying to say.

Sub interrupts. No one brought up ▓▓▓. Are we going up on ▓▓▓?

P female. He is close, but he is …

Sub. I am not giving up on ▓▓▓. He is making a heck of a turn around in my class. Since the
first …

He needs a ...

P female. Absolutely.

Sub. He has made a turn around.

P female. But the others are done. Absolutely. ▆▆▆▆ ▆▆▆▆ is done. So is his mom. And we have to do it as a team or it loses validity. There is no way he is going to ninth grade... But I will grade him accordingly. He has made a heck of a turn around. But the other one...

We have to do it as a team.

And debate...We have to do it as easy as possible. {inaudible].

Sub. I go a shot in my spine yesterday.

P female. If you feel sorry for him, if you do that, you play right into his hands.

Sub. But ▆▆▆? [inaudible].

P female. He wants the same benefit the other children get...He is not getting it...or he shouldn't get it anyway.

Children sounds.



Franklin



Roberts



Front of Roberts Elementary



DR. DON R.
ROBERTS
ELEMENTARY
SCHOOL



Roberts Elementary School Library, 1st Floor



Roberts Elementary School Library, 2nd Floor



Roberts Elementary School Cafetorium



Back of Roberts Elementary

<u>Cloverdale Photos:  2013-14 School Year</u>

Exposed electrical outlets, August, 2013



Exposed electrical outlets, May, 2014



Decayed ceiling in 6th grade building hall

August, 2013                                    May, 2014



EXHIBIT

3

Cracked ceiling in 6th grade hall, August, 2013



Decayed ceiling in breezeway

August, 2013                                               May, 2014





Breezeway

Missing and discolored ceiling tiles, August, 2013



May, 2014 (some tiles were replaced since August and stained again by May




Lockers in disrepair, 6th grade building

Holes in walls, August and May






Room 34 -Cracks in walls, peeling paint.

August, 2013                    November, 2013

 

Hallway by science classroom (near gym) blocked with surplus furniture, August, 2013.



**From:** Barth, Jay
**Sent:** Saturday, November 29, 2014 5:33 PM
**To:** Marla Johnson Norris
**Subject:** Re: summary

Thanks, Marla.  Just a few revisions that keep my options a bit more open.  Please ask that folks not forward this to anyone else and that I want to participate in fuller conversation about this complex issue before making a final decision on our direction.

I had a long talk with Jay Barth about the school situation and got a schooling on options. Here are the big take-aways.

1. Jay is deeply concerned about the LRSD and, despite the challenges it presents, agrees that a school take-over may well be the best path to turn things around for the students in the LRSD.

2. Jay is concerned also though that school takeover is not a panacea.  We still need to work hard to fight for the pre-school educational services, reading by the 3rd grade, in-school health initiatives, after school programming, etc.  Indeed, he wonders whether commitments to make advances in those areas might be part of a state takeover "package."

3. State takeover puts a lot of power in the hands of the new Commissioner.  If that were to be an independent visionary leader (and he had some ideas) and not just a political appointee, then he would feel a lot more comfortable with state takeover.  Does anyone know who is being put forth for this post?  We should discuss this with Asa.

4. There are several details related to state school take over that are important to Jay.  I think

    these are valid points that need to be addressed:

a. He feels that there may also be an opportunity now to deal with the district lines in the County.  He had a conversation with John Riggs about this, so John, please shed some light. He mentioned that if there is redistricting, that new elections have to occur and other items get reset.  He feels this is an important issue and possibly we should seriously consider a South of the River SD along with state takeover (the state already has control of PCSSD, of course).

b. Jay has voted in favor of many of the charter schools proposed since he's been on the State Board.  He is not opposed to charter schools in principal.  He does think though that they need some oversight in the following areas: (1) Students should not be expelled without any recourse; (2) The school's performance cannot be accurately measured if they remove students who are underperforming; (3) They should present a truly innovative approach to delivering curriculum.

c. Jay leans very favorably toward Conversion Charters as opposed to Open Enrollment Charters (although he is not opposed to open enrollment in certain instance, as noted above).  Arkansas is unique in that we can have both.  He believes that what Dexter is proposing, where the LRSD maintains control of the transportation and food services and then outsources the curriculum/student achievement services is probably a Conversion Charter model.  This model could help us make sure all students are cared for and yet the Charter School gets to do what it does best.

d. Jay is concerned that some Open Enrollment Charters are not that good and that school reform advocates paint those who ask important questions about design, governance, and performance with a broad brush of 'being against school choice or charter schools'.  He'd like to see this changed, so important questions can be asked without such labeling.  I think we'd all agree that not all charter school companies are equal.

**Jay Barth**

EXHIBIT
4

**Jay Barth**
M.E. and Ima Graves Peace Distinguished Professor of Politics
Bill and Connie Bowen Odyssey Professor
Director of Civic Engagement Projects
Hendrix College
1600 Washington Avenue
Conway, AR 72032
(o) 501.450.1319
(m) 501.944.9453

**From:** Marla Johnson <mjohnson@aristotle.net>
**Date:** Sunday, November 30, 2014 at 10:01 AM
**To:** Jay Barth <barth@hendrix.edu>
**Subject:** summary

Here's my summary… Could I send this to Hussman or Gary Newton? If not, okay. I will just send to my key troop. I think some of this might make you squirm to see it in writing, so let me know. ;-) MJ

005.19

Arkansas Department of Education Emergency Rules Governing the
Arkansas Comprehensive Testing, Assessment and Accountability Program (ACTAAP)
and the Academic Distress Program
~~January 2013~~

_____

1.0     Regulatory Authority

1.01    These Rules shall be known as the Arkansas Department of Education
        Emergency Rules Governing the Arkansas Comprehensive Testing,
        Assessment and Accountability Program (ACTAAP) and the Academic
        Distress Program.

1.02    The State Board of Education promulgated these Rules pursuant to
        ~~implementation of~~ Ark. Code Ann. §§ 6-11-105, 6-15-401 et seq., 6-15-
        2009, and 25-15-204 and Acts 600, 1073, 1081 and 1429 of 2013.

1.03    These Rules ~~have been amended to~~ reflect the decision of the United
        States Department of Education (~~USDOE~~ US Ed) to grant flexibility to the
        Arkansas Department of Education (ADE) from certain provisions of the
        Elementary and Secondary Education Act (ESEA).  As indicated
        throughout these Rules, certain provisions of these Rules shall only apply
        during time periods designated by the ~~USDOE~~ US Ed for which the ADE
        receives flexibility from certain provisions of ESEA.

1.04    These Rules include the applicable requirements formerly contained
        within the Arkansas Department of Education Rules Governing Public
        School End-of-Course Assessments and Remediation.

2.0     Purposes of Rules

2.01    To develop a single comprehensive testing, assessment and
        accountability program, which applies to and governs all public schools
        and public school districts in Arkansas.

2.02    To develop a single comprehensive testing, assessment and
        accountability program which utilizes the most current and effective
        testing, evaluation, and assessment research information designed to
        achieve the following purposes:

        2.02.1 Set clear academic standards that are periodically reviewed and
               revised;

        2.02.2 Establish professional development standards for all
               administrators, teachers and instructional support personnel;

        2.02.3 Establish expected achievement levels;

        2.02.4 Report on student achievement and other indicators;



EXHIBIT
5

2.02.5 Provide evaluation data;

2.02.6 Recognize academic success and failure;

2.02.7 Apply awards and sanctions; and

2.02.8 Comply with current federal and state law and State Board rules and regulations.

2.03 To ensure that all students in the public schools of Arkansas have an equal opportunity to demonstrate grade-level and subject area academic proficiency through the application of knowledge and skills in the core academic subjects consistent with state curriculum frameworks, performance standards and assessments.

2.04 To improve student learning and classroom instruction and to support high academic standards for all students, including identifiable subgroups, by establishing the provisions, procedures and requirements for the student assessment program.

2.05 To require point-in-time intervention when it is determined that a student(s) is not performing at grade level or subject area academic proficiency.

2.06 To outline testing and assessment security and confidentiality requirements.

2.07 To establish a program to identify, evaluate, assist and advise public schools and public school districts in academic distress.

3.0 Definitions – For the purpose of these Rules, the following terms mean:

3.01 "Academic Content Standards" – standards that are approved by the State Board of Education and that set the skills to be taught and mastery level for each grade and content area.

3.02 "Academic Distress:"

3.02.1 A classification assigned to any public school district:

3.02.1.1 In which 49.5% or less of its students achieve proficient or advanced in math and literacy on the state-mandated criterion referenced assessments administered in that district for the most recent three (3) year period; or

3.02.1.2 Has a Needs Improvement (Priority) school within the school district that has not made the progress required under the school's Priority Improvement Plan (PIP).

005.19

3.02.2  A classification assigned to any public school:

    3.02.2.1    In which 49.5% or less of its students achieve proficient or advanced in math and literacy on the state-mandated criterion referenced assessments administered in that district for the most recent three (3) year period; or

    3.02.2.2    Is a Needs Improvement (Priority) school that has not made the progress required under the school's Priority Improvement Plan (PIP).

3.02.2̲3̲ The ADE shall re-establish the thresholds̲ listed in Sections 3.02.1̲.1̲ and 3.02.2 of these Rules when the Partnership for Assessment of Readiness for College and Careers (PARCC) assessments become fully operational.

3.03    "Academic Improvement Plan (AIP)" –  a plan detailing supplemental or intervention and remedial instruction, or both, in deficient academic areas for any student who is not proficient on a portion or portions of the state-mandated Arkansas Comprehensive Assessment Program. Academic improvement plans shall be created and implemented by appropriate teachers, counselors, and any other pertinent school personnel. All academic improvement plans shall be reviewed annually and revised to ensure an opportunity for student demonstration of proficiency in the targeted academic areas on the next state-mandated Arkansas Comprehensive Assessment Program. A cumulative review of all academic improvement plans shall be part of the data used by the school in creating and revising its comprehensive school improvement plan. All academic improvement plans shall be subject to review by the Department of Education.

    NOTE:  For the purposes of these Rules, "Academic Improvement Plan (AIP)" and "Individualized Academic Improvement Plan (IAIP)" may be used interchangeably.

3.04    "ACT" – the ACT assessment for college placement administered by ACT, Inc.

3.04̲5̲    "Adequate Yearly Progress" – the level of academic performance required of public schools or school districts on the state-mandated augmented criterion-referenced, or norm-referenced assessments and other indicators as required in the Arkansas Comprehensive Testing, Assessment, and Accountability Program, which shall comply with the Elementary and Secondary Education Act as reauthorized in the No Child Left Behind Act of 2001.

3.06    "Advanced Placement Test" – the test administered by the College Board for a high school preparatory course that incorporates the topics specified

by the College Board on its standard syllabus for a given subject area and is approved by the College Board.

3.05 ~~"Alternative Education Intervention Program" – A special instructional program for students who have been retained for two consecutive years. The program shall include research-based learning opportunities and instructional strategies.~~

3.0~~6~~7 "Approved Early Reading Assessments" – Those assessments that identify students' strengths and weaknesses in all of the elements of reading as described in the Report of the National Reading Panel.

3.0~~7~~8 "Approved Intensive Reading Program" – Programs of high-quality instruction that include the essential elements of reading described in the Report of the National Reading Panel.

3.0~~8~~9 "Annexation" – The joining of an affected school district or part of the school district with a receiving district under Ark. Code Ann. § 6-1~~5~~3-1401 et seq. or § 6-13-1601 et seq.

3.~~09~~10 "Arkansas Comprehensive Assessment Program" –The testing component of Arkansas Comprehensive, Testing, Assessment and Accountability Program, which shall consist of: (1) developmentally appropriate, augmented, criterion-referenced, or norm-referenced assessments in kindergarten through grade twelve (K-12) as determined by the State Board; (2) Any other assessments as required by the State Board; 3)other assessments that are based on researched best practices as determined by qualified experts that would be in compliance with federal and state law; and (4) end-of-course examinations for designated grades and content areas, and the high school literacy assessment.

3.~~10~~11 "Arkansas Comprehensive Testing, Assessment and Accountability Program" – a system of measurement and reporting designed to ensure that all students in the public schools of this state demonstrate academic achievement through the application of knowledge and skills in core academic subjects consistent with state curriculum frameworks and performance standards. During the time periods designated by the ~~USDOE~~ US Ed for which the ADE may receive flexibility from certain provisions of ESEA as set forth in Section 13.00 of these Rules, the measurement system will ensure that all students in the public schools of Arkansas demonstrate performance and growth toward College and Career Readiness.

3.~~11~~12 "Arkansas Comprehensive School Improvement Plan (ACSIP)" – the individual school's comprehensive plan developed by a local school team and based on priorities indicated by assessment and other pertinent data and designed to provide an opportunity for all students to demonstrate proficiency on all portions of the state-mandated Arkansas Comprehensive Assessment Program. This plan shall be reviewed annually by the district and monitored by the Arkansas Department of Education in accordance with Ark. Code Ann. § 6-15-426.

005.19

3.13 "Assessment" means an examination instrument designed to measure certain levels of knowledge; as measured by established requisite scale scores, for those academic courses that are the subject of end-of-course testing as required by these Rules.

3.1214 "Augmented Test" – An assessment required by state statute, rule or regulation which combines both criterion-referenced and norm-referenced instruments.

3.1315 "Awards" – financial or other recognition of a public school structured to recognize schools that demonstrate and maintain high performance over time and to recognize schools that demonstrate growth on the state-mandated indicators. Awards also can be used to highlight individual schools so that their practices can be adopted in other schools and districts across the state.

3.1416 "Benchmarks/Grade-Level Benchmarks" – Academic Content Standards and/or grade-level statements of what a student should know and be able to do. The Grade-Level Benchmarks provide guidance to classroom teachers in planning instruction aligned with the Academic Content Standards.

3.1517 "Board" or "State Board"– The Arkansas State Board of Education.

3.18 "College and career readiness" means the acquisition of the knowledge and skills a student needs to be successful in future endeavors, including:

3.18.1 Successfully completing credit-bearing, first-year courses at a postsecondary institution; and

3.18.2 Embarking on a chosen career.

3.19 "College and career readiness assessment" means a set of criterion-referenced assessments of a student's acquisition of the knowledge and skills the student needs to be successful in future endeavors, including credit-bearing, first-year courses at a postsecondary institution, such as two-year or four-year college, trade school, or technical school, or to embark on a career.

3.1620 "Consolidation" – The joining of two (2) or more school districts or parts of the school districts to create a new single school district under Ark. Code Ann. § 6-153-1401 et seq. or § 6-13-1601 et seq.

3.1721 "Criterion-Referenced Test (CRT)" – an assessment required by state statute, rule or regulation which is designed by the State to measure student performance/achievement on the State's Academic Content Standards.

3.1822 "Department" or "ADE" – The Arkansas Department of Education.

3.~~19~~23   "District Improvement Plan" – a district-wide plan coordinating the actions of the various comprehensive school improvement plans within a school district. The main focus of the district improvement plan shall be to ensure that all students demonstrate proficiency on all portions of state-mandated Arkansas Comprehensive Assessment Program.

3.~~20~~24 "Early Intervention" – short-term, intensive, focused, individualized instruction developed from ongoing, daily, systematic diagnosis that occurs while a child is in the initial, kindergarten through grade one (K -1), stages of learning early reading, writing, and mathematical strategies to ensure acquisition of the basic skills and to prevent the child from developing poor problem-solving habits that become difficult to change. The goal is to maintain a student's ability to function proficiently at grade level.

3.~~21~~25   "Elementary School" – public school(s) having some combination of grades kindergarten through four (K – 4).

~~3.22   "End-of-Course Exam" – a criterion-referenced assessment taken upon the successful completion of a course of study to determine whether a student demonstrates, according to a requisite scale score established by rule of the Board, attainment of necessary knowledge and skills tEnd-of-Course exams include both general end-of-course assessments and high-stakes end-of-course assessments as further defined herein and as further explained in the Arkansas Department of Education Rules Governing End-of-Course Assessments and Remediation.~~

3.~~23~~26   "Essential Elements – Early Reading" Comprehension – Ability to understand and communicate; Decoding and Word Recognition (Phonics) – Ability to match the letters of written language and the individual sounds of spoken language in order to read and write words; Fluency – Ability to read text accurately, and with expression, volume, phrasing, smoothness and appropriate pace; Phonemic Awareness – Ability to hear and manipulate the sounds of spoken language; Vocabulary – Ability to understand words and their meanings in order to communicate and comprehend effectively.

3.~~24~~27 "Grade Level" – appropriate grade classification indicated by the performance of a student (or group of students) at the proficient or advanced level on state-mandated Arkansas Comprehensive Assessment Program tests.

3.~~25~~28 "~~General~~ End-of-Course Assessment" – a criterion-referenced assessment taken ~~upon successful completion of~~ during a course of study set by the State Board of Education:

(a) to determine whether a student demonstrates, according to a requisite scale score established by rule of the State Board, attainment of sufficient knowledge and skills to indicate a necessary and satisfactory mastery of the subject level content in that end-of-course assessment; and

005.19

(b) for which failure to meet that requisite scale score requires sufficient remediation before a student is entitled to receive full academic credit for the course.

(c) Further guidance concerning the administration and remediation of general end-of-course assessments may be found in the Arkansas Department of Education Rules Governing Public School End-of-Course Assessments and Remediation.

3.26<u>29</u> "High School" –grades nine through twelve (9-12).

3.27<u>30</u> "High School Literacy Assessment" – an end-of-level literacy assessment given to all students in grade eleven (11).

3.28 "High Stakes End-of-Course Assessment" – a criterion-referenced assessment taken upon the successful completion of both the Algebra I and the English II course of study under Ark. Code Ann. § 6-15-433(b)(3)(A)(iii):

(a) to determine whether a student demonstrates, according to a requisite scale score established by rule of the State Board, attainment of sufficient knowledge and skills to indicate a necessary and satisfactory passing standard of the subject level content in that particular end-of-course assessment; and

(b) for which failure to meet the requisite scale score requires that the student shall not receive academic credit for the course of study for which the assessment was taken until the student meets the requisite scale score on the initial, a subsequent, or an alternative high-stakes end-of-course assessment as allowed or required by Arkansas law or by State Board rules.

(c) Further guidance concerning the administration and remediation of high-stakes end-of-course assessments may be found in the Arkansas Department of Education Rules Governing Public School End-of-Course Assessments and Remediation.

3.31 "Individualized Academic Improvement Plan (IAIP)" – a written plan detailing supplemental or intervention and remedial instruction, or both, in deficient areas for any student who has not met the requisite scale score on an end-of-course assessment.

NOTE:  For the purposes of these Rules, "Academic Improvement Plan (AIP)" and "Individualized Academic Improvement Plan (IAIP)" may be used interchangeably.

3.32 "Individualized Education Program (IEP)" – a written statement for each child with a disability that is developed, reviewed, and revised in a meeting in accordance with 34 C.F.R. 300.320 through 300.324.

3.~~29~~33 "Intensive Reading Improvement Plan (IRI)" – An intervention program for any K-2 student identified with substantial reading difficulties.

3.34 <u>"International Baccalaureate Assessment" – an assessment administered by the International Baccalaureate Organization for a course offered under the International Baccalaureate Diploma Program.</u>

3.~~30~~35 "Longitudinal Tracking" –tracking individual student yearly academic achievement gains based on scheduled and annual assessments.

3.~~31~~36 "Middle School" or "Middle Level"– grades five through eight (5 – 8).

3.~~32~~37 "No Child Left Behind Act" – the No Child Left Behind Act of 2001 as signed into federal law on January 8, 2002.

3.~~33~~38 "Norm-Referenced Test (NRT)" – an assessment required by state law, rule or regulation to measure the performance/achievement of Arkansas students relative to the achievement of students who comprised the norm or standardization group for a particular commercial instrument, ~~including~~ <u>which may include</u> the assessments developed under the Partnership for Assessment of Readiness for College and Careers (PARCC).

3.~~34~~39 "Parent" – a parent, parents, legal guardian, a person standing in loco parentis, or legal representative, as appropriate, of a student, or the student if the student is eighteen (18) years of age or older.

3.~~35~~40 "Participation in Remediation" - The amount of student involvement required in a student academic improvement plan that addresses those deficiencies for that student.

3.~~36~~41 "Pass Rate" – The pass rate for the Benchmark Exams and the developmental appropriate assessments for K – 2 shall be proficiency. ~~However, the pass rate for end-of-course and high school literacy shall be those scores established and independently approved by the State Board of Education. (See 6.04 for the proficiency definition)~~

3.~~37~~42 "Point-in-Time Intervention and Remediation" – intervention and remediation applied during the academic year upon the discovery that a student is not performing at grade level.

3.~~38~~43 "Public School District/Public School" – those school districts and schools (including open-enrollment charter schools) created pursuant to Title 6 of the Arkansas Code and subject to the Arkansas Comprehensive Testing, Assessment and Accountability Program specifically excluding those schools or educational programs created by or receiving authority to exist under §6-15-501; §9-28-205, and §12-29-301 through §12-29-310, or other provisions of Arkansas law.

3.~~39~~44 "Reconstitution" – a reorganization intervention in the administrative unit or governing body of a public school district, including without limitation the suspension, reassignment, replacement, or removal of a current

superintendent or the suspension, removal, or replacement of some or all of the current school board members, or both.

3.40~~45~~ "Remediation" – a process of using diagnostic instruments to provide corrective, specialized supplemental instruction to help a student in grades two through four (2-4) overcome academic deficiencies. For students in grades five through twelve (5-12), remediation shall be a detailed, sequential set of instructional strategies, implemented to remedy any academic deficiencies indicated by below-basic or basic performance on the state-mandated augmented, criterion-referenced, or norm-referenced assessments.  Remediation shall not interfere with or inhibit student mastery of current grade level academic learning expectations.

3.41~~46~~ "Safe Harbor" – An alternate method of demonstrating Adequate Yearly Progress under the No Child Left Behind Act determined by decreasing the percent of students not performing at the proficient level on the Criterion Referenced Assessments by at least ten percent. Safe Harbor can only be applied if the school meets the secondary indicator condition and tests 95% or more of eligible students. Safe harbor shall not apply during the time periods designated by the ~~USDOE~~ US Ed for which the ADE may receive flexibility from certain provisions of ESEA as set forth in Section 13.00 of these Rules.

3.42~~47~~ "Sanction" – intervention by the state to assist teaching and learning at a public school or a public school district that fails to meet expected performance goals on the state-mandated criterion-referenced assessments and/or other indicators.

3.48 "SAT" – the standardized college entrance examination administered by the College Board.

3.43~~49~~ "School Improvement" – the initial classification applied to a school that fails to meet adequate yearly progress for two successive years.  During the time periods designated by the ~~USDOE~~ US Ed for which the ADE may receive flexibility from certain provisions of ESEA, the classifications and interventions for schools in need of improvement shall be as set forth in Section 13.00 of these Rules.

3.44~~50~~ "Secure Examination or Assessment" – an assessment instrument, materials or other student achievement evaluation method required by State statute, rule or regulation that is administered to assess student performance or achievement and takes place on the dates specified on the testing/assessment calendar developed by the Commissioner of the Department.

3.45~~51~~ "Starting Point" – a specific figure for grade-level clusters K- 5, 6-8, and 9-12 in the content areas of literacy and mathematics which was derived by determining the school at the 20th percentile in the state based on total enrollment, among all schools ranked by the percentage of students at the proficient level, using data for the 2001-2002 school year or subsequent year for which there is a recalculation.

3.46<u>52</u>   "Substantial Reading Deficiency" – a determination for first and second grade students who score in the Below Basic Category on the State Reading Assessment in the previous school year and for kindergarten students who are rated as Delayed in both oral communication and written language on the Uniform Reading Scale (URS).

3.47<u>53</u>   Uniform School Readiness Screening" - uniform, objective evaluation procedures that are geared to either kindergarten or first grade, as appropriate, and developed by the State Board and specifically formulated for children entering public school for the first time.

~~3.48   "Value-Added Computations of Student Gains" – statistical analyses of the educational impact of the school's instructional delivery system on individual student learning using a comparison of previous and post student achievement gains against a national cohort.~~

4.0   Academic Content Standards

4.01   The Board shall establish clear, specific, challenging academic content standards, which define what students shall know and be able to do in each content area.  Instruction in all public schools shall be based on these academic content standards.

4.02   The Board shall establish a schedule for periodic review and revision of academic content standards to ensure that Arkansas academic content standards are rigorous and equip students to compete in the global workforce. For each review, the Department will provide the following:

4.02.1 Study and consideration of academic content standards from across the nation and international levels as appropriate;

4.02.2 Study and consideration of evaluations from national groups or organizations as appropriate;

4.02.3 Revisions by committees composed of Arkansas teachers and instructional supervisory personnel from public schools, assisted by teachers from institutions of higher education;

4.02.4 Review and input by the Departments of Higher Education and Career Education as well as community members; and

4.02.5 Public dissemination of revised academic content standards at the Board meeting and on the Department web site.

4.03   The Board shall provide for external review of academic content standards by nationally recognized content experts in the discipline/area under consideration.

4.04   The Board shall establish a clear, concise system of reporting the academic performance of each school on the state's mandated

005.19

augmented criterion-referenced or norm-referenced assessments, that conform with the requirements of current state and federal law.

4.05    Academic standards for every level of the grades kindergarten through twelve (K-12) education system and education financial resources shall be aligned with student performance expectations at each level of the grades kindergarten through twelve (K-12) education system.

4.06    The State Board voted to participate in the Common Core State Standards for English Language Arts (ELA) and Mathematics in July 2010.  The Common Core State Standards can be found at:

http://www.corestandards.org/the-standards

The Common Core State Standards for ELA and Mathematics, as they existed on July 9, 2012, are hereby incorporated into these Rules by reference.

5.0    Arkansas Comprehensive Assessment Program

The Board shall establish a statewide assessment system for grades K through 12 to be implemented in each public school in the State by the Department. All districts shall comply with the requirements of the assessment system. Failure to do so shall result in a recommendation to the Board for Probationary status or loss of accreditation as set out in the Standards for Accreditation, or for other intervention or sanction as allowed or required by these rules, state or federal law.  The Arkansas Department of Education shall transition to the PARCC assessments by the 2014-2015 school year.

School district boards of directors shall not establish school calendars that jeopardize or limit the valid testing and comparison of student learning gains.

Every student attending an Arkansas public school shall participate in the statewide program of educational assessments required in Ark. Code Ann. §§ 6-15-419, 6-15-433, 6-15-2009 and established by the State Board.

5.01    Kindergarten, Grade One and Grade Two

5.01.1 The Board shall adopt and the Department shall implement a developmentally appropriate uniform school readiness screening to validate a child's school readiness as part of a comprehensive evaluation design  The Department shall require that all school districts administer the uniform school readiness-screening to each kindergarten student in the district upon the student's entry into kindergarten. Children who enter public school for the first time in first grade must be administered the uniform school readiness screening developed for use in the first grade.

5.01.2 Kindergarten, Grades 1 and 2: The Department shall select a developmentally appropriate assessment to be administered to all

students in first grade and second grade in reading and mathematics.

5.02    Criterion-Referenced Tests - Grades three through eight and high school

    5.02.1 The Department shall develop and implement an augmented, criterion-referenced, or norm-referenced assessment as follows: (1) Grades three (3) through eight (8) which measures application of knowledge and skills in ~~reading and writing literacy~~ English language arts and mathematics and science in Grades 5 and 7; (2) End-of-Course testing in Algebra I, Geometry and Biology; (3) High school literacy that measures application of knowledge and skills in ~~reading and writing literacy~~ English language arts; and (4) social studies as funds are available and approved by the State Board of Education.~~; and (5) for the 2014-2015 school year and thereafter, End-of-Course testing in English II~~.

    5.02.2 All criterion-referenced assessments shall be based on the Arkansas Curriculum Frameworks and Academic Content Standards.

    5.02.3 All students in Grades 3 – 8 as well as all students enrolled in courses for which End-of-Course assessments are administered, shall take the criterion-referenced assessments on the testing dates established by the Department. This requirement includes the high school literacy assessment.  This authority shall include field testing and any other requirements needed to establish fully-developed assessment instruments and methodologies.

    5.02.4 Each school district shall administer augmented criterion-referenced assessments to its students according to procedures established by the Commissioner of Education and specified in the applicable assessment administration materials.

    5.02.5 Accounting for Students with Disabilities and Limited English Proficient Students

        5.02.5.1       Each student in the specified grades or courses shall participate as outlined in the test coordinator's handbook. A student shall participate in the Arkansas Alternate Assessment Program only upon the formal determination of the student's individual education program (IEP) committee, as documented in the student's individual educational program.

        5.02.5.2       The Individual Education Program (IEP) committee shall determine whether participation in the standard state assessment program is appropriate for students with IEPs. Students with disabilities for whom it is deemed inappropriate to take the

005.19

standard state assessments (augmented benchmarks, ~~General and High-Stakes~~ End-of-Course, and High School Literacy) with the established accommodations shall participate in the Arkansas Alternate Assessment Program following the guidelines established by the Board.

5.02.5.3 Scores for students with disabilities shall be reported with other assessment results from the school.

5.02.5.4 ~~LEP~~ English Learners (ELs) ~~students~~ shall participate in all required criterion referenced assessments. ~~LEP students~~ ELs may access state approved accommodations provided such accommodations have been recommended by the language proficiency assessment committee and are used regularly in classroom instruction and assessment.

5.02.5.5 ~~LEP students~~ ELs with less than one year in a U.S. school will not be required to take the State required literacy benchmark test or the High School Literacy Assessment. Districts may exercise this option. ~~LEP students~~ ELs must take the appropriate mathematics and science tests.

5.02.6 End-of-Course Assessments

5.02.6.1 Every student attending an Arkansas public school in Arkansas shall participate in the actual course and statewide program of end-of-course assessments as designated by the State Board.

5.02.6.2 Every student required to participate in the statewide program of educational assessments required by Ark. Code Ann. § 6-15-2009 shall not receive credit on his or her transcript for Algebra, Geometry, Biology, or any other course that requires an end-of-course assessment for which the student has not received the requisite scale score on a general end-of-course assessment, until the student is identified as having participated in remediation through an individual academic improvement plan.

5.02.6.3 The individual academic improvement plan shall include remediation activities focuses on those areas for need for students who failed to meet the requisite score on an end-of-course assessment.

005.19

5.02.6.4       For the purpose of an end-of course assessment, remediation does not require that a student retake a subsequent end-of-course assessment in order to receive academic credit for a course.

5.02.6.5       The end-of-course assessment program shall be maintained in such a manner as to meet the requirements of state and federal law, including the full range of students with disabilities.

5.02.6.6       The superintendent of each public school district shall be responsible for the proper administration of Ark. Code Ann. § 6-15-2009 and these Rules to implement the requirements of Ark. Code Ann. § 6-15-2009.

5.02.6.7       To the extent that a public school district is determined to have knowingly failed to administer the provisions of applicable law or these Rules, the superintendent's license shall be subject to probation, suspension, or revocation under Ark. Code Ann. § 6-17-410.

5.02.6.8       The ADE shall establish and publish by Commissioner's Memo each school year an end-of-course assessment cycle for end-of-course assessments that shall be strictly followed by school districts unless a school district has received a written waiver from the ADE because of a catastrophic occurrence.

5.02.6.9       The ADE shall prepare and develop the form of end-of-course assessments along with any and all documents, manuals, forms and protocols necessary for the proper administration, completion, submission and scoring of the assessment.  The assessment shall be composed of sections that may include both multiple choice and open-response test items.

5.02.6.10     All Arkansas laws and ADE rules governing test administration, security and confidentiality that apply to examinations given to Arkansas public schools from K-12 grade shall apply in full to all end-of-course assessments and alternative assessments set forth under Ark. Code Ann. § 6-15-2009.

5.02.6.11     The ADE shall take steps to ensure that the end-of-course assessments are properly aligned with state standards and that professional development

training is available for teachers teaching courses for which an end-of-course assessment is required.

5.02.6.12    In administering the assessments under Ark. Code Ann. § 6-15-2009 and these Rules, the school district shall provide state-approved accommodations for students with state-recognized disabilities and for English language learners as allowed by law and ADE rules.

5.02.6.13    The ADE shall establish and promulgate by way of these Rules the requisite scale score requirement for any Arkansas public school student taking each end-of-course assessment and alternative assessment.

5.03    Norm-Referenced Tests

5.03.1 The Board shall adopt a norm-referenced test to be administered in grade 3 through grade 9 in mathematics and reading and in science at grades 5 and 7, which shall be administered by the Department annually.

5.03.2 Each school district shall administer the norm-referenced tests to its students according to procedures established by the Department and specified in the applicable test administration materials.

5.04    National Assessment of Educational Progress

5.04.1 Selected schools shall participate in any and all components of the National Assessment of Educational Progress (NAEP).

5.04.2 Any school that fails to participate in the administration of any NAEP assessment shall be reported to the Board and may be subject to probationary status as set out in the Standards for Accreditation.

5.05    Test Administration

5.05.1 The Department shall establish mandatory training sessions for local district testing coordinators and other appropriate school personnel to ensure understanding of the administration of assessments and effective use of assessment reporting data to improve classroom instruction and learning to provide program evaluation;

5.05.2 The superintendent or his/her designee in each school district shall be responsible for coordinating all local assessment activities including:

5.05.2.1 Scheduling testing times of all affected campuses according to the testing calendar developed by the Department;

5.05.2.2 Ensuring that security is maintained as specified in the appropriate testing administration materials;

5.05.2.3 Ensuring that all district personnel involved in the testing have been properly trained as specified by the Department;

5.05.2.4 Ensuring that all testing instruments are administered to all students according to the procedures established by the Commissioner of Education and specified in the applicable assessment administration materials;

5.05.2.5 Ensuring that all assessment documents and student identification information are properly and accurately coded;

5.05.2.6 Attesting whether ALL students have participated in the appropriate grade-level assessment(s); and

5.05.2.7 Recommending for adoption by local school boards a school calendar that in no way jeopardizes or limits the valid testing and comparison of students' learning gains.

5.05.3  The appropriate test administration materials shall specify any allowable accommodations available to students participating in the administration of standard state assessments.

5.05.4  All students enrolled in a State-tested grade shall be accounted for in the Arkansas Comprehensive Assessment Program.

5.06    A Technical Advisory Committee composed of nationally-recognized testing experts and psychometricians shall be selected by the Commissioner of Education and shall advise the Department in all technical aspects of the assessment system.

5.07    Test Security and Confidentiality

5.07.1 Violation of the security or confidential integrity of any test or assessment is prohibited.

5.07.2 The Board shall sanction a person who engages in conduct prohibited by this section. Sanctions shall be considered and imposed in compliance with the Department's rules Governing Alleged Testing Improprieties or in the Department's Rules Governing Background Checks and License Revocation, as appropriate.  Additionally, the Board may sanction a school district or school, or both, in which conduct prohibited in this section occurs. Sanctions imposed by the Board may include without limitation one (1) or more of the following:

5.07.2.1     Revocation, suspension, or probation of an individual's license,

5.07.2.2     Issuance of a letter of reprimand to a licensed individual to be placed in his or her state ~~personnel~~ professional licensure file;

5.07.2.3     Additional training or professional development to be completed by a licensed individual within the time specified;

5.07.2.4     Additional professional development to be administered by the school district or open-enrollment public charter school to all licensed school district personnel involved in test administration within the time specified;

5.07.2.5     Issuance of a letter of warning to the school district or open-enrollment public charter school; and

5.07.2.6     Establishment of a school district or open-enrollment public charter school plan containing strict test security guidelines that will implement procedures to ensure the security and confidential integrity of all assessment instruments.

5.07.2.7     Professional development required pursuant to this section as a result of violating test security or confidentiality may be in addition to professional development required for licensure.

5.07.3   Procedures for maintaining the security and confidential integrity of all testing and assessment instruments and procedures shall be specified in the appropriate test or assessment administration instructions. Conduct that violates the security or confidential integrity of a test or assessment is defined as any departure from either the requirements established by the Commissioner of Education for the administration of the assessment or from the procedures specified in the applicable test administration materials. Conduct of this nature may include, but is not limited to, the following acts and omissions:

5.07.3.1     Viewing secure assessment materials;

5.07.3.2     Duplicating secure assessment materials;

5.07.3.3     Disclosing the contents of any portion of secure assessment materials;

5.07.3.4    Providing, suggesting, or indicating to an examinee a response or answer to any secure assessment items;

5.07.3.5    Aiding or assisting an examinee with a response or answer to any secure assessment item;

5.07.3.6    Changing or altering any response or answer of an examinee to a secure assessment item;

5.07.3.7    Failing to follow the specified testing procedures or to proctor students;

5.07.3.8    Failing to administer the assessment on the designated testing dates;

5.07.3.9    Encouraging or assisting an individual to engage in the conduct described herein;

5.07.3.10    Failing to report to the appropriate authority that an individual has engaged in conduct set forth is this section;

5.07.3.11    Failing to follow the specified procedures and required criteria for alternate assessments; or

5.07.3.12    Failing to return the secured test booklets to the testing company in a timely manner.

5.07.4 The superintendent of each school district shall develop procedures to ensure the security and confidential integrity of all assessment instruments and test items. The superintendent shall be responsible for immediately notifying the Department in writing of conduct that violates the security or confidential integrity of an examination or assessment.

6.0    Student Performance Levels

6.01    The Board shall establish four (4) performance levels for each criterion-referenced assessment administered as part of ACTAAP.  The Board shall establish five (5) performance levels for the Alternate Assessment for Students with Disabilities as part of ACTAAP. Those performance levels shall be: (1) Not Evident; (2) Emergent; (3) Supported Independence; (4) Functional Independence; and (5) Independent. Performance levels shall be established for mathematics, reading/language arts and science independently. Additionally, the Board shall establish a pass/proficiency rate for each high-stakes end-of-course assessment.

6.02    The Board shall establish four (4) performance levels for Grades K-2 for the norm-referenced assessment administered as part of the Arkansas

005.19

Comprehensive Assessment Program for reading and mathematics. The following numerical scores define those performance levels.

| Mathematics Norm Referenced Assessment standard score cut scores* | | | | |
|---|---|---|---|---|
| Grade | Below Basic | Basic | Proficient | Advanced |
| K | 0-120 | 121-128 | 129-136 | 137-400 |
| 1 | 0-134 | 135-146 | 147-159 | 160-400 |
| 2 | 0-148 | 149-164 | 165-181 | 182-400 |

*Lowest possible standard score value is 80

| Reading Norm-Referenced Assessment standard score cut scores* | | | | |
|---|---|---|---|---|
| Grade | Below Basic | Basic | Proficient | Advanced |
| K | 0-119 | 120-127 | 128-137 | 138-400 |
| 1 | 0-136 | 137-145 | 146-158 | 159-400 |
| 2 | 0-153 | 154-165 | 166-182 | 183-400 |

*Lowest possible standard score value is 80

6.03    ~~All initial high-stakes end-of-course assessments for Algebra I shall be administered by grade ten (10).  Beginning with the 2014-2015 school year, all initial high-stakes end-of-course assessments for English II shall be administered by grade ten (10). The Board shall establish a requisite scale score of student performance on the High-Stakes End-of-Course Algebra I Examination. The following numerical scores define that performance level.~~

| ~~High-Stakes End-of-Course Algebra I Pass Scale Score~~ | |
|---|---|
| ~~Not Pass~~ | ~~Pass~~ |
| ~~158 and Below~~ | ~~159 and Above~~ |

6.0~~4~~3    The following numerical scores define the performance levels on the criterion-referenced assessments and on the Alternate Assessments for Students with Disabilities for Not Evident, Emergent, Supported Independence, Functional Independence and Independent.  Functional Independence and Independent are considered to be grade level.

| Mathematics Criterion Referenced Assessments (Augmented Benchmark Exams) Scale Score Ranges | | | | |
|---|---|---|---|---|
| Grade | Below Basic | Basic | Proficient | Advanced |
| 3 | 0 - 408 | 409 – 499 | 500 - 585 | 586 & above |
| 4 | 0 - 494 | 495 – 558 | 559 - 639 | 640 & above |
| 5 | 0 - 543 | 544 – 603 | 604 - 696 | 697 & above |
| 6 | 0 - 568 | 569 – 640 | 641 - 721 | 722 & above |
| 7 | 0 - 621 | 622 – 672 | 673 - 763 | 764 & above |
| 8 | 0 - 654 | 655 – 699 | 700 - 801 | 802 & above |

005.19

### Literacy Criterion Referenced Assessments (Augmented Benchmark Exams)
#### Scale Score Ranges

| Grade | Below Basic | Basic | Proficient | Advanced |
|-------|-------------|-------|------------|----------|
| 3 | 0 - 329 | 330 - 499 | 500 - 653 | 654 & above |
| 4 | 0 - 353 | 354 - 558 | 559 - 747 | 748 & above |
| 5 | 0 - 381 | 382 - 603 | 604 - 798 | 799 & above |
| 6 | 0 - 416 | 417 - 640 | 641 - 822 | 823 & above |
| 7 | 0 - 425 | 426 - 672 | 673 - 866 | 867 & above |
| 8 | 0 - 506 | 507 - 699 | 700 - 913 | 914 & above |

### Science Criterion Referenced Assessments (Augmented Benchmark Exams)
#### Scale Score Ranges

| Grade | Below Basic | Basic | Proficient | Advanced |
|-------|-------------|-------|------------|----------|
| 5 | 0 - 153 | 154 - 199 | 200 - 249 | 250 & above |
| 7 | 0 - 151 | 152 - 199 | 200 - 249 | 250 & above |

### ~~General~~ End-of-Course Algebra I
#### Scale Score Ranges

| Below Basic | Basic | Proficient | Advanced |
|-------------|-------|------------|----------|
| 0 - 151 | 152 - 199 | 200 - 249 | 250 & above |

### ~~General~~ End-of-Course Geometry
#### Scale Score Ranges

| Below Basic | Basic | Proficient | Advanced |
|-------------|-------|------------|----------|
| 0 - 151 | 152 - 199 | 200 - 249 | 250 & above |

### ~~General~~ End-of-Course Biology
#### Scale Score Ranges

| Below Basic | Basic | Proficient | Advanced |
|-------------|-------|------------|----------|
| 0 - 145 | 146 - 199 | 200 – 249 | 250 & above |

### Grade 11 Literacy
#### Scale Score Ranges

| Below Basic | Basic | Proficient | Advanced |
|-------------|-------|------------|----------|
| 0 - 168 | 169 - 199 | 200 – ~~249~~ 227 | ~~250~~ 228 & above |

### Mathematics Alternate Assessment for Students with Disabilities
#### Scale Score Ranges

| Grade | Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
|-------|-------------|----------|------------------------|-------------------------|-------------|
| 3 | 520 - 672 | 673 - 703 | 704 – 708 | 709 - 723 | 724 - 733 |
| 4 | 523 - 673 | 674 - 707 | 708 – 712 | 713 - 721 | 722 - 736 |
| 5 | 545 - 674 | 675 - 708 | 709 – 713 | 714 - 725 | 726 - 733 |
| 6 | 535 - 677 | 678 - 708 | 709 – 714 | 715 - 722 | 723 - 731 |
| 7 | 478 - 675 | 676 - 705 | 706 – 713 | 714 - 720 | 721 - 731 |
| 8 | 484 - 697 | 698 - 717 | 718 – 725 | 726 - 727 | 728 - 738 |

005.19

| Literacy Alternate Assessment for Students with Disabilities<br>Scale Score Ranges | | | | | |
|---|---|---|---|---|---|
| Grade | Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
| 3 | 487- 663 | 664 - 685 | 686 – 710 | 711 - 730 | 731 - 734 |
| 4 | 503 - 672 | 673 - 692 | 693 – 712 | 713 - 727 | 728 - 733 |
| 5 | 545 - 664 | 665 - 692 | 693 – 717 | 718 - 730 | 731 - 735 |
| 6 | 518 - 637 | 638 - 684 | 685 – 709 | 710 - 721 | 722 - 732 |
| 7 | 464 - 620 | 621 - 674 | 675 – 708 | 709 - 722 | 723 - 736 |
| 8 | 442 - 622 | 623 - 690 | 691 – 719 | 720 - 726 | 727 - 742 |

| Science Alternate Assessment for Students with Disabilities<br>Scale Score Ranges | | | | | |
|---|---|---|---|---|---|
| Grade | Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
| 5 | 563 - 700 | 701 - 718 | 719 - 723 | 724 - 730 | 731 - 736 |
| 7 | 490 - 670 | 671 - 688 | 689 - 705 | 706 - 720 | 721 - 733 |

| Grade 9 Mathematics Alternate Assessment for Students with Disabilities<br>Scale Score Ranges | | | | |
|---|---|---|---|---|
| Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
| 0 - 99 | 100 -149 | 150 -199 | 200 - 249 | 250 - 300 |

| Science Grade 10 Alternate Assessment<br>Scale Score Ranges | | | | |
|---|---|---|---|---|
| Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
| 486 - 600 | 601 - 664 | 665 - 692 | 693 - 715 | 716 - 742 |

| Grade 11 Literacy Alternate Assessment for Students with Disabilities<br>Scale Score Ranges | | | | |
|---|---|---|---|---|
| Not Evident | Emergent | Supported Independence | Functional Independence | Independent |
| 483 - 595 | 596 - 655 | 656 – 680 | 681 - 692 | 693 - 740 |

7.0    Student Accountability

7.01    By the year 2013-2014 all students are expected to perform at the proficient level or above.

7.02    Students identified as failing to achieve at the proficient level on a) the state mandated CRT (as referenced in Section 6.04 tables: Mathematics Criterion Referenced Assessments, Science Criterion Referenced Assessments, Literacy Criterion Referenced Assessments), b) students in grade K scoring delayed on either written language or oral communications and scoring delayed in mathematics on the state mandated uniform readiness screening (as referenced in Section 3.46 Uniform School Readiness Screening); and c) students in grades 1 and 2

not scoring proficient on the state mandated NRT(as referenced in Section 6.02 tables, Mathematics Norm Referenced Assessment standard score cut scores and Reading Norm-Referenced Assessment standard score cut scores), shall be evaluated by school personnel, who shall jointly develop a remediation plan with the student's parents. The remediation plan (AIP or if appropriate IRI) will assist the student in achieving the expected standard and will describe the parent's role and responsibilities as well as the consequences for the student's failure to participate in the plan.

7.02.1 The AIP shall be prepared using the format designed by the Department of Education. However, the local school may adjust the format as deemed necessary.

7.02.2 The AIP shall be developed cooperatively by appropriate teachers and/or other school personnel knowledgeable about the student's performance or responsible for the remediation in consultation with the student's parents. An analysis of student strengths and deficiencies based on test data and previous student records shall be available for use in developing the plan. The plan shall be signed by the appropriate school administrator and the parent/guardian.

7.02.3 The AIP should be flexible, should contain multiple remediation methods and strategies, and should include an intensive instructional program different from the previous year's regular classroom instructional program. Examples of strategies and methods include, but are not limited to, computer assisted instruction, tutorial, extended year, learning labs within the school day, Saturday school, double blocking instruction in deficient areas during the school day, extended day etc.

7.02.4 The AIP shall include formative assessment strategies and shall be revised periodically based on results from the formative assessment.

7.02.5 The AIP shall include standards-based supplemental/remedial strategies aligned with the child's deficiencies.

7.02.6 A highly qualified teacher and/or a highly qualified paraprofessional under the guidance of a highly qualified teacher shall provide instructional delivery under the AIP.

7.02.7 The AIP should contain an implementation timeline that assures the maximum time for remedial instruction.

7.02.8 AIPs should be individualized; however, similar deficiencies based on test data, may be remediated through group instruction.

7.02.9 In any instance where a student with disabilities identified under the Individuals with Disabilities Education Act has an

Individualized Education Program (IEP) that already addresses any academic area or areas in which the student is not proficient on state-mandated augmented, criterion-referenced, or norm-referenced assessments, the individualized education program shall serve to meet the requirement of an AIP.

7.03    Retention for failure to participate in the Academic Improvement Plan

7.03.1  The public school district where the student is enrolled shall notify the student's parent, guardian, or caregiver of the parent's role and responsibilities as well as the consequences for the student's failure to participate in the plan.  This notice may be provided via student handbooks issued to students.

7.03.2  A student in grades three (3) through eight (8), identified as not passing a benchmark assessment meeting the requisite scale score on the criterion-referenced assessment and failing to participate in the subsequent AIP shall be retained and shall not be promoted to the next appropriate grade until the student is deemed to have participated in the AIP or the student passes the benchmark assessment for the current grade level in which the student is retained. The local district shall determine the extent of the required participation in remediation as set forth in the student academic improvement plan.

7.03.3  Any student required to take an general end-of-course assessment who is identified as not meeting the requisite scale score for a particular assessment shall participate in the remediation activities as required by the student's individualized AIP in the school year that the assessment results are reported in order to receive academic credit on his or her transcript for the course related to the end-of-course assessment.

7.03.3.1 The individualized AIP shall include remediation activities focused on those areas in which a student failed to pass a general meet the requisite scale score of an end-of-course assessment.

7.03.3.2 A student who is identified as not meeting the requisite scale score for a general an end-of-course assessment shall not receive academic credit on his or her transcript for the courses related to the general end-of-course assessment until the student is identified as having participated in remediation through an individualized AIP.  For the purpose of a general end-of-course assessment, remediation does not require that a student pass a subsequent end-of-course assessment in order to receive academic credit for a course.

7.03.4  Remedial activities and instruction provided during high school may shall not be in lieu of English language arts, mathematics, science, history or social studies, or other core subjects courses required for graduation.

7.03.5   Any student who does not score at the Proficient level on the criterion–referenced assessments in ~~reading, writing~~ English language arts and mathematics shall continue to be provided with remedial or supplemental instruction until the expectations are met or the student is not subject to compulsory school attendance.

7.03.6   Any student that has an AIP and fails to remediate, but scores at the Proficient level on the criterion-referenced assessments, shall not be retained.

7.03.7   Students not proficient on the High School Literacy Test shall participate in a remediation program.

7.03.8   ~~A student who does not meet the requisite scale score on the relevant high-stakes end-of-course assessment shall participate in an individualized academic improvement plan.~~

   ~~7.03.8.1 An individualized academic improvement plan shall include research-based remediation activities and multiple opportunities for the student to take and pass subsequent high-stakes end-of-course assessments as long as the student remains enrolled in an Arkansas public school and has not reached twenty-one (21) years of age.~~

   ~~7.03.8.2 If after two subsequent high-stakes end-of-course assessments a student does not meet the requisite scale score on the initial high-stakes end-of-course assessment, the student shall participate in strand analysis or formative analysis remediation provided and supported by the department before taking a third or subsequent high-stakes end-of-course assessment.~~

   ~~7.03.8.3 Subsequent high-stakes end-of-course assessments and associated remediation programs may be administered in electronic format.~~

7.03.8   The State Board may require remediation activities and an individualized academic improvement plan for a student in grade eleven (11) or below who does not meet the requisite scale score for a particular college and career readiness measurement.

   7.03.8.1   The State Board may require that the individualized academic improvement plan include one (1) or more opportunities for a student to retake the measurement.

   7.03.8.2   For the purpose of a college and career readiness measurement, remediation shall not require that a student pass a subsequent college and career readiness measurement in order to graduate from an Arkansas high school.

7.04    The results of ~~general and high-stakes~~ end-of-course assessments shall become a part of each student's transcript or permanent record. Each course for which a student completes the ~~general~~ end-of-course assessment shall be recorded with the performance level (advanced, proficient, basic or below-basic). ~~Each course for which a student completes the high-stakes end-of-course assessment shall be recorded with the pass level (pass, not pass) and by performance level (Below Basic, Basic, Proficient, Advanced).~~

7.05    Each year the ADE shall make public item and task prototypes for the English language arts and mathematical assessments required by these rules or a selection of actual items and tasks from the most recent assessments.

7.05_6_   The Department shall implement a statistical system that shall provide the best analysis of classroom, school, and school district effects on student progress based on established, value-added longitudinal calculations, which shall measure the difference in a student's previous year's achievement compared to the current year achievement for the purposes of improving student achievement, accountability, and recognition.

7.06_7_   The approach used by the Department shall be in alignment with federal statutes and developed in 2004-2005 to collect data to allow research and evaluation of student achievement growth models.

7.07_8_   The approach shall include value-added longitudinal calculations with sufficient transparency in the model's conception and operation to allow others in the field to validate or replicate the results and an assessment of the model's accurateness in relation to other models.

7.08_9_   Reading Deficiency for Students in Kindergarten through Grade Two

    7.08_9_.1   Any student who exhibits a substantial deficiency in reading, based upon statewide assessments conducted in grades kindergarten through two (K-2), or through teacher observations, shall be provided intensive reading instruction utilizing a scientifically-based reading program. The intensive instruction shall systematically, explicitly, and coherently provide instruction in the five essential elements of reading as defined in Section 3.23. The student shall continue to be provided with intensive reading instruction until the reading deficiency is corrected.

    7.08_9_.2  The State Board of Education established performance levels for kindergarten, grade 1 and grade 2 that define substantial difficulties in reading based on the state-mandated, developmentally appropriate assessment. The state-mandated Uniform Screening Readiness (USR) instrument shall be used to determine substantial reading difficulty for kindergarten students.

    7.08_9_.3  All kindergarten students exhibiting substantial difficulties in reading will be evaluated by school personnel for the purpose of

diagnosing specific reading difficulties. This evaluation will occur within 30 days of receiving the USR results.

7.08.9.4  Within 30 days of the beginning of school, grade 1 and grade 2 students exhibiting substantial difficulties in reading will be evaluated by school personnel for the purpose of diagnosing specific reading difficulties. However, in those school years in which the State Board of Education shall revise the performance levels schools shall be allowed 30 days from the date of the final approval to conduct the evaluation.

7.08.9.5 The evaluation shall include the Dynamic Indicators of Basic Early Literacy Skills (DIBELS).

7.08.9.6  School personnel shall develop an Intensive Reading Improvement plan (IRI) that describes the intervention program for any student identified with substantial reading difficulty. The IRI shall be developed cooperatively by appropriate teachers and/or other school personnel knowledgeable about the student's performance or responsible for remediation.

7.08.9.7 The IRI shall contain an implementation timeline that assures the maximum time for remedial instruction. The intervention shall occur during the regular school day whenever possible, but may include extended day when appropriate. The intervention shall supplement, and not supplant, core classroom instruction.

7.08.9.8 The IRI shall include valid and reliable progress monitoring assessments to measure student growth toward the grade level benchmarks in each essential element of reading.

7.08.9.9 The intensive reading instruction provided under the IRI shall utilize strategies that are aligned with scientifically-based reading research.

7.08.9.9.1 The intensive instruction shall systematically, explicitly and coherently provide instruction in the five essential areas of reading. The intensity and focus of the instruction shall be based on the evaluation results, teacher observation, and data from progress monitoring assessments. The intervention plan shall be revised periodically to reflect student needs as indicated on progress monitoring assessments.

7.08.9.9.2 The IRI should be individualized; however, similar deficiencies may be remediated through group instruction.

7.08.9.9.3 A highly qualified teacher and/or a highly qualified paraprofessional under the guidance of a highly qualified teacher shall provide instruction under the IRI.

      7.08<u>9</u>.9.4 The intervention shall continue until the child has reached grade level benchmarks in all essential areas of reading.

      7.08<u>9</u>.10 Student achievement in each of the essential elements shall be monitored monthly after students complete the intervention. Students who are not meeting current expectations shall be provided additional interventions.

      7.08<u>9</u>.11 In any instance where a student with disabilities identified under the Individuals with Disabilities Act has an IEP that already addresses reading deficiencies, the individual education program shall serve to meet the requirements of the IRI.

7.09<u>10</u>  The parent or guardian of any student identified with a substantial reading deficiency shall be notified in writing to include the following:

      7.09<u>10</u>.1  That the child has been identified as having a substantial deficiency in reading;

      7.09<u>10</u>.2  A description of the current services that are provided to the child; and,

      7.09<u>10</u>.3  A description of the proposed supplemental instructional services and supports that will be provided to the child that are designed to remediate the identified area of reading deficiency.

8.0    School Accountability

    NOTE:  Consult Section 13.00 of these Rules for applicable ESEA flexibility provisions as approved by the ~~USDOE~~ US Ed on June 29, 2012.

    8.01    The Department of Education shall provide analyses of data produced by the Arkansas Comprehensive Assessment Program and other reliable measures of student learning to determine classroom, school, and school district academic performance.

    8.02    Student performance trend data shall be included in the components used in developing objectives of the school improvement plan, internal evaluations of instructional and administrative personnel, assignment of staff, allocation of resources, acquisition of instructional materials and technology, performance-based budgeting, and assignment of students into educational programs of the local school program.

    8.03    Each school shall develop one (1) Arkansas Comprehensive, School Improvement Plan (ACSIP) focused on student achievement. This requirement is intended to focus the school and school district annually on the school's performance rate data for the purposes of improving student performance based on data and the performance of students on the state assessment system.

8.04    The purpose of ACSIP is to provide equal opportunity for all students, including identifiable subgroups, to meet the expected performance rate levels established by the Board on all State assessments.

8.05    Consistent with the No Child Left Behind Act, each school must make adequate yearly progress (AYP), based primarily on the administration of the criterion-referenced assessments described in Section 5.02. In order to make AYP, a school or school district must—

> • Demonstrate that at least 95 percent of all students and of students in each applicable subgroup, as provided in Section 8.06, at the tested grade levels, participated in the assessments;
>
> • Meet or exceed the annual measurable performance levels described in Section 9.0, based on the percentages of students scoring proficient or above on the assessments, overall and for each applicable subgroup; or alternatively, if the total group or any subgroup does not meet the annual measurable performance levels, demonstrate that the percentage of students in that subgroup who did not meet the proficient level for that year decreased by 10 percent of that percentage from the preceding school year and that the subgroup made progress on one additional academic indicator; and
>
> • Show progress for all students on an additional academic indicator, which shall be graduation rate for high schools and percent attendance for elementary and middle schools.

8.06    The following subgroups must be included in the school/school district data disaggregation:

8.06.1 Students with Disabilities;

8.06.2 Students who are English Language Learners;

8.06.3 Economically Disadvantaged Students; and

8.06.4 Ethnic Subgroups;

> 8.06.4.1 Caucasian
>
> 8.06.4.2 African American
>
> 8.04.4.3 Hispanic

8.07    A school must meet AYP criteria overall and for each of these subgroups that meets the minimum group size as determined by the Department of Education and approved by the U.S. Department of Education.

8.08    The Department will determine AYP separately for mathematics and literacy, using appropriate statistical treatments. Based on the single

005.19

statewide starting point described in this section, annual performance levels assure that ALL students will reach proficient by school year 2013-2014.

8.09    The Department will determine for each school in the state the percent of students performing at the proficient or advanced levels. This percentage will be determined by computing the sum of students proficient or advanced for the current year or the most recent three years across each grade for which there is a criterion-referenced assessment. That sum is divided by the total number of students assessed for that year or across those three years and grades. This number shall include students taking alternate assessments. The percentage shall be determined separately for mathematics and reading/literacy.

8.10    The AYP starting point regarding percent proficient on state assessments will be determined for grade-level clusters K- 5; 6 – 8; and 9 – 12 and separately for mathematics and reading/literacy.

8.11    The AYP starting point will be determined by ranking each school within the grade-level by the percent proficient. Additionally, the ranking will include the total student enrollment for those grades using October 1, 2002, data or October 1 of a subsequent year for which there is a recalculation.

8.12    The goal of NCLB is for all students to be proficient in language arts and math by 2014.  Therefore, the Department of Education will determine the "starting point" for AYP as set forth in Section 3.44 above.

8.13    The following table establishes the starting point and projected performance level for each year of the twelve years addressed by the No Child Left Behind Act.

**Calculating AYP and Annual Expected Performance Levels**

|  | K-5 Math | K-5 Literacy | 6-8 Math | 6-8 Literacy | 9-12 Math | 9-12 Literacy |
|---|---|---|---|---|---|---|
| Year 05-06 | 40.00 | 42.40 | 29.10 | 35.20 | 29.20 | 35.50 |
| Year 06-07 | 47.50 | 49.60 | 37.96 | 43.30 | 38.05 | 43.56 |
| Year 07-08 | 55.00 | 56.80 | 46.83 | 51.40 | 46.90 | 51.63 |

005.19

| Year 08-09 | 62.50 | 64.00 | 55.69 | 59.50 | 55.75 | 59.69 |
|------------|-------|-------|-------|-------|-------|-------|
| Year 09-10 | 70.00 | 71.20 | 64.55 | 67.60 | 64.60 | 67.75 |
| Year 10-11 | 77.50 | 78.40 | 73.41 | 75.70 | 73.45 | 75.81 |
| Year 11-12 | 85.00 | 85.60 | 82.28 | 83.80 | 82.30 | 83.88 |
| Year 12-13 | 92.50 | 92.80 | 91.14 | 91.90 | 91.15 | 91.94 |
| Year 13-14 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |

8.14    Each year, in determining whether a school has met the target of percent proficient for that school year as listed on the chart, the Department shall compare the school's percent proficient in the appropriate grade-level cluster and content area with the statewide projected goal for that year. A school shall be deemed to have met AYP for a particular year for a particular grade-level cluster and content area as long as the school attains at least the statewide projected goal.

8.15    Individual Schools identified by the Department as failing to meet established levels of academic achievement shall be subject to sanctions as specified in school improvement or academic distress.

8.16    Schools/School Districts exemplifying exceptional performance levels and/or growth patterns shall be recognized for exemplary performance and will be eligible to participate in the rewards program.

9.0    Accountability

NOTE: Consult Section 13.00 of these Rules for applicable ESEA flexibility provisions as approved by the ~~USDOE~~ US Ed on June 29, 2012. Sections 9.13 ~~through 9.21~~ and 9.14 of these Rules continue to apply along with Section 13.00 of these Rules.

Schools failing to meet Adequate Yearly Progress as determined under these Rules shall be classified subject to the following consequences.

9.01    A school will be identified in alert status if it has not made AYP in the same subject (Mathematics or Literacy) for one year.

9.02    A school will be identified as in Improvement Status if it has not made AYP in the same subject (Mathematics or Literacy) for two consecutive years.

9.03    A school in Alert Status or Improvement Status that fails to make AYP, but does not fail to make AYP in the same subject for two consecutive years, will remain in its existing status for the following school year.

9.04    The first year a school fails to meet expected performance levels, that school shall be classified as on Alert Status. Any school classified on Alert Status shall be required to review and/or revise the school's ACSIP Plan with special attention given to State designated subgroup(s) which failed to meet expected performance levels.

9.05    The local school board president and the superintendent of a public school or school district identified by the Department in school improvement shall be notified in writing by the Department, via certified mail, return receipt requested, and the school district shall have a right to appeal to the Commissioner of the Department. The written appeal must be received in the Office of the Commissioner of Education within thirty (30) calendar days of the receipt of notice.

9.06    The second year a school fails to make Adequate Yearly Progress, that school shall be classified as Year 1 of School Improvement. Any school classified in Year 1 of School Improvement shall offer eligible students choice options to another school in the district not in school improvement.

9.07    The third year a school fails to make Adequate Yearly Progress, that school shall be classified as Year 2 of School Improvement. Any school classified in Year 2 of School Improvement shall offer eligible students supplementary educational services in keeping with federal guidelines in addition to continued consequences from Year 1 of School Improvement.

9.08    Should a school fail to make Adequate Yearly Progress in the fourth year, the Board shall advance that school into corrective action. Schools in corrective action must continue to offer consequences from School Improvement Year 2, and the school must implement a plan, with the approval of the Department, having specified corrective actions.

9.09    Should a school fail to make Adequate Yearly Progress in the fifth year, the Board shall advance that school into restructuring. In restructuring the Department may require the school to dismiss staff and administrators, annex the school to another school that is not in school improvement, and/or take other such action as deemed necessary by the Department and the Board.

9.10    Once a school has been identified in school improvement, that school must meet the standard(s) for which it failed to meet for two consecutive years to be considered for removal.

9.11    Schools that receive Title I funds must meet all funding requirements as specified by federal guidelines. Schools that do not receive Title I funds must implement programming in keeping with the school's ACSIP Plan as revised.

9.12    Schools designated in year two or greater of school improvement shall participate in a scholastic audit conducted by the Department of Education (or its designees).

9.12.1   Results of the scholastic audit shall be presented to the superintendent within four (4) weeks of completing the scholastic audit. The audit shall make recommendations to improve teaching and learning for inclusion in the comprehensive school improvement plan.

9.13   School Performance Rating System and Performance Category Levels

9.13. 1   The Department of Education shall prepare an annual report, which shall describe the school rating system.  The annual report shall designate two (2) category levels for each school. The first category, annual performance, is based on the performance from the prior year on the criterion-referenced test and end-of-course exams.  The second category, growth, shall be based on the schools' improvement gains tracked longitudinally and using value-added calculations on the criterion-referenced assessment

9.13.2   The initial annual report shall identify schools as being in one (1) of the following annual performance category levels, based on the criterion-referenced Benchmark exams, as defined in 6-15-404(g)(1), and defined according to rules of the State Board of Education:
(1)   "Level 5", schools of excellence;
(2)   "Level 4", schools exceeding the standards;
(3)   "Level 3", schools meeting the standards;
(4)   "Level 2", schools on alert; or
(5)   "Level 1", schools in need of immediate improvement.

9.14   For the years 2004-2005 through 2008-2009, school will not be assigned annual school performance category levels, unless an annual performance category levels is requested by the school.

9.15   Annual School Performance Rating:  Weighted Average Approach

9.15.1   Since the ACTAAP testing program in Arkansas was designed as a criterion-referenced assessment system with performance standards, the standards for student performance can be used to develop a rating index of school performance.

9.15.2   Numerical values to be used as weighting factors can be assigned to each student's performance category (Advanced = 4; Proficient = 3; Basic = 2; Below Basic = 1)

9.15.3   With these weights assigned to the performance levels, a performance index for the school can be computed by multiplying the weights of the performance levels times the number of students scoring in the performance category.

9.15.4   The sum of the weighted student performance for each subject

005.19

and grade in the school is divided by the total number of students
testing the subjects and grades.  The resulting average for the
school is an index of performance that will range between 1.0
and 4.0.

9.16   Achievement Rating Weighted Average Approach

9.16.1 Assigned the following points:

4 points per student scoring in the advanced category,
3 points per student scoring in the proficient category,
2 points per student scoring in the basic category,
1 point per student scoring in the below basic category.

Points = Number of student scoring in category X points assigned
to categories

9.16.2 Example

| Number of Students | Scoring Category | Points Assigned to Categories | Total |
|---|---|---|---|
| 10 | Advanced | 4 | 40 |
| 30 | Proficient | 3 | 90 |
| 40 | Basic | 2 | 80 |
| 20 | Below Basic | 1 | 20 |
| Total points for the school for all categories | | | 230 |

9.17    Achievement Rating: Weighted Average Approach Calculation

9.17.1   To calculate the rating score for each school, divide the total point
for the school by the number of students in the school.

| Points Received | Number of Students | Rating |
|---|---|---|
| 230 | 100 | 2.3 |

9.17.2   At the direction of the state board, a panel of stakeholders was
convened to review the statewide performance of schools and
conduct the standard setting process. In the school standard
setting process, stakeholders representing administrators,
teachers, business, parents, and school board members served
as panelists to decide on the quality level represented by various
points within the distribution of school index scores. The state
board reviewed and adopted the following standards
recommended by the stakeholder's advisory panels for the annual
performance rating.

| Standard Setting Recommendations Stakeholder Advisory Panels | | | | |
|---|---|---|---|---|
| Cut Scores | Cut 1/2 | Cut 2/3 | Cut 3/4 | Cut 4/5 |
| Administrators | 1.7 | 2.19 | 2.76 | 3.02 |
| Teachers | 1.6 | 2.25 | 3.0 | 3.5 |

005.19

| Business | 1.735 | 2.145 | 2.7 | 3.365 |
| Parents | 1.75 | 2.2 | 2.65 | 3.0 |
| School Board | 1.81 | 2.30 | 2.87 | 3.30 |
| Median | 1.735 | 2.2 | 2.755 | 3.300 |
| Average | 1.719 | 2.21 | 2.79 | 3.23 |

9.17.3   After the rating score has been calculated for each school, schools may calculate their annual performance level by locating the established performance standard (cut score) for placing each school in one of five performance categories.

9.17.4   In the example below, if the rating score of the school is between 3.5 and 4.0, it will be in the "schools of excellence" performance category level.

| Expert Panel Cut Scores | Performance Categories |
| --- | --- |
| 3.23 — 4.0 | Schools of excellence |
| 2.79 — 3.22 | Schools exceeding the standards |
| 2.21 — 2.78 | Schools meeting standards |
| 1.719 — 2.20 | Schools approaching the standards (alert) |
| 1.0 — 1.718 | Schools in need of immediate improvement |

9.17.5   The second category, growth shall be based on the schools' improvement gains tracked longitudinally and using value-added calculations on the criterion-referenced assessment.  The working taskforce shall continue to assist in the rating system during the establishment of the second category.

9.18   School Choice

9.18.1 For all schools that have received an annual performance category levels of Level 1 for two (2) consecutive years, the students in these schools shall be offered the opportunity public school choice option with transportation provided pursuant to A.C.A. § 6-18-227 et seq.

9.19  Supplemental Educational Services

9.19.1  In addition, the school district board shall provide supplemental educational services, approved by the State Board, to affected students.

9.2013 Recognition Awards

9.2013.1   Schools that receive an annual performance category level of Level 5 or Level 4 are eligible for school recognition awards and performance-based funding pursuant to Ark. Code Ann. §§ 6-15-421 and 6-15-2107. Pursuant to Ark. Code Ann. § 6-15-2107m schools performing at the top twenty percent (20%) of all public schools in Arkansas in combined student performance,

> student academic growth, and, for a secondary school,
> graduate rate, are eligible for Arkansas School Recognition
> Program rewards and performance-based funding.

9.2~~11~~14 Sanctions

> 9.2~~11~~14.1   Any school or district that is involved in substantiated test
> security violations will not be eligible to receive the "school of
> excellence" performance rating.

10.0   School District Accountability

NOTE: During the time periods designated by the ~~USDOE~~ US Ed for which the
ADE may receive flexibility from certain provisions of ESEA, the school district
accountability provisions found in Section 13.00 of these Rules shall apply.
Sections 10.04 through 10.08~~7~~ of these Rules shall remain in place even during
time periods designated by the ~~USDOE~~ US Ed for which the ADE may receive
flexibility from certain provisions of ESEA.

10.01   The Department annually reviews each district to determine whether the
district is making AYP in the following way.

> 10.01.1   Determine the collective status for all the schools within a
> district within each grade-level grouping (K-5; 6-8 and 9-12);

> 10.01.2   Determine the district percent of participation across each
> grade level group; and

> 10.01.3   Determine the district status on secondary indicator across
> each grade-level group.

> 10.01.4   A district shall be in school improvement when all levels within
> a district fail to meet performance standards for two
> consecutive years in the same subject. A district having status
> of School Improvement shall be removed from that status
> when any one level meets the performance standard for two
> consecutive years in that subject.

10.02   Before identifying a district for district improvement, the Department will
provide the district with an opportunity to review the data on which the
identification is based. The district may appeal the identification, and the
Department will decide the appeal within 30 days.

10.03   Each district identified for district improvement shall within three months
of identification develop or revise a district improvement plan that
complies with the requirements of the No Child Left Behind Act, including
the requirement that it spend not less than 10% of its Part A, Title I funds
on professional development for each fiscal year in which the district is
identified for improvement. The district shall initiate implementation of the
plan expeditiously, but not later than the beginning of the next school year
after the school year in which the district was identified for improvement.

The Department will provide technical assistance to districts in developing and implementing improvement plans under this section.

10.04 Academic Distress – Procedures for Identification, Classification and Appeal of <u>Public School and Public</u> School Districts in Academic Distress

> 10.04.1 A <u>public school or public</u> school district which meets the definition of "Academic Distress" set forth in Section 3.02 of these rules shall be designated in Academic Distress.

> 10.04.2 Within thirty calendar days (30) after the release of the state assessment results by the Department or upon making a determination that a school district has a Needs Improvement –Priority school within the school district that has not made the progress required under the school's Priority Improvement Plan (PIP), the Department shall identify all <u>public schools and public</u> school districts in Academic Distress and shall notify in writing each school district superintendent and board president <u>of the public school and public school districts</u> via certified mail, return receipt requested.

> 10.04.3 ~~A school district may appeal a determination of the Department identifying the district as an Academic Distress school district by filing an appeal in writing in the Office of the Commissioner of Education within (30) calendar days after receiving the notification, justifying why the district should not be identified as being in Academic Distress.~~ <u>Any school district identified or in which a public school is identified in academic distress may appeal to the State Board by filing a written appeal with the Commissioner of Education via certified mail, return receipt requested, within thirty (30) calendar days of receipt of the written notice of academic distress status from the Department.</u>

> 10.04.4 ~~The Board shall render a written decision of a classification on a district's appeal of identification as an Academic Distress school district within sixty (60) calendar days of the district's written request.~~ <u>The State Board shall hear the appeal of the school district within sixty (60) days of receipt of the written appeal in the Commissioner's office.</u>

> 10.04.5 The ~~decision of the Board~~ <u>State Board's determination</u> shall be final ~~with no further right of appeal,~~ except <u>that</u> a school district may appeal to ~~the Circuit Court of Pulaski County pursuant to~~ <u>Pulaski County Circuit Court under the Arkansas Administrative Procedure Act, Ark. Code Ann. § 25-15-201, et seq.</u> ~~the Administrative Procedures Act, A.C. A. §25-15-201 et seq.~~

> 10.04.6 <u>A school district or public school identified by the Department as being in academic distress shall be classified as a school</u>

district or public school in academic distress upon final
determination by the State Board.

10.05   Time Limitation of Academic Distress Status

10.05.1   A Except as otherwise set forth in these Rules and Ark. Code
Ann. § 6-15-429 and § 6-15-430, a public school or public
school district identified as in academic distress shall have no
more than two (2) five (5) consecutive school years beginning
on July 1 following the date of notice of identification to be
removed from academic distress status from the date of
classification of academic distress status to be removed from
academic distress status.

10.05.2   The State Board may at any time take enforcement action on
any school district in academic distress status including, but
not limited to including without limitation, annexation,
consolidation, or reconstitution of a school district pursuant to
A.C.A. Ark. Code Ann. § 6-13-1401 et seq. and the authority of
Title 6, Chapter 15, Subchapter 4 of the Arkansas Code.

10.05.3   If a public school district fails to be removed from academic
distress status within the allowed two (2) year time period, the
Board shall annex, consolidate or reconstitute the academic
distress school district prior to July 1 of the next school year
unless the Board, at its discretion, issues a written finding
supported by a majority of the board, explaining in detail that
the school district could not remove itself from academic
distress during the relevant time period due to external forces
beyond the school district's control.

10.05.3   The State Board may take enforcement action at any time on a
public school in academic distress under these Rules and Title
6, Chapter 15, Subchapter 4 of the Arkansas Code.

10.05.4   Except as otherwise set forth in these Rules and Ark. Code
Ann. § 6-15-429 and §6-15-430(d), a public school or school
district shall not be allowed to remain in academic distress
status for a time period greater than five (5) consecutive
school years from the date of the classification of academic
distress status.

10.05.5   The State Board may grant additional time for a public school
or school district to remove itself from academic distress by
issuing a written finding supported by a majority of the State
Board explaining in detail that the public school or school
district could not remove itself from academic distress during
the relevant time period due to impossibility caused by
external forces beyond the control of the public school or
school district.

10.05.6    If a public school or school district classified as being in academic distress fails to be removed from academic distress status within the allowed five-year time period and has not been granted additional time under these Rules or Ark. Code Ann. § 6-15-429, the State Board shall annex, consolidate, or reconstitute the public school or school district before July 1 of the next school year.

10.06    Procedures for assisting school districts in academic distress

10.06.1    Within thirty (30) calendar days of classification by the State Board, each ~~Academic Distress~~ public school and public school district in academic distress shall develop and file with the Department a modified Comprehensive School Improvement Plan (District Plan) to target and address any area in which the public school or public school district is experiencing academic distress.

10.06.2    Within fifteen (15) calendar days of classification by the State Board, the Department shall assign a team of educators to evaluate the public school or public school district and determine the need for on-site technical assistance or technical assistance via distance technology.

10.06.3    The team of educators shall evaluate and make recommendations to the public school or public school district superintendent within sixty (60) calendar days following the school's or district's classification as ~~an Academic Distress school district~~ being in academic distress.

10.06.4    Public schools and public school ~~School~~ districts classified as ~~Academic Distress~~ being in academic distress shall provide access to all school and district assessment, instruction, personnel and academic records and reports to assist the team in the formulation of the recommendations for improvement.

10.06.5    The Department, with assistance from the team of educators, shall review the data relative to the academic status and performance of students in the ~~Academic Distress~~ academically distressed public school or public school district.

10.06.6    Following the on-site review, the team of educators will submit a written set of recommendations to the ~~Academic Distress school district~~ academically distressed public school or public school district.

10.06.7    The Department shall provide relevant technical assistance to each identified public school or public school district based upon the needs identified in the Comprehensive School Improvement Plan.

10.0~~8~~7  Procedures for evaluating and removal of <u>public schools and public</u> school districts from academic distress status

    10.0~~8~~7.1  The Department shall review and annually report to the Board the academic conditions existing in each ~~Academic Distress school district~~ <u>academically distressed public school or public school district.</u>

    10.0~~8~~7.2  A <u>public school or public</u> school district designated in Academic Distress shall be removed from Academic Distress only upon vote of a majority of the quorum present of the State Board and only after the Department has certified in writing to the State Board that the school district has corrected all criteria for being classified as in academic distress.

11.0  <u>State</u> Board Authority

    11.01  The Board shall have the following authority regarding any public school district in academic distress:

        ~~11.01.1    Require the superintendent of the school district to relinquish all authority with respect to the district and to appoint an individual to administratively operate the school district under the supervision of the Commissioner of Education, with the cost to be paid from school district funding;~~

        ~~11.01.2    Suspend or remove some or all of the current board of directors and call for the election of a new school board of directors for the school district, in which case the school district shall reimburse the county board of election commissioners for election costs as otherwise required by law.~~

        ~~11.01.3    Allow the school district to operate without the local school board of directors under the supervision of the local school district administration or an administration chosen by the Commissioner of Education.~~

        ~~11.01.4    Waive the application of Arkansas law, with the exception of the Teacher Fair Dismissal Act of 1983, A.C.A. § 6-17-1501 et seq., and the Public School Employee Fair Hearing Act, A.C.A. § 6-17-1701 et seq., or Department Rules.~~

        ~~11.01.5    Require the annexation, consolidation, or reconstitution of the public school district.~~

        ~~11.01.6    The Board has exclusive jurisdiction to determine the boundary lines of the receiving or resulting school district and to allocate assets and liability of the district.~~

005.19

11.01.7 ~~Take any other necessary and proper action as determined by the Board that is allowed by law.~~

11.01.8 ~~After providing thirty (30) calendar days written notice, via certified mail return receipt requested, to a school district, the Department may petition the Board or the Board on its own motion, at any time, may take action pursuant to this section 11.0 as allowed by Act 1467 of 2003, in order to secure and protect the best interest of students in the public school district or to secure and protect the best interest of the educational resources of the state.~~

11.01.9 ~~The School District shall have a right of appeal to a public hearing before the Board after filing a written notice of appeal with the office of the Commissioner of the Department at least thirty (30) calendar days prior to the appeal hearing.~~

11.01.10 ~~The State Board shall consolidate, annex or reconstitute a school district that fails to remove itself from the classification of a school district in academic distress within two (2) consecutive school years of receipt of notice of identification unless the Board, at its discretion, issues a written finding supported by a majority of the Board, explaining in detail that the school district could not remove itself from academic distress due to impossibility caused by external forces beyond the school district's control.~~

11.01.11 ~~After a public hearing, the Board shall consolidate, annex, or reconstitute the school district in academic distress to another non-academic distress school district upon a majority vote of a quorum of the members of the Board as permitted or required by this subchapter.~~

11.01.12 ~~The Board's classification of a school district in Academic Distress shall be final except that the school district shall have a right of appeal to the Circuit Court of Pulaski County pursuant to the Arkansas Administrative Procedures Act, A.C.A. § 25-15-201 et seq.~~

11.01.1 <u>Remove permanently, reassign, or suspend on a temporary basis the superintendent of the school district and:</u>

    11.01.1.1. <u>Appoint an individual in place of the superintendent to administratively operate the school district under the supervision and approval of the Commissioner of Education; and</u>

    11.01.1.2 <u>Compensate from school district funds the individual appointed to operate the school district;</u>

11.01.2    Suspend or remove some or all of the current board of directors and call for the election of a new board of directors for the school district, in which case the school district shall reimburse the county board of election commissioners for election costs as otherwise required by law;

11.01.3    Require the school district to operate without a board of directors under the supervision of the superintendent or an individual or panel appointed by the Commissioner of Education;

11.01.4    Waive the application of Arkansas law, with the exception of The Teacher Fair Dismissal Act of 1983, Ark. Code Ann. § 6-17-1501 et seq., and the Public School Employee Fair Hearing Act, Ark. Code Ann. § 6-17-1701 et seq., or the corresponding State Board rules and regulations;

11.01.5    Require the annexation, consolidation, or reconstitution of the school district;

11.01.6    In the absence of a board of directors, direct the Commissioner to assume all authority of the board of directors as may be necessary for the day-to-day governance of the school district;

11.01.7    Return the administration of the school district to the former board of directors or to a newly elected board of directors if:

    11.01.7.1  The Department of Education certifies in writing to the State Board and to the school district that the school district has corrected all issues that caused the classification of academic distress; and

    11.01.7.2  The State Board determines that the school district has corrected all issues that caused the classification of academic distress; and

11.01.8    Take any other necessary and proper action, as determined by the State Board, that is allowed by law.

11.02  The State Board shall have the following authority regarding any public school in academic distress:

11.02.1    Require the reorganization of the public school or reassignment of the administrative, instructional, or support staff of the public school;

11.02.2    Require the public school to institute and fully implement a student curriculum and professional development for teachers and administrators that are based on state academic content

and achievement standards, with the cost to be paid by the
school district in which the public school is located;

11.02.3    Require the principal of the public school to relinquish all
authority with respect to the public school;

11.02.4    Waive the application of Arkansas law or the corresponding
State Board rules, with the exception of:

11.02.4.1  The Teacher Fair Dismissal Act of 1983, Ark. Code
Ann. § 6-17-1501 et seq.; and

11.02.4.2  The Public School Employee Fair Hearing Act, Ark.
Code Ann. § 6-17-1701 et seq.;

11.02.5    Under The Teacher Fair Dismissal Act of 1983, Ark. Code
Ann. § 6-17-1501 et seq., reassign or remove some or all of
the licensed personnel of the public school and replace them
with licensed personnel assigned or hired under the
supervision of the Commissioner;

11.02.6    Remove the public school from the jurisdiction of the school
district in which the public school is located and establish
alternative public governance and supervision of the public
school;

11.02.7    Require closure or dissolution of the public school;

11.02.8    Remove permanently, reassign, or suspend on a temporary
basis the superintendent of the school district in which the
public school is located.  If the State Board takes an action
under Section 11.02.8 of these Rules, it may appoint an
individual in place of the superintendent to administratively
operate the school district under the supervision and approval
of the commissioner and compensate the appointed individual;

11.02.9    Take one (1) or more of the actions under Section 11.01 of
these Rules concerning the public school district where the
school is located;

11.02.10   Return the administration of the school district to the former
board of directors or to a newly elected board of directors if:

11.02.10.1 The Department certifies in writing to the State
Board and to the school district that the public
school has corrected all issues that caused the
classification of academic distress and that no
public school within the school district is classified
as being in academic distress; and

005.19

11.02.10.2 The State Board determines the public school has corrected all issues that caused the classification of academic distress and that no public school within the school district is classified as being in academic distress; and

11.02.11   Take any other appropriate action allowed by law that the State Board determines is needed to assist and address a public school classified as being in academic distress.

11.03   If the State Board or the Commissioner assumes authority over a public school district in academic distress under Sections 11.01 or 11.02 of these Rules, the State Board may pursue the following process for returning a public school district to the local control of its residents:

11.03.1   During the second school year following a public school's or school district's classification of academic distress status, the State Board shall determine the extent of the public school or school district's progress toward correcting all criteria for being classified as in academic distress;

11.03.2   If the State Board determines that sufficient progress has been made by a public school or school district in academic distress toward correcting all issues that caused the classification of academic distress, but the public school or school district has not yet resolved all issues that caused the classification of academic distress, the Commissioner, with the approval of the State Board, may appoint a community advisory board of either five (5) or seven (7) members to serve under the supervision and direction of the Commissioner.

11.03.2.1   The members of the community advisory board shall be residents of the school district and shall serve on a voluntary basis without compensation.

11.03.2.2   The Department shall cause to be provided to the community advisory board technical assistance and training in, at a minimum, the areas required in Ark. Code Ann. § 6-13-629.

11.03.2.3   The duties of a community advisory board include without limitation:

11.03.2.3.1   Meeting monthly during a regularly scheduled public meeting with the state-appointed administrator regarding the progress of the public school or school district toward correcting all issues that caused the classification of academic distress;

ADE 247-43

005.19

11.03.2.3.2    Seeking community input from the residents of the school district regarding the progress of the public school or school district toward correcting all issues that caused the classification of academic distress;

11.03.2.3.3    Conducting hearings and making recommendations to the Commissioner regarding personnel and student discipline matters under the appropriate district policies;

11.03.2.3.4    Working to build community capacity for the continued support of the school district; and

11.03.2.3.5    Submitting quarterly reports to the Commissioner and the State Board regarding the progress of the public school or school district toward correcting all issues that caused the classification of academic distress.

11.03.2.3.6    The members of the community advisory board shall serve at the pleasure of the Commissioner until the school district is returned to local control and a permanent board of directors is elected and qualified; or the State Board annexes, consolidates, or reconstitutes the school district under Ark. Code Ann. § 6-15-430 or under another provision of law;

11.03.2.4    By April 1 of each year following the appointment of a community advisory board under 11.03.2 of these Rules, the State Board shall determine the extent of the public school or school district's progress toward correcting all issues that caused the classification of academic distress and shall:

11.03.2.4.1    Allow the community advisory board to remain in place for one (1) additional year;

11.03.2.4.2    Return the school district to local control by calling for the election of a newly elected board of directors if the Department certifies in writing to

the State Board and to the school district that the public school or school district has corrected all issues that caused the classification of academic distress and that no public school within the school district is classified as being in academic distress; and the State Board determines the public school or school district has corrected all issues that caused the classification of academic distress and that no public school within the school district is classified as being in academic distress; or

11.03.2.4.3    Annex, consolidate, or reconstitute the school district pursuant to Title 6 of the Arkansas Code.

11.03.2.5    If the State Board calls for an election of a new school district board of directors, the school district shall reimburse the county board of election commissioners for election costs as otherwise required by law.

11.03.2.6    If the State Board calls for an election of a new school district board of directors, the Commissioner, with the approval of the State Board, may appoint an interim board of directors to govern the school district until a permanent school district board of directors is elected and qualified.

11.03.2.6.1    The interim board of directors shall consist of either five (5) or seven (7) members.

11.03.2.6.2    The members of the interim board of directors shall be residents of the school and otherwise eligible to serve as school district board members under applicable law.

11.03.2.6.3    The members of the interim board of directors shall serve on a voluntary basis without compensation.

11.04    If, by the end of the fifth school year following the public school or public school district's classification of academic distress status, the public school or school district in academic distress has not corrected all issues that caused the classification of academic distress, the State Board, after

a public hearing, shall consolidate, annex, or reconstitute the school district pursuant to Ark. Code Ann. § 6-15-430.

    11.04.1    The State Board may grant additional time for a public school or school district to remove itself from academic distress by issuing a written finding supported by a majority of the State Board explaining in detail that the public school or school district could not remove itself from academic distress during the relevant time period due to impossibility caused by external forces beyond the control of the public school or school district.

11.05    Nothing in these Rules shall be construed to prevent the Department or the State Board from taking any of the actions listed in these Rules or in Ark. Code Ann. § 6-15-430 at any time to address public schools and school districts in academic distress.

11.02~~6~~ To transition to and implement the Common Core State Standards, the Board shall have the authority to:

    11.02~~6~~.1 Modify curriculum and assessment requirements;

    11.02~~6~~.2 Adopt new curriculum and assessment requirements; and

    11.02~~6~~.3 Direct the Department of Education to:

        11.02~~6~~.3.1 Propose to the state board rules and procedures; and

        11.02~~6~~.3.2 Develop the professional development needed to train educators on the transition and implementation.

12.0    School Choice and Academic Distress

    12.01    Any student attending a public school or public school district classified as being in academic distress ~~shall~~ is automatically ~~be~~ eligible and entitled ~~pursuant to A.C.A. § 6-18-206, the "Arkansas Public School Choice Act",~~ under the Public School Choice Act of 2013, Ark. Code Ann. § 6-18-1901 et seq., or the Arkansas Opportunity Public School Choice Act of 2004, Ark. Code Ann. § 6-18-227, to transfer to another ~~geographically contiguous~~ public school or public school district not in academic distress during the time period that ~~a~~ the resident public school or public school district is classified as being in academic distress~~, and therefore, not be required to file a petition by July 1 but shall meet all other requirements and conditions of the Arkansas Public School Choice Act~~.

    12.02 The cost of ~~student transportation~~ transporting the student from the resident district to the nonresident district shall be ~~borne by~~ the cost of the resident district ~~pursuant to~~ under the Arkansas Opportunity Public School Choice Act of 2004, Ark. Code Ann. § 6-18-227.

12.03 ~~The nonresident district shall count the student for average daily membership purposes.~~

13.00   Elementary and Secondary Education Act (ESEA) Flexibility Provisions

On June 29, 2012, the United States Department of Education (~~USDOE~~ US Ed) approved the Arkansas Department of Education's (ADE) request for flexibility from certain provisions of the ESEA.  The approved ESEA flexibility request can be found at:

~~http://www.arkansased.org/public/userfiles/Flexibility/AR%20Final%206.18.12%20 Revised%20.pdf~~

http://www.arkansased.org/public/userfiles/ESEA/AR_ESEA_Flexibility_Amended_1025 2012.pdf

The ADE's ESEA flexibility request, as it existed on July 9, 2012, is hereby incorporated into these Rules by reference.  Key components of the ESEA flexibility requirements are noted below.

13.01   The ~~USDOE~~ US Ed approved the following waivers of ESEA for the State of Arkansas:

   13.01.1     The requirements in ESEA section 1111(b)(2)(E)-(H) that prescribe how an SEA must establish annual measurable objectives (AMOs) for determining adequate yearly progress (AYP) to ensure that all students meet or exceed the State's proficient level of academic achievement on the State's assessments in reading/language arts and mathematics no later than the end of the 2013–2014 school year.  Arkansas requested this waiver to develop new ambitious but achievable AMOs in reading/language arts and mathematics in order to provide meaningful goals that are used to guide support and improvement efforts for the State, LEAs, schools, and student subgroups.

   13.01.2     The requirements in ESEA section 1116(b) for an LEA to identify for improvement, corrective action, or restructuring, as appropriate, a Title I school that fails, for two consecutive years or more, to make AYP, and for a school so identified and its LEA to take certain improvement actions.  Arkansas requested this waiver so that an LEA and its Title I schools need not comply with these requirements.

   13.01.3     The requirements in ESEA section 1116(c) for an SEA to identify for improvement or corrective action, as appropriate, an LEA that, for two consecutive years or more, fails to make AYP, and for an LEA so identified and its SEA to take certain improvement actions.  Arkansas requested this waiver so that it need not comply with these requirements with respect to its LEAs.

   13.01.4     The requirements in ESEA sections 6213(b) and 6224(e) that limit participation in, and use of funds under the Small, Rural School

Achievement (SRSA) and Rural and Low-Income School (RLIS) programs based on whether an LEA has made AYP and is complying with the requirements in ESEA section 1116.  Arkansas requested this waiver so that an LEA that receives SRSA or RLIS funds may use those funds for any authorized purpose regardless of whether the LEA makes AYP.

13.01.5   The requirement in ESEA section 1114(a)(1) that a school have a poverty percentage of 40 percent or more in order to operate a schoolwide program.  Arkansas requested this waiver so that an LEA may implement interventions consistent with the turnaround principles or interventions that are based on the needs of the students in the school and designed to enhance the entire educational program in a school in any of its priority and focus schools that meet the definitions of "priority schools" and "focus schools," respectively, set forth in the document titled ESEA Flexibility, as appropriate, even if those schools do not have a poverty percentage of 40 percent or more.

13.01.6   The requirement in ESEA section 1003(a) for an SEA to distribute funds reserved under that section only to LEAs with schools identified for improvement, corrective action, or restructuring.  Arkansas requested this waiver so that it may allocate section 1003(a) funds to its LEAs in order to serve any of the State's priority and focus schools that meet the definitions of "priority schools" and "focus schools," respectively, set forth in the document titled ESEA Flexibility.

13.01.7   The provision in ESEA section 1117(c)(2)(A) that authorizes an SEA to reserve Title I, Part A funds to reward a Title I school that (1) significantly closed the achievement gap between subgroups in the school; or (2) has exceeded AYP for two or more consecutive years. Arkansas requested this waiver so that it may use funds reserved under ESEA section 1117(c)(2)(A) for any of the State's reward schools that meet the definition of "reward schools" set forth in the document titled ESEA Flexibility.

13.01.8   The requirements in ESEA section 2141(a), (b), and (c) for an LEA and SEA to comply with certain requirements for improvement plans regarding highly qualified teachers.  Arkansas requested this waiver to allow the SEA and its LEAs to focus on developing and implementing more meaningful evaluation and support systems.

13.01.9   The limitations in ESEA section 6123 that limit the amount of funds an SEA or LEA may transfer from certain ESEA programs to other ESEA programs.  Arkansas requested this waiver so that it and its LEAs may transfer up to 100 percent of the funds it receives under the authorized programs among those programs and into Title I, Part A.

13.01.10    The requirements in ESEA section 1003(g)(4) and the definition of a Tier I school in Section I.A.3 of the School Improvement Grants (SIG) final requirements. Arkansas requested this waiver so that it may award SIG funds to an LEA to implement one of the four SIG models in any of the State's priority schools that meet the definition of "priority schools" set forth in the document titled *ESEA Flexibility*.

13.02   ~~USDOE~~ US Ed Flexibility Principle 1:  College and Career-Ready Expectations for All Students

13.02.1    Definition of College and Career Ready:  The acquisition of the knowledge and skills a student needs to be successful in all future endeavors including credit-bearing, first-year courses at a postsecondary institution (such as a two- or four-year college, trade school, or technical school) or to embark successfully on a chosen career.  The State Board will make its determination of the requisite scale score of student performance on college and career readiness measurements used for college placement in conjunction with the Arkansas Higher Education Coordinating Board.

13.02.1    The State Board voted to participate in the Common Core State Standards for English Language Arts (ELA) and Mathematics in July 2010.

13.02.2    The following timeline will lead to full implementation of the Common Core State Standards during the 2013-2014 school year:

13.02.2.1    Grades K-2 implemented the Common Core State Standards during the 2011-2012 school year.

13.02.2.2    Grades 3-8 will implement the Common Core State Standards during the 2012-2013 school year.

13.02.2.3    Grades 9-12 will implement the Common Core State Standards during the 2013-2014 school year.

13.03   ~~USDOE~~ US Ed Flexibility Principle 2:  State-Developed Differentiated Recognition, Accountability and Support

13.03.1    The requirements contained within Section 13.03 of these rules shall comprise the Arkansas Differentiated Accountability, Recognition and Tiered-Support System (DARTSS).

13.03.2    The goals of DARTSS are, without limitation:

13.03.2.1    To move toward a unified federal and state accountability system beginning in 2012-2013; and

13.03.2.2     To establish the flexibility and opportunity to direct additional resources to schools with the lowest achieving students.

13.03.3     DARTSS differs from the current ESEA accountability system in the following ways:

13.03.3.1     The ESEA goal of 100 percent (100%) proficient by 2013-2014 is hereby replaced with a new goal of reducing proficiency gaps by half by the 2016-2017 school year.

13.03.3.2     Traditional ESEA accountability status labels are replaced by accountability and assistance levels for all schools.

13.03.3.3     Adequate Yearly Progress (AYP) is replaced with accountability levels based upon Annual Measurable Objectives (AMOs) for public schools and school districts.

13.03.3.4     Performance (proficiency), growth and graduation rate indicators will now use a minimum N, or sample size, of 25 students for accountability purposes.

13.03.3.5     DARTSS will place enhanced focus on subgroups through the Targeted Achievement Gap Group (TAGG)

13.03.3.6     Federal SES and school choice requirements are replaced by supports and interventions responsive to identified needs of students and schools.

13.04     The following groups of students will be included in DARTSS for the purposes of determining accountability status for school districts and schools:

13.04.1     All Students Group:  All students in the school and school district.

13.04.2     Targeted Achievement Gap Group (TAGG), which includes the following students:

13.04.2.1     Economically Disadvantaged;

13.04.2.2     English Learners (EL); and

13.04.2.3     Students with Disabilities (SWD).

13.05    The following groups of students will be included in DARTSS for the purposes of ACSIP and ESEA reporting:

    13.05.1        African-American;

    13.05.2        Hispanic;

    13.05.3        White;

    13.05.4        Economically Disadvantaged;

    13.05.5        English Learners; and

    13.05.6        Students with Disabilities.

13.06    Each group of students shall be measured according to the following Annual Measurable Objectives (AMOs):

    13.06.1        Math Proficiency;

    13.06.2        Math Growth (Grades 4-8);

    13.06.3        Literacy Proficiency;

    13.06.4        Literacy Growth (Grades 4-8); and

    13.06.5        Graduation Rate (High School).

13.07    AMO Calculations

    13.07.1        The ADE shall give schools and school districts full credit for meeting a particular AMO when the growth, performance or graduation rate meets or exceeds ninety-four percent (94%).

    13.07.2        The ADE shall initially calculate performance (proficiency) and growth AMOs based upon 2011 test results.

    13.07.3        The ADE shall use a lagging graduation rate in its annual accountability determination.

            13.07.3.1        The ADE shall calculate graduation rate AMOs using 2010 four-year cohort graduation rates in accordance with its flexibility proposal.

    13.07.4        AMO calculations will be based upon a minimum N of 25.  For schools with too few students to calculate the AMO in 2011, the AMO calculations shall be based on a two (2)-year weighted average.

13.07.5        In order to be eligible to be classified as Achieving or Exemplary, schools and school districts must test ninety-five percent (95%) of students in the All Students and TAGG groups.

13.08  DARTSS Accountability Labels

13.08.1        School districts shall be broadly classified as either:

13.08.1.1    Achieving; or

13.08.1.2    Needs Improvement.

13.08.1.3    School districts will be broadly classified based upon criteria similar to that used for the classification of individual schools.  To be classified as "Achieving," a school district must meet performance or growth AMOs for math and literacy for All Students and the TAGG, as well as graduation rate AMOs for All Students and the TAGG.

13.08.2        ADE engagement and school district autonomy shall be determined by the extent of the needs identified within the district. The extent of needs will be identified based upon the presence of identified Needs Improvement Focus and Needs Improvement Priority schools in the district, the number and type of AMOs not met for performance, growth, and graduation rate, and the number of district AMOs not met for performance, growth and graduation rate.

13.08.3        Individual schools within school districts shall be classified as one of the following:

13.08.3.1    Exemplary;

13.08.3.2    Achieving;

13.08.3.3    Needs Improvement;

13.08.3.4    Needs Improvement (Focus); or

13.08.3.5    Needs Improvement (Priority).

13.08.3.5.1    Within a time period determined by the ADE, a school classified as a Needs Improvement (Priority) school must develop and file with the ADE a Priority Improvement Plan (PIP) that is integrated into the school's ACSIP plan.

005.19

13.08.3.5.2   A school district with a Needs Improvement (Priority) school that has not made the progress required under the school's Priority Improvement Plan (PIP) may be identified by the ADE as a school district in academic distress.

13.08.4   The following table lists the ADE engagement and district autonomy associated with school accountability status:

| Status | Description | ADE Engagement/District Autonomy |
|---|---|---|
| **Exemplary** | • High Performance<br>• High Progress<br>• High TAGG high performance<br>• High TAGG high progress | • Very low ADE engagement<br>• Very high district autonomy |
| **Achieving** | • Three-year ACSIP – Meet all performance, graduate rate and growth AMOs for All Students Group and TAGG<br>• One-year ACSIP – Meet all performance and graduation rate AMOs for All Students Group and TAGG, but miss growth AMOs for All Students Group or TAGG | • Very low ADE engagement<br>• High district autonomy |
| **Needs Improvement** | • Does not meet performance, graduation rate or growth AMOs for All Students and TAGG | • Low to moderate ADE engagement<br>• Moderate district autonomy |
| **Needs Improvement – Focus** | • Schools with largest, persistent gaps between non-TAGG and TAGG students<br><br>• Graduation rates less than sixty percent (60%) over a period of several years and | • High ADE engagement<br>• Low district autonomy |

ADE 247-53

| | which are not classified as Needs Improvement – Priority schools. | |
|---|---|---|
| **Needs Improvement – Priority** | • Schools with persistently lowest achievement in math and literacy over three years for the All Students Group<br><br>• Graduation rates less than sixty percent (60%) over a period of several years. | • Very high ADE engagement<br>• Low district autonomy |

13.09  Strategic Use of Title I Funds

    13.09.1      School districts may use the flexibility granted by the ~~USDOE~~ US Ed to help lowest performing schools make targets by:

        13.09.1.1    Serving the lowest performing schools with Title I and/or NSLA funding using the most appropriate methods aligned to identified student and adult learning needs;

        13.09.1.2    Designating any Needs Improvement (Focus) or Needs Improvement (Priority) school as a Title I schoolwide program school, even if the school does not have a poverty percentage of forty percent (40%) or more; and

        13.09.1.3    Transferring up to one hundred percent (100%) of the school district's Title II-A funds into Title I and using them for Title I purposes.

    13.09.2      School districts have the following continuing obligations for the use of Title I-A Funds:

        13.09.2.1    Prioritize the school district's lowest achieving students in its lowest performing schools;

        13.09.2.2    Allocate Title I-A funds equal to the scope of the problem; and

        13.09.2.3    Demonstrate alignment of federal and NSLA allocations sufficient to support implementation of interventions.

13.10   Process for Notification and Review

    13.10.1    Prior to the first possible day of school, as defined by Ark. Code Ann. § 6-10-106, the Arkansas Department of Education shall notify the school board president and superintendent of each public school district of the following in writing, via certified mail, return receipt requested:

        13.10.1.1    The school district's preliminary classification under Section 13.08.1 of these rules; and

        13.10.1.2    The preliminary classification of each individual school within a school district under Section 13.08.3 of these rules.

    13.10.2    Contemporaneous with the notice required by Section 13.10.1 of these rules, the Arkansas Department of Education shall make available to the school board president and superintendent the data upon which the preliminary classifications of school districts and individual public schools were based.

    13.10.3    School districts shall have thirty (30) days from receipt of the notification required by Section 13.10.1 of these rules to review the data upon which the preliminary classifications of school districts and individual public schools were based, to submit to the Arkansas Department of Education any requests for corrections to the data, and to submit any other reason(s) for which the preliminary classifications should be modified. School districts may request revisions to the preliminary classifications for school districts and individual public schools during the same thirty (30) day period.

    13.10.4    Prior to January 1 of each school year, the Arkansas Department of Education shall review the information submitted by school districts pursuant to Section 13.10.3 of these rules and publish a final classification for each school district and individual public school.

13.11   USDOE US Ed Flexibility Principle 3: Supporting Effective Instruction and Leadership

Arkansas's requirements for supporting effective instruction and leadership may be found in the Teacher Excellence and Support System (Ark. Code Ann. § 6-17-2801 et seq.) and the Arkansas Department of Education Rules Governing the Teacher Excellence and Support System.

## 14.00  EMERGENCY CLAUSE

WHEREAS, Act 600 of 2013 contained an emergency clause and became effective on or about April 4, 2013; and

WHEREAS, Act 1073 of 2013 became effective on or about August 16, 2013; and

WHEREAS, Act 1081 of 2013 contained an emergency clause and became effective on or about April 11, 2013; and

WHEREAS, Act 1429 of 2013 became effective on or about August 16, 2013; and

WHEREAS, Act 600 of 2013 significantly amended Arkansas law concerning the academic distress of public schools and public school districts; and

WHEREAS, Act 1081 of 2013 significantly amended Arkansas law concerning the Arkansas Comprehensive Testing, Assessment, and Accountability Program; and

WHEREAS the Arkansas Department of Education Rules Governing the Arkansas Department of Education Rules Governing the Arkansas Comprehensive Testing, Assessment and Accountability Program (ACTAAP) and the Academic Distress Program should be immediately implemented to be consistent with Acts 600, 1073, 1081 and 1429 of 2013;

THEREFORE, the State Board of Education hereby determines pursuant to Ark. Code Ann. § 25-15-204 that imminent peril to the welfare of Arkansas public school districts, public schools, and public school students will result without the immediate promulgation of these rules.



# ARKANSAS DEPARTMENT OF EDUCATION

**Tony Wood**
*Commissioner*

**State Board of Education**

**Sam Ledbetter**
*Little Rock*
*Chair*

**Toyce Newton**
*Crossett*
*Vice Chair*

**Dr. Jay Barth**
*Little Rock*

**Joe Black**
*Newport*

**Alice Mahony**
*El Dorado*

**Mireya Reith**
*Fayetteville*

**Vicki Saviers**
*Little Rock*

**Diane Zook**
*Melbourne*

November 25, 2014

Dexter Suggs, Superintendent
Little Rock School District
810 W. Markham St.
Little Rock, AR 72201

**Re:    Academic Distress Notification**
**(VIA CERTIFIED MAIL)**

Dear Superintendent Suggs:

Pursuant to Ark. Code Ann. § 6-15-428, please accept this letter as notice that the Arkansas Department of Education has identified the following school(s) in the Little Rock School District as being in academic distress. The schools meet the definition of "academic distress" as set forth in Section 3.02.2 of the Arkansas Department of Education Rules Governing the Arkansas Comprehensive Testing, Assessment and Accountability Program (ACTAAP) and the Academic Distress Program.

| School LEA # | School Name | Percent Proficient or Advanced |
|---|---|---|
| 6001070 | W.D. Hamilton Learning Academy | 4.76 |
| 6001068 | Accelerated Learning Program | 11.11 |
| 6001002 | Hall High School | 39.26 |
| 6001702 | Cloverdale Aerospace Tech Charter | 41.36 |
| 6001064 | McClellan Magnet High School | 43.70 |
| 6001063 | J.A. Fair High School | 44.42 |
| 6001013 | Henderson Middle School | 46.04 |
| 6001052 | Baseline Elementary School | 46.21 |
| 6001009 | Forest Heights Middle School | 49.10 |

According to Section 3.02.2.1 of the ACTAAP Rules, a school may be identified as being in academic distress if 49.5% or less of its students achieve proficient or advanced in math and literacy on the state-mandated criterion referenced assessments administered for the most recent three (3) year period.

Your school district may appeal this determination to the Arkansas State Board of Education (State Board) by filing a written appeal with the Commissioner of Education via certified mail, return receipt requested, within thirty (30) calendar days of receipt of this notification.

Four Capitol Mall
Little Rock, AR
72201-1019
(501) 682-4475
ArkansasEd.org

*An Equal Opportunity*
*Employer*



**EXHIBIT**
tebbler
6

**Page Number** 2
**Name of Recipient** Suggs
**Date** November 25, 2014

You may send any appeal to Tony Wood, Commissioner, Arkansas Department of Education, Four Capitol Mall, Little Rock, AR 72201-1019.  Any appeal should contain written justification as to why a school should not be classified as being in academic distress.

If your school district does appeal this identification, the State Board shall hear the appeal within sixty (60) days of receipt of the written appeal in the commissioner's office.  In the event of an appeal, you will be provided separate notice of the time and date of the State Board hearing during which the matter will be considered.

Information on academic distress in the ACTAAP Rules can be found at the following link: http://www.arkansased.org/public/userfiles/rules/Current/ACTAAP-FINAL_-_September_2014.pdf

Please note the specific authority the State Board has with regard to a school district in academic distress.  (Ark. Code Ann. § 6-15-430; Section 11.0 of the ACTAAP Rules).

Thank you for your attention to this matter.  Please contact the Division of Public School Accountability at 501-682-5891 should you have any questions or require additional information.

Sincerely,

Tony Wood

Tony Wood, Commissioner
Arkansas Department of Education

cc:     M. Annette Barnes, Assistant Commissioner,
        Public School Accountability
        Jeremy Lasiter, General Legal Counsel,
        Arkansas Department of Education
        Samuel Ledbetter – Chairman,
        State Board of Education
        Toyce Newton – Vice Chairman
        Joe Black – Member
        Alice Williams Mahony – Member
        Mireya Reith – Member
        Vicki Saviers – Member
        Jay Barth – Member
        Diane Zook – Member
        Kim Davis – Member

**Minutes**
**State Board of Education Meeting**
**Thursday, August 13, 2015**

The State Board of Education met Thursday, August 13, 2015, in the Arkansas Department of Education Auditorium.  Chair Toyce Newton called the meeting to order at 10:07 a.m.

Present: Toyce Newton, Chair; Mireya Reith, Vice-Chair; Diane Zook; Joe Black; Dr. Jay Barth; Vicki Saviers; Susan Chambers; Brett Williamson; Charisse Dean; Ouida Newton, Teacher of the Year; and Johnny Key, Commissioner.

Absent: none

**Consent Agenda**

Dr. Barth pulled C-3 Review of Loan and Bond Applications, and Ms. Zook pulled C-8 Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-151 – Randalyn Hope (Harrison) Sutterfield and C-10 Consideration of the Recommendation of the Professional Licensure Standards Board for Case #15-071 – Haley L. Terhune-Hedden from the consent agenda.

Ms. Saviers moved, seconded by Ms. Chambers, to approve the consent agenda less items C-3 Review of Loan and Bond Applications, C-8 Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-151 – Randalyn Hope (Harrison) Sutterfield and C-10 Consideration of the Recommendation of the Professional Licensure Standards Board for Case #15-071 – Haley L. Terhune-Hedden. The motion carried unanimously.

- Dr. Barth moved, seconded by Ms. Reith, to approve C-3 Review of Loan and Bond Applications less the commercial bond for Dollarway and to table the Dollarway item. The motion carried unanimously.

  At a later time in the meeting, Ms. Saviers moved, seconded by Ms. Chambers, to remove C-3 Review of Loan and Bond Applications, as it relates to the commercial bond for Dollarway, from the table.  The motion carried unanimously.

  After discussion, Mr. Williamson moved, seconded by Ms. Dean, to table C-3 Review of Loan and Bond Applications, as it relates to the commercial bond for Dollarway, until later in the afternoon.  The motion carried unanimously.

1


EXHIBIT
7

- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #15-113 – Sarah Ashton Woods
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #15-086 - Michele Yvette Casteel
- Consideration of Approval of Education Service Cooperatives' Annual Report

## Action Agenda

### A-1 Consideration of Additional Arkansas Better Chance 2015-2016 Grants

Ms. Mary Kaye McKinney, representing the Division of Child Care and Early Childhood Education, said pursuant to the authority granted to the State Board of Education, the Division of Child Care and Early Childhood Education requested approval of the Arkansas Better Chance grants for the 2015-2016 school year totaling $1,701,500.00.

Ms. Zook moved, seconded by Ms. Reith, to approve the additional Arkansas Better Chance 2015-2016 Grants totaling $1,701,500.00.  The motion carried unanimously.

### A-2 Consideration of the Annual Student Discipline Report

Office for Education Policy Faculty Director Dr. Gary Ritter and Research Assistant Ms. Kaitlin Anderson said Act 1329 of 2013 required the ADE to evaluate the impact of school discipline on student achievement and report findings to the State Board of Education and school districts.  Dr. Ritter and Ms. Anderson said students are cited more often in disadvantaged districts.  Ms. Anderson said for these infractions, the state data indicated schools with high minority enrollments employed more strict discipline and certain types of students received more days of punishment.

Ms. Saviers moved, seconded by Ms. Reith, to approve the Annual Student Discipline Report.  The motion carried unanimously.

### A-3 Consideration of the Little Rock School District Monthly Report

Little Rock School District Superintendent Mr. Baker Kurrus said the district was ready to begin school on Monday.  He said enrollment was projected to increase. He said the district had identified school improvement specialists for the academic distress schools.  He said he needed the Civic Advisory Committee to respond to the questions that he posed previously.  He said the district was working with the Little Rock Education Association to negotiate a contract.

3

Public School Accountability Coordinator Mr. Elbert Harvey said during the 2013 - 2014 school year, Dermott High School was in violation of Standards Rules 15.03.2 (Teacher teaching out of area with no ALP or Waiver – Career Orientation).  the district did not appeal this finding and was assigned a status of Accredited-Probationary at the June 2014 State Board meeting.  During the 2014 - 2015 school year, Dermott High School did not teach the Required 38 Units and did not appeal this finding.  The Dermott High School was in violation of Standards Rules 9.03.3 (Math) and 9.03.4.7 (Social Studies) and was assigned a status of Accredited-Probationary at the June 2015 State Board meeting.  In accordance with A.C.A. § 6-15-207 and Standards for Accreditation rule 25.02, a district/school that has been placed in Accredited-Probationary status for two consecutive years shall be required to appear before the State Board of Education.  Mr. Harvey said the district had a plan to correct the issues.  He recommended two items for consideration:

1. ADE provides a quarterly comprehensive report to the State Board.
2. Dermott School District provides a quarterly report to the State Board as an action item.

Dermott School District Superintendent Ms. Krista Ridgell said the district was in compliance with Arkansas standards.

Commissioner Key said he has confidence that Ms. Ridgell and the Dermott School District can continue these improvements.  He said Ms. Karen Eoff, Director of the Southeast Education Service Cooperative, also committed to support the district.

Dr. Barth moved, seconded by Ms. Saviers, to approve the recommendations for Dermott School District.  The motion carried unanimously.

**A-7 Consideration of Appeal from Denial of School Choice Application – Coppedge**

Staff Attorney Ms. Jennifer Davis said pursuant to Ark. Code Ann. § 6-18-1901 et seq. (as amended by Act 560 of 2015) and the Arkansas Department of Education Emergency Rules Governing the Public School Choice Act of 2015, the Coppedge family appealed the decision of the Amorel School District to deny a school choice application for the 2015- 2016 school year.  She said the family resided in the Blytheville School District.

Armorel School District Superintendent Ms. Sally Bennett said she denied the application because the Blytheville School District submitted an exemption for school choice.  She said the Blytheville School District would welcome the Coppedge family.

5

exemption for school choice.  He said the Goodall family has other children in the Palestine-Wheatley School District.  He said at this time, the district had met the 95% guideline.  He said if seats became available he would welcome the Goodall student(s).

Attorney Mr. George Rozzell, representing the Goodall family, said the children should be able to attend Palestine-Wheatley School District because siblings attend.  He said the deadline for denial was not met.  He also contended that the desegregation order did not apply in this situation.

Attorney Mr. Sam Jones, representing the Forrest City School District, said the district has an active decree of desegregation.

Forrest City School District Superintendent Dr. Tiffany Hardrick said she had been advised that a legal transfer was not an option.

Attorney Mr. Brad Beavers, representing the Forrest City School District, said he would recommend the school board consider a legal transfer.

Mr. Rozzell interviewed the parent, Ms. Erica Goodall.  Ms. Goodall said she is a resident of Forrest City.  She explained that the process of getting her children to and from two different districts was a challenge.

Ms. Zook moved to approve the appeal for the School Choice Application for the Goodall family.  The motion died for lack of a second.

Dr. Barth moved, seconded by Ms. Reith, to deny the appeal for the School Choice Application for the Goodall family for public school choice and opportunity school choice.  Ms. Zook voted no.  The final vote was 7-1.  The motion carried.


**A-10 Consideration of Appeal from Denial of School Choice Application – Wilkison**

Staff Attorney Ms. Jennifer Davis said A-10 was pulled from the agenda.


**A-11 Consideration of Appeal from Denial of Opportunity School Choice Application – Mimms**

Staff Attorney Ms. Jennifer Davis said A-11 was pulled from the agenda.


**A-12 Consideration of Appeal from Denial of Opportunity School Choice Application – Noble**

Ms. Saviers moved, seconded by Ms. Zook, to approve the Charter Application Timelines.  The motion carried unanimously.

### A-17 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Amendment: Ozark Montessori Academy

Division of Learning Services Coordinator Ms. Mary Perry said Ozark Montessori Academy was authorized on October 16, 2014. The charter is approved to serve students in grades K-6 with a maximum enrollment of 120 for its first year of operation in 2015-2016, growing to K-8 with a maximum enrollment of 280 in 2019-2020.  On July 15, 2015, representatives of the Ozark Montessori Academy appeared before the Charter Authorizing Panel and requested an amendment to the current charter.  The Panel unanimously approved the amendment.  No request for the State Board of Education to review the decision made by the Panel was submitted.

Ms. Saviers moved, seconded by Ms. Zook, to not review the Charter Authorizing Panel Action on Open-Enrollment Public Charter School Amendment: Ozark Montessori Academy.  The motion carried unanimously.

### A-18 Charter Authorizing Panel Action on District Conversion Public Charter School Amendment: Lincoln High School New Tech

Division of Learning Services Coordinator Ms. Mary Perry said Lincoln High School New Tech was authorized on January 9, 2011.  The charter is approved to serve students in grades 8-12 with a maximum enrollment of 850. On July 15, 2015, representatives of the Lincoln School District appeared before the Charter Authorizing Panel and requested an amendment to the current charter.  The Panel unanimously approved the amendment.  No request for the State Board of Education to review the decision made by the Panel was submitted.

Ms. Zook moved, seconded by Ms. Saviers, to not review the Charter Authorizing Panel Action on District Conversion Public Charter School Amendment: Lincoln High School New Tech.  The motion carried unanimously.

### A-19 Charter Authorizing Panel Action on District Conversion Public Charter School Amendment: Pea Ridge Manufacturing and Business Academy

Division of Learning Services Coordinator Ms. Mary Perry said Pea Ridge Manufacturing and Business Academy was authorized on January 16, 2014. The charter is approved to serve students in grades 11-12 with a maximum enrollment of 250. On July 15, 2015, representatives of the Rea Ridge School

Assistant Commissioner of Public School Accountability Ms. Annette Barnes said the ALE was included in categorical funding.

Arkansas Public School Resource Center Attorney Mr. Tripp Walter said the Armorel School District was requesting the package of waivers, as they applied to alternative learning environments.

State Board Actions
1. Ms. Zook moved, seconded by Mr. Williamson, to approve the waiver for ALE for the Armorel School District. Ms. Reith, Dr. Barth, Ms. Saviers, Ms. Chambers, and Ms. Dean voted no. The final vote was 3-5. The motion failed.
2. Dr. Barth moved, seconded by Ms. Reith, to deny the waiver for closing the achievement gap task force for the Armorel School District. Ms. Zook and Mr. Williamson voted no. The final vote was 6-2. The motion passed.
3. Ms. Reith moved, seconded by Ms. Dean, to deny the waiver for duty-free lunch for the Armorel School District. Mr. Williamson voted no. The final vote was 7-1. The motion passed.
4. Ms. Dean moved, seconded by Ms. Saviers, to deny the waiver for planning time for the Armorel School District. Ms. Zook and Mr. Williamson voted no. The motion passed.
No open-enrollment charter waivers were granted to the Armorel School District.

**A-22 District Request for Waivers Granted to Open-Enrollment Charter: Batesville School District**

Division of Learning Services Coordinator Ms. Mary Perry said Act 1240 of 2015 allows a school district to petition the State Board of Education for all or some of the waivers granted to an open-enrollment public charter school that draws students from the school district.

Batesville School District Deputy Superintendent Mr. Harvey Howard explained the reasons for requesting three waivers:
1. planned instruction day
2. class size – Grades 7-12
3. licensure
4. pulled from consideration

Batesville School District Secondary Curriculum Coordinator Ms. Lisa Huff said the school was on an A-B block schedule.

Professional Licensure Standards Board (PLSB) Attorney Ms. Cheryl Reinhart said non-licensed employees are not subject to educator ethics.

    2.  uniform grading scale
    3.  concurrent college credit
    4.  leased academic facilities
    5.  clock hours for units of credit

Assistant Commissioner for Educator Effectiveness and Licensure Ms. Ivy Pfeffer said Arkansas History was a requirement for Arkansas licensure.

Staff Attorney Ms. Jennifer Davis said the law did not provide for timelines. She said the district could ask for a timeline.

Dr. Poore requested a five-year approval of the five waivers.

State Board Actions
1. Dr. Barth moved, seconded by Mr. Williamson, to approve the waiver for licensure of non-core educators in the *Ignite* program for the Bentonville School District for five years. The final vote was 8-0. The motion carried unanimously.
2. Ms. Saviers moved, seconded by Ms. Chambers, to approve the waiver for uniform grading scale for the Bentonville School District for five years. The final vote was 8-0. The motion carried unanimously.
3. Ms. Saviers moved, seconded by Mr. Williamson, to approve the waiver for concurrent college credit for the Bentonville School District for five years. Dr. Barth, Ms. Reith, and Ms. Zook voted no. The final vote was 5-3. The motion passed.
4. Ms. Reith moved, seconded by Ms. Dean, to approve the waiver for leased academic facilities for the Bentonville School District for five years. The final vote was 8-0. The motion carried unanimously.
5. Ms. Dean moved, seconded by Ms. Chambers, to approve the waiver for clock hours for units of credit for the Bentonville School District for five years. The final vote was 8-0. The motion carried unanimously.

Five open-enrollment charter waivers were granted to the Bentonville School District for a period of five years.

## A-24 District Request for Waivers Granted to Open-Enrollment Charter: Forrest City School District

The district requested A-24 be pulled from the agenda.

## A-25 District Request for Waivers Granted to Open-Enrollment Charter: Osceola School District

Division of Learning Services Coordinator Ms. Mary Perry said A-25 was pulled from the agenda.

**of Education Rules Governing Background Checks and License Revocation**

Professional Licensure Standards Board (PLSB) Attorney Ms. Cheryl Reinhart said the Department has proposed revised Rules Governing Background Checks and License Revocation that contain changes to the rules based on recent legislation and for other updates.

Dr. Williamson moved, seconded by Ms. Saviers, to approve the Arkansas Department of Education Rules Governing Background Checks and License Revocation for public comment. The motion carried unanimously.

### A-30 Consideration for Public Comment – Proposed Arkansas Department of Education Rules Governing the Teacher Excellence and Support System

Professional Licensure Standards Board (PLSB) Attorney Ms. Cheryl Reinhart said the Department has proposed revised Rules Governing the Teacher Excellence and Support System that contain changes to the rules based on recent legislation and for other updates.

Dr. Barth moved, seconded by Ms. Reith, to approve the Arkansas Department of Education Rules Governing the Teacher Excellence and Support System for public comment. The motion carried unanimously.

### A-31 Consideration for Public Comment – Proposed Arkansas Department of Education Rules Governing the Leader Excellence and Development System

Professional Licensure Standards Board (PLSB) Attorney Ms. Cheryl Reinhart said the Department has proposed revised Rules Governing the Leader Excellence and Development System that contain changes to the rules based on recent legislation and for other updates.

Ms. Zook moved, seconded by Ms. Reith, to approve the Arkansas Department of Education Rules Governing the Leader Excellence and Development System for public comment. The motion carried unanimously.

### A-32 Consideration for Approval of Emergency Rules - Proposed Arkansas Department of Education Rules Governing the Distribution of Student Special Needs Funding and the Determination of Allowable Expenditures of Those Funds

Staff Attorney Mr. Cory Biggs said the Department submits these emergency

## Adjournment

All members moved to adjourn.  The motion carried unanimously.

The meeting adjourned at 7:59 p.m.

*Minutes recorded by Deborah Coffman*


_____
Toyce Newton, Chair

_____
Johnny Key, Commissioner of Education

**Minutes**
**State Board of Education Meeting**
**Thursday, September 11, 2014**

The State Board of Education met Thursday, September 11, 2014, in the Auditorium of the Department of Education Building.  Chairman Sam Ledbetter called the meeting to order at 10:03 a.m.

Present: Sam Ledbetter, Chairman; Alice Mahony; Dr. Jay Barth; Diane Zook; Mireya Reith; Joe Black; Vicki Saviers; Kim Davis; Jonathan Crossley, Teacher of the Year; and Tony Wood, Commissioner

Absent:  Toyce Newton, Vice-Chair

Mr. Ledbetter welcomed new Board member, Kim Davis.

**Consent Agenda**

The Board pulled C-7 from the consent agenda: C-7 Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-023 – Daniel Joseph Brewer.

Ms. Saviers moved, seconded by Dr. Barth, to approve the consent agenda less C-7. The motion carried unanimously.

Items included in the Consent Agenda:
- Minutes - August 14, 2014
- Minutes - August 15, 2014
- Minutes - August 21, 2014
- Newly Employed, Promotions and Separations
- Report on Waivers to School Districts for Teachers Teaching Out of Area for Longer than Thirty (30) Days, Ark. Code Ann. §6-17-309
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #13-178A – Johnny Lester Fleming
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-058 –Mary Elizabeth Smith
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-074 –Penny Louise Oden
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-075 – Johnna Christine Creasey
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-082 – Alan Keith Geibe
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-095 – Ashley Sue Holder



EXHIBIT
8

- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-115 – Charlene Roseann Cooper
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-125 – Linda Kozo Self
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-129 – Earl Deer Young
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-150 – Jeremy David Allen
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-156 – Donna Jean Saul
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-158 – Jerilynn Jill Cravens

### Action Agenda

**Consideration for Approval of Embedded Courses**

Curriculum and Instruction Specialist Mr. Thomas Coy said Act 421 of 2013 allowed curriculum frameworks from two (2) separate courses to be taught in a single course, known as a combined or embedded course.  He said several school districts made application to the Curriculum and Instruction Unit for approval of the combined or embedded course and assured, in writing, that the curriculum frameworks for both courses would be fully taught in the combined or embedded course.   Mr. Coy said districts understand that when the curriculum frameworks for one of the courses are revised, a new course approval request must be submitted to the Board and approval must be granted before a school would be allowed to offer the embedded courses.

> Earle School District - English 9 and Oral Communications
> Huntsville School District - Oral Communications and English 10
> Poyen School District - Oral Communications and English 9

Dr. Barth moved, seconded by Ms. Saviers, to approve the embedded courses.  The motion carried unanimously.

**Consideration for Public Comment: Arkansas Department of Education Rules Governing Kindergarten through 12th Grade Immunization Requirements in Arkansas Public Schools**

Department Staff Attorney Ms. Kendra Clay said the Arkansas Department of Health recently updated its Rules and Regulations Pertaining to the Immunization Requirements.  She said revisions to ADE's rules governing immunizations are necessary to align ADH and ADE's immunization requirements.

Ms. Saviers moved, seconded by Mr. Black, to approve the Arkansas Department of

Education Rules Governing Kindergarten through 12th Grade Immunization
Requirements in Arkansas Public Schools for public comment.  The motion carried
unanimously.

**Consideration for Final Approval: Proposed Revision of the Arkansas
Department of Education Rules Governing Special Education and Related
Services, Section 18.00 Residential Placement**

Ms. Courtney Salas-Ford, attorney for SPED said the Arkansas Department of
Education (ADE) recommended revision of these rules to reflect changes in licensure by
the Arkansas Department of Human Services (DHS), Office of Long Term Care, more
appropriately define residential placement in-state, and clarify assignment of
responsibility for education.  She said the State Board of Education released these rules
for public comment on July 14, 2014 and a public hearing was held on July 28, 2014.
She said the public comment period expired on August 15, 2014.  Ms. Salas-Ford said
written comments were received during the public comment period and revisions were
made to the rules as a result of the comments to more clearly reflect the language in the
statute.  She asked the Board to give final approval to these rules pending Legislative
Council review.

Dr. Barth moved, seconded by Ms. Saviers, to approve the proposed revision of the
Arkansas Department of Education Rules Governing Special Education and Related
Services, Section 18.00 Residential Placement.  The motion carried unanimously.

**Consideration for Final Approval: Arkansas Department of Education Rules
Governing the College and Career Readiness Planning Programs**

Department Deputy General Counsel Lori Freno-Engman said Section 14 of Act 1073 of
2013 made a slight revision to the definition of "college readiness assessment" as that
definition applies to the College and Career Readiness Program.  She said Department
staff revised the rules accordingly and the Board approved the revised rules for public
comment on July 10, 2014.  She said a public hearing was held on July 28, 2014 and
the public comment period expired on August 22, 2014.  Ms. Freno-Engman said staff
received public comments on the proposed rules, but made no changes to the proposed
rules based upon the public comments received.

Ms. Reith moved, seconded by Ms. Saviers, to approve the Arkansas Department of
Education Rules Governing the College and Career Readiness Planning Programs.
Ms. Mahony voted no.  The final vote was 6-1. The motion carried.

**Consideration for Final Approval: Arkansas Department of Education Rules
Governing the Calculation of Miscellaneous Funds**

Department Staff Attorney Ms. Kendra Clay said Act 322 of 2013 significantly revised the method of calculation for miscellaneous funds and bonded debt assistance. She said previously, miscellaneous funds were calculated as an average of the amounts collected by a school district over the past five years. Under Act 322 of 2013, miscellaneous funds are now calculated based upon the aggregate amount collected during the preceding year. She said the Board approved the revised rules for public comment on July 10, 2014, and the Department conducted a public hearing on July 28, 2014. She said the public comment period expired on August 22, 2014, and staff received no public comments on the proposed rules. She asked the Board to grant final approval of these rules pending legislative subcommittee review.

Dr. Barth moved, seconded by Ms. Saviers, to approve the Arkansas Department of Education Rules Governing the Calculation of Miscellaneous Funds. The motion carried unanimously.

## Reports

### Connecting GIS with Education

Sonora Elementary EAST students, Kylie Miller and Rikki Vaughan, and facilitator Josh Worthy presented projects that students collaborated in Springdale School District to present at the 2014 Esri International Users Conference in San Diego. Kylie and Rikki demonstrated how they utilized GIS to map three different projects.

The Board praised the work of the Springdale School District's students and facilitator.

President and Chief Executive Officer for EAST Initiative Mr. Matt Dozier shared the story of an Arkansas East student that continued in the field:
http://eastinitiative.wordpress.com/2014/08/05/how-east-equipped-me-to-take-on-anything/

Mr. Dozier also shared that the East Initiative has partnered with AT&T and received a grant to support the work at the Arkansas Innovation Hub.

### Chair's Report

Chairman Ledbetter said the 2015 Arkansas Teacher of the Year Ceremony to honor the 15 regional finalists would be held Tuesday, September 16, at the Capitol.

Dr. Barth said Dr. Francis Eberle will meet with the Board in November for a Thursday work session. He said Dr. Eberle is the Deputy Executive Director of the National Association of State Boards of Education and is responsible for directing the organization's Next Generation Science Standards project.

Dr. Barth said Dr. James Gates would speak at the Clinton School of Public Service at 6:00 pm on Wednesday, December 10, 2014.  He encouraged all Board members to attend.  The speaking engagement is part of the NASBE grant for Science that Dr. Barth submitted on behalf of the Board and the Department.

Ms. Saviers requested the special committee on academic distress meet to discuss the list of academic distress schools.  Mr. Ledbetter encouraged other Board members to join the special committee.

Ms. Reith said the White House Initiative on Educational Excellence for Hispanics kicked off the 2014 Back-to-School Tour with a stop in Springdale, Arkansas.  She said the Springdale School District has excelled at reaching out and meeting the needs of the ELL population.

Ms. Zook said it is National Literacy Month.  She encouraged everyone to get into a school and read to a child.  Ms. Zook said the Jobs Now Summit would be held September 23 at the Convention Center.

Mr. Davis thanked Commissioner Wood for participating in the Springdale celebration.

2014 Arkansas Teacher of the Year Jonathan Crossley said the Arkansas Exemplary Educator Network (AEEN) would meet September 16 at noon, following the ATOY celebration.  He invited Board members to attend the meeting.  Mr. Crossley recently visited the Mid South Community College in West Memphis and was very impressed with the career education.  Mr. Crossley and the ADE Communication's Team will be highlighting positive stories from Arkansas classrooms.

## Commissioner's Report

Commissioner Wood said the Mineral Springs School District and the Dollarway School District would be electing a local school board September 2014 and returning to local control October 1, 2014.

Commissioner Wood said the PCSSD would remain under state control due to the phase-out of the desegregation funding.  He said the district is doing well but would still need oversight.  He said the Lee County School District and the Helena-West Helena School District would remain under state authority, and he has directed resources to these two districts.

## Update on Content Standards and Assessment

Assistant Commissioner for Learning Services Dr. Debbie Jones said the Board received a detailed report from Mr. Lyle Rupert from the Governor's School.

Dr. Jones said approximately 93% of the 2014 Arkansas Graduating Class took the ACT at least once with increases in English, Reading and Science while Math scores remained the same.

Dr. Jones said pursuant to Act 1294 of 2013, the Department has released a Commissioner's Memo for guidance on dyslexia implementation.

Dr. Jones said that Ms. Hope Allen, Student Assessment Director, was at a PARCC meeting.  She said students would be able to use paper for math calculations.  Dr. Jones encouraged schools to utilize the practice tests.

Mr. Bill Ballard, State Coordinator for Home School said 1,040 home school students were not tested last year.  Mr. Ballard said local superintendents contacted parents about the testing requirements for home school students.  Dr. Jones said she is working with Mr. Ballard to determine appropriate assessments for home school students.  Dr. Jones said that 85 home school students participated in interscholastic activities last year.

Dr. Jones said the state is on track with the PARCC assessments.  She said the state would not receive test results until Fall 2015 due to the standard setting process.

Ms. Zook said she met with Department staff and shared that some districts have expressed concerns that the dyslexia guidance may limit the programs that meet the guidelines.  She said the team is working with Senator Joyce Elliott to review any possible revisions to the law.  She commended the Flippin School District for their early commitment to providing services to students.


**Special Board Committee: Parent Communication**

Ms. Mahony, Chair of the Special Committee on Parent Communication said the committee met August 15, 2014.  She said future meetings have been postponed until a later.  Ms. Mahony introduced the My Child/My Student Communication Campaign by sharing the campaign video available on the ADE website at http://www.arkansased.org/divisions/communications/my-childmy-student

Chief of Staff Deborah Coffman explained the goal of the campaign is to support parent and teacher communication.  Ms. Coffman and Ms. Mahony encouraged all stakeholders to follow the ADE Social Media – Facebook and Twitter.


**Report from the Arkansas Task Force for the Prevention Through Education of Child Sexual Abuse**

Chief of Staff Deborah Coffman said pursuant to Act 1298 of 2013, the Arkansas Task Force for the Prevention Through Education of Child Sexual Abuse gathered

information concerning the prevalence of child sexual abuse throughout Arkansas; received reports and testimony from individuals, state and local agencies, community-based organizations, and other public and private organizations; and made recommendations concerning evidence-based ways to prevent child sexual abuse through education.  The task force recommended K-5 schools consider 21 critical elements of an effective child sexual abuse prevention program.  The task force also made ten (10) additional recommendations for consideration by the General Assembly.

## Adjournment

The meeting adjourned at 11:44 a.m.

*Minutes recorded by Deborah Coffman.*


_____           _____
Mr. Sam Ledbetter, Chair              Mr. Tony Wood, Commissioner of Education

**Minutes**
**State Board of Education Meeting of the**
**Special Committee on Academic Distress**
**Tuesday, October 14, 2014**

The State Board of Education Special Committee on Academic Distress met Tuesday, October 14, 2014, in the Auditorium of the Department of Education Building.  Chair Vicki Saviers called the meeting to order at 1:00 p.m.

Present: Vicki Saviers, Chair; Sam Ledbetter; Toyce Newton; and Diane Zook

Absent:  None

### Work Session

**Review Data and Information Pertaining to the Academic Distress Schools in the Little Rock School District**

Ms. Saviers said on March 28, 2014 at the Special Board Meeting, Chair Gullett appointed a special committee to study chronically underperforming school districts. Chair Gullett requested Ms. Saviers, Ms. Newton, and Mr. Ledbetter serve on the special committee, with Ms. Saviers serving as chair of the committee.

Ms. Saviers said the State Board of Education classified Schools in Academic Distress on July 10, 2014.  She said the Special Committee on Academic Distress would review the schools classified as Academic Distress Schools in the Little Rock School District.

Little Rock School District Representatives:
      Dr. Dexter Suggs, Superintendent
      Dennis Glasgow, Associate Superintendent of Accountability
      Marvin Burton, Deputy Superintendent
      Henry Anderson, Principal of McClellan High School
      Larry Schleischer, Principal of Hall High School
      Wanda Ruffins, Principal of Cloverdale Aerospace Technology Charter School
      Katina Ray, Principal of Baseline Elementary School
      Greg Adams, President LRSD School Board
      Frank Williams, Principal of Henderson Middle School
      Jeremy Owoh, Principal of J. A. Fair High School
      Additional Little Rock School District representatives were in attendance.

External Provider: none



EXHIBIT

9

1

ADE Staff:
    Elbert Harvey, Coordinator for Public School Accountability
    Dr. Richard Wilde, Director of School Improvement
    Dr. Robert Toney, School Improvement Specialist
    Lisa Knoedl, School Improvement Specialist
    Chantel'e Williams, School Improvement Specialist
    Kyron Jones, School Improvement Specialist
    Roxey Browning, School Improvement Specialist
    Dr. Debbie Jones, Assistant Commissioner of Learning Services
    Additional ADE staff members were in attendance.

Ms. Saviers said this was an informal meeting to determine barriers and solutions to the success of these schools. She said the purpose of the meeting was to examine data, talk to people in the schools and identify next steps.

The following schools have been classified as academic distress:
    Baseline Elementary School
    Cloverdale Aerospace Technology Center
    Hall High School
    Henderson Middle School
    J.A. Fair High School
    McClellan Magnet High School

Superintendent Suggs said he was hired to improve student learning. He focused on the restructuring of the curriculum and instruction division.

Mr. Glasgow explained that historical classroom walk-through data showed mostly whole group instruction with low levels of instruction and compliant engagement of students. He said the district wanted a plan in which the central office could pay attention to the implementation. He highlighted the focus points of the improvement plan to include teachers designing lesson plans with eight essential components and principals monitoring the lesson plans for these components. He said schools would utilize leadership teams to examine data and make shared decisions. He said the central office had let the schools down because they did not follow through with support.
Dr. Wilde said an ADE team reviewed the information available regarding the schools. He said the use of data and the science of school improvement is not applied uniformly across schools. He said this year the LRSD has embraced the ADE team. Dr. Wilde said constant change in leadership has brought no cumulative benefit to the district. He recommended a memorandum of understanding (MOU) with a principal about the expectations and commitment between district and principal. He recommended spreading literacy across the school. He also recommended stabilizing the superintendent's position.

Dr. Suggs said he has had an opportunity to listen and learn about the district over the past year. He said the LRSD has silos of excellence and distress. He

2

said the district needed to put students first and monitor it.  He said this plan was more conducive to what the district needed to do, not relying on programs or vendors.  He said he was concerned about the sense of urgency needed and the stamina to stay with it to see it through for results.  He said he was concerned about the grit to make hard decisions.  Dr. Suggs said the district had become an employment agency and has failed generation after generation of students.  He said the district would have to ensure that they are willing to do something different - be bold, courageous, and intentional in the work.

Ms. Newton said it was egregious to allow this lack of progress to continue.  She said the district needed to have an attitude to do what works for students.  She said the district does not need a system feeding poor performance.

The committee members asked questions of the group regarding the current status of the work and the outcomes or expected outcomes of the work in the schools classified in academic distress in the Little Rock School District.

Mr. Adams said the enrollment in the distress schools have declined while the percentage of high-poverty students has increased.  He said parents have more choices and this increases the urgency to do something.  He said Dr. Suggs' comments about the history of change in leadership were a concern.  He said the public perception of the past twenty years overshadows the current school board's attempt to work together.  He said the school board members know they need to have these hard conversations and set the bar higher.

Mr. Ledbetter said that he heard commitment to this plan but would need to see success.

LRSD Board Members expressed their commitment to working together to assist schools in academic distress and other schools on needs improvement list.  The following LRSD Board Members addressed the State Board:
> Joy Springer
> Tara Shephard
> Diane Curry
> Jim Ross
> Leslie Fisken

Ms. Saviers called upon each building principal to provide a few words about their school.  Each principal highlighted the work being done to implement progress.

Ms. Newton said this meeting was an opportunity to memorialize the LRSD commitment.  She said the young people should come back and demand an accounting because the district was on the record to do the right thing.

3

Ms. Saviers said she would make a recommendation that LRSD come back in three (3) months with a progress report of the plan.   Ms. Zook outlined questions that should be answered in the progress report.

## Adjournment

The meeting adjourned at 3:13 p.m.

*Minutes recorded by Deborah Coffman.*

_____
Vicki Saivers, Chair

4

**Minutes**
**State Board of Education Meeting**
**Thursday, November 13, 2014**

The State Board of Education met Thursday, November 13, 2014, in the Auditorium of the Department of Education Building.  Chairman Sam Ledbetter called the meeting to order at 10:02 a.m.

Present: Sam Ledbetter, Chairman; Toyce Newton, Vice-Chair; Alice Mahony; Dr. Jay Barth; Diane Zook; Mireya Reith; Joe Black; Vicki Saviers; Kim Davis; Jonathan Crossley, Teacher of the Year; and Tony Wood, Commissioner

Absent:  none

Mr. Ledbetter recognized Representatives Mark Perry, Mark Lowery and Grant Hodges.

**Consent Agenda**

Dr. Barth moved, seconded by Ms. Saviers, to approve the consent agenda less Consent Item-10.  The motion carried unanimously.

Items included in the Consent Agenda:
- Minutes - October 9, 2014
- Minutes - October 10, 2014
- Newly Employed, Promotions and Separations
- Report on Waivers to School Districts for Teachers Teaching Out of Area for Longer than Thirty (30) Days, Ark. Code Ann. §6-17-309
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #T14-003A –Deborah S. Smart
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-171 – Derek Scott Phillips
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-178 – William Earl Braswell
- Consideration of the Recommendation of the Professional Licensure Standards Board for Case #14-180 –Matthew O. Orf
- Consideration of the Voluntary Surrender and Revocation of Arkansas Educator's License – PLSB Case #14-056 – Barry Duane Gebhart

Dr. Barth moved, seconded by Ms. Newton, to approve C-10:  Progress Report on Status of Districts Classified in Fiscal Distress, with a follow-up report on Lee County and Helena-West Helena School Districts at the December Board meeting.  The motion carried unanimously.

1



EXHIBIT

10

**Action Agenda**

**A-1 Consideration for Emergency Adoption: Arkansas Department of Education Rules Governing the Creation of School Districts by Detachment**

Department General Counsel Jeremy Lasiter said Ark. Code Ann. § 6-13-1505(e)(3) required the State Board of Education to enact rules and regulations regarding the creation of school districts by detachment.  He said Act 1274 of 2013 amended the statute to permit the State Board of Education to allow a transition period of up to two (2) consecutive school years to allow a new school district created by detachment to become fully operational.  In September 2014, voters in the Jacksonville, Arkansas area approved the proposed detachment of the Jacksonville-North Pulaski School District from the Pulaski County Special School District.

Ms. Saviers moved, seconded by Ms. Zook, to approve the Arkansas Department of Education Rules Governing the Creation of School Districts by Detachment for emergency adoption.  The motion carried unanimously.

**A-2 Consideration for Public Comment: Arkansas Department of Education Rules Governing the Creation of School Districts by Detachment**

Department General Counsel Jeremy Lasiter said Ark. Code Ann. § 6-13-1505(e)(3) required the State Board of Education to enact rules and regulations regarding the creation of school districts by detachment.  Act 1274 of 2013 amended the statute to permit the State Board of Education to allow a transition period of up to two (2) consecutive school years to allow a new school district created by detachment to become fully operational.

Ms. Zook moved, seconded by Dr. Barth, to approve the Arkansas Department of Education Rules Governing the Creation of School Districts by Detachment for public comment.  The motion carried unanimously.

**A-3 Consideration of Order Creating the Jacksonville-North Pulaski School District and Appointment of Board Members**

Department General Counsel Jeremy Lasiter said in September 2014, pursuant to Ark. Code Ann. § 6-13-1501 et seq., voters in the Jacksonville area approved the proposed detachment of the Jacksonville-North Pulaski School District from the Pulaski County Special School District.  Ark. Code Ann. § 6-13-1505 required the State Board of Education to order the creation of the new Jacksonville-North Pulaski School District.  The statute also required the State Board of Education to appoint a board of directors of seven (7) members for the new school district to

2

serve until the next regular election of members, when a board of directors shall be elected in compliance with Arkansas law.

Mr. Patrick Wilson said the vote from the community was 95% for the detachment of the Jacksonville/North Pulaski School District.

Representative Mark Perry said the committee took applications, interviewed the top ten applicants and selected the final seven board members to present to the State Board. He said the members represented most of the geographical regions of the area. He noted that the new district has not been zoned yet.

Mr. Ivory Tillman, representative for the Jacksonville NAACP, said he was in favor of the district. He said that minorities were given a voice in the selection of board members. He requested to continue the transparency of operations. Mr. Lasiter said that interim board meetings would be open public meetings.

Dr. James Bolden said he appreciated the opportunity to detach the district.

Ms. Zook moved, seconded by Ms. Mahony, to approve the order creating the Jacksonville-North Pulaski School District and appointment of Board Members. The motion carried unanimously. Mr. Ledbetter signed the order.

### A-4 Consideration of Request for Waiver from Required 38 Units for the 2014-15 school year - Mammoth Spring School District

Mammoth Spring School District Superintendent Mr. David Turnbough said the Mammoth Spring School District requested a waiver from Standards Rule 9.03.4.4 (Foreign Language – 2 units of the same language). He said the district requested to transition from French to Spanish. The district has students currently enrolled in Spanish I and French II this school year and will teach Spanish I and Spanish II in the 2015-16 school year.

Ms. Mahony moved, seconded by Ms. Saviers, to approve a waiver from the required 38 units for the 2014-15 school year for the Mammoth Spring School District. The motion carried unanimously.

### A-5 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Amendment: Northwest Arkansas Classical Academy

A-5 was pulled from the agenda.

### A-6 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Amendment: KIPP Delta Public Schools

Director of the Office of Educational Options Ms. Cindy Hogue said the State Board of Education approved the application for KIPP Delta Public Schools on March 11, 2002.  She said the charter was approved to serve students in grades K-12 with a maximum enrollment of 1500.  She said representatives of KIPP Public Schools appeared before the Charter Authorizing Panel on October 15, 2014, and the panel unanimously approved the requested amendments to the current charter.

Ms. Saviers moved, seconded by Ms. Newton, to not review the Charter Authorizing Panel action on the open-enrollment public charter school amendment for KIPP Delta Public Schools.  The motion carried unanimously.

**A-7 Applicant Request For Review: Arkansas Connections Academy, Bentonville, Arkansas**

Director of the Office of Educational Options Ms. Cindy Hogue said representatives of Arkansas Connections Academy appeared before the Panel on October 15 and requested that Arkansas Connections Academy, Inc., the sponsoring entity, be allowed to open a charter school in Bentonville to serve students virtually across the state in grades K-12 with a maximum enrollment of 3000.  She said representatives of the Arkansas Association of Educational Administrators (AAEA) spoke in opposition to the charter.  The panel unanimously denied the application for Arkansas Connections Academy. The panel also voted not to allow resubmission of the application during the current application cycle.

Dr. Dennis Beck, Board President of the Arkansas Connections Academy, said families need additional school options and flexibility.  He said the academy is willing to adjust the requests for waivers.

Mr. Mike Mertens, representing the AAEA, said the organization is concerned about funding for virtual schools.  He said Act 293 of 2014 had special language regarding funding for virtual schools.  He said AAEA requested that no new virtual schools be approved until legislation may be submitted to clean up the funding issues with virtual schools.

Dr. Beck said funding should follow students.  He said he agreed with the need to change the legislation to allow any Arkansas student to participate.

Ms. Saviers moved, seconded by Dr. Barth, to not review the applicant request for the Arkansas Connections Academy, Bentonville, Arkansas.  The motion carried unanimously.

4

**A-8 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Application: Capitol City Lighthouse Charter School, North Little Rock, Arkansas**

Director of the Office of Educational Options Ms. Cindy Hogue said representatives of Capitol City Lighthouse Charter School appeared before the Charter Authorizing Panel on October 15 and requested that Lighthouse Academies of Central Arkansas, Inc., the sponsoring entity, be allowed to open a charter in North Little Rock to serve students in grades K-12 with a maximum enrollment of 750.  She said representatives of the North Little Rock School District spoke in opposition to the charter.  Ms. Hogue said by a 3-1 vote, the panel approved the application for Capitol City Lighthouse Charter School.

Assistant Commissioner Dr. Debbie Jones said that she voted against the approval of the charter school because she was concerned about the curriculum in high school.  She said the data were comparable, but not exceptional.  She said the North Little Rock School District was concerned about the timeline for renovations for the proposed building.

Assistant Commissioner Ms. Ivy Pfeffer said that she voted for approval of the charter school because it met the application criteria.

Dr. Phyllis Anderson said patrons from the area had requested the charter school.

Ms. Newton moved, seconded by Ms. Saviers, to not review the Charter Authorizing Panel action on open-enrollment public charter school application for the Capitol City Lighthouse Charter School, North Little Rock, Arkansas.  Dr. Barth voted no.  The motion carried.


**A-9 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Application: Haas Hall Academy, Bentonville, Arkansas**

Director of the Office of Educational Options Ms. Cindy Hogue said representatives of Haas Hall Academy appeared before the Charter Authorizing Panel on October 15 and requested The Academy, Inc., the sponsoring entity, be allowed to open a charter in Bentonville to serve students in grades 7-12 with a maximum enrollment of 500.  Ms. Hogue said that by a 3-1 vote, the panel approved the application for Haas Hall Academy.

Dr. Martin W. Schoppmeyer, Jr. said parents apply online then meet with him to go over questions and receive a tour.  He said the meeting does not conflict with the lottery.  He said the school does not accept federal funding.

Assistant Commissioner Dr. Eric Saunders said that he voted against approval of

the charter based on the lack of diversity to the student enrollment.

Mr. Mark Henry said his child completed the registration and lottery process. He said there was a great need for this school in Bentonville.

Ms. Zook moved, seconded by Ms. Newton, to not review the Charter Authorizing Panel Action on open-enrollment public charter school application for the Haas Hall Academy, Bentonville, Arkansas. Ms. Mahony voted no. The motion carried.

### A-10 Charter Authorizing Panel Action on Open-Enrollment Public Charter School Application: Ozark Montessori Academy, Springdale, Arkansas

Director of the Office of Educational Options Ms. Cindy Hogue said a representative of the Ozark Montessori Academy appeared before the panel on October 16 and requested that Ozark Education, Inc., the sponsoring entity, be allowed to open a charter in Springdale to serve students in grades K-8 with a maximum enrollment of 280. She said the panel unanimously approved the application for the Ozark Montessori Academy.

Dr. Christine Silano said the school would prepare students for state assessments.

Dr. Debbie Jones said the curriculum was aligned to the state standards.

Dr. Barth moved, seconded by Ms. Saviers, to not review the Charter Authorizing Panel Action on open-enrollment public charter school application for the Ozark Montessori Academy, Springdale, Arkansas. The motion carried unanimously.

### A-11 Consideration of Recommendation for Revocation of Teaching License –Helen Banks

Professional Licensure Standards Board (PLSB) Attorney Cheryl Reinhart said on August 18, 2014, the Department advised Ms. Banks, a licensed educator, that her background check revealed an offense that disqualified her for renewal of her teaching license under Ark. Code Ann. § 6-17-410(c). She said Ms. Banks did not request a waiver of the grounds for revocation of her standard teaching license within the statutory time period.

Ms. Mahony moved, seconded by Ms. Newton, to revoke the teaching license for Helen Banks. The motion carried unanimously.

### A-12 State Board Review of PLSB Evidentiary Hearing Findings and

6

**Recommendations – PLSB Case No. 14-011; Daniel Fullerton**

A-12 was pulled from the agenda.

**A-13 Consideration for Emergency Adoption: Arkansas Department of Education Rules Governing Standards for Accreditation of Arkansas Public Schools and School Districts**

Department Deputy General Counsel Ms. Lori Freno said Act 421 of 2013 (codified as Ark. Code Ann. § 6-15-202(b)(2)(A)-(F)) required the State Board of Education to promulgate rules to administer the Act, which allowed waivers from the Standards for Accreditation for the purpose of combining or embedding curriculum frameworks into a single combined or embedded course.   She said in addition to satisfying Act 421's rulemaking requirement, these proposed rules also revised the Standards to comply with current law regarding mandatory attendance, kindergarten/1st grade start dates, and professional development. She said the rules revised dates related to appealing a Standards violation determination (to make the dates consistent with law) and provided a hearing process for that purpose.

Assistant Commissioner Ms. Annette Barnes said the agency would continue to monitor schools.  She explained the changes in the emergency rules.

Dr. Barth moved, seconded by Ms. Saviers, to approve the Arkansas Department of Education Rules Governing Standards for Accreditation of Arkansas Public Schools and School Districts for emergency adoption.  The motion carried unanimously.

**A-14 Consideration for Final Approval: Arkansas Department of Education Rules Governing Kindergarten through 12th Grade Immunization Requirements in Arkansas Public Schools**

Department Staff Attorney Ms. Kendra Clay said the Arkansas Department of Health recently updated its Rules and Regulations Pertaining to Immunization Requirements.  She said revisions to ADE's rules governing immunizations are necessary to align ADH and ADE's immunization requirements.

Ms. Zook moved, seconded by Mr. Davis, to approve the Arkansas Department of Education Rules Governing Kindergarten through 12th Grade Immunization Requirements in Arkansas Public Schools.  The motion carried unanimously.

**A-15 Consideration of Proposed National Parental Involvement Day Resolution**

7

Chair of the Special Committee on Parent Communication Ms. Alice Mahony said National Parental Involvement Day is November 20, 2014. She asked the Board to adopt a National Parental Involvement Day resolution.

Ms. Mahony moved, seconded by Ms. Saviers, to approve the National Parental Involvement Day Resolution. The motion carried unanimously.

## Public Comment

Ms. Kristine Hoskins requested a hearing before the Board to consider a reduction in probation for her teaching license. Mr. Ledbetter agreed to place the item on the December action agenda.

## Reports

### Report-1 Chair's Report

Dr. Barth and Ms. Reith attended the National Association of State Boards of Education (NASBE) annual meeting. Dr. Barth said the NASBE study groups for this year would include principal leadership and career readiness. He said Ms. Mahony would continue to serve on the governmental affairs committee.

Ms. Reith said she saw examples of an innovative school that was meeting the needs of a diverse population. Ms. Reith participated in a discussion session about how to better utilize publications.

Ms. Mahony said Dr. Barth would serve as the Southern Region Director for NASBE.

### Report-2 Commissioner's Report

No report.

### Report-4 Special Committee on Academic Distress

Ms. Saviers gave a brief review of the recent meeting with the Little Rock School District. The District will provide a follow-up report in January 2015.

Ms. Newton said the special committee should be diligent with the schools in academic distress.

Ms. Zook said she was concerned that schools are waiting for state designation before attempting to correct issues.

Dr. Barth asked the special committee to consider the options for the schools that come before the State Board.

### Report-5 Update on Content Standards and Assessment

Assistant Commissioner of Learning Services Dr. Debbie Jones said the AP Exam report indicated an increase in participation and scores in the 3-5 point range.  She said schools are teaching SREB Math Ready and Reading Ready transition courses.  Dr. Jones said Ms. Michelle Snyder is leading a team of Arkansas educators in writing the Arkansas Science standards.  She said the assessment unit is providing testing training across the state.  She said the Schools of Innovation process has been refined.

### Report-6 Data Quality Report

Assistant Commissioner of Research and Technology Mr. Cody Decker said the Division of Research & Technology leads the Department's efforts relating to state and federal reporting, electronic transcripts, technical support and data-driven decision-making tools for educators, such as the ADE Data Center and StudentGPS Dashboards.  He said in 2013, the Data Quality Campaign announced Arkansas was one of two states across the nation to ensure effective data use in education.

### Adjournment

The meeting adjourned at 2:11 p.m.

*Minutes recorded by Deborah Coffman.*

Sam Ledbetter, Chair

Tony Wood, Commissioner of Education

**Minutes**
**State Board of Education Special Meeting**
**Monday, December 1, 2014**

The State Board of Education met Monday, December 1, 2014, via conference call and in the Auditorium of the Department of Education Building.  Chairman Sam Ledbetter called the meeting to order at 1:05 p.m.

Present: Jonathan Crossley, Teacher of the Year; and Tony Wood, Commissioner

Present via conference call:  Sam Ledbetter, Chairman; Toyce Newton, Vice-Chair; Diane Zook; Vicki Saviers; Kim Davis; Dr. Jay Barth; Alice Mahony;

Absent: Mireya Reith; Joe Black

**Action Agenda**

**A-1 Consideration for Repeal of Emergency Rule: Arkansas Department of Education Rules Governing the Public School Rating System on Annual School Report Cards (Emergency Rule—Adopted 10-13-14)**

Department Deputy General Counsel Ms. Lori Freno said Act 696 of 2013 (codified in Ark. Code Ann. §§ 6-15-2105 and 6-15-2106) required that each public school receive a letter grade score of "A" through "F" effective with the 2014-2015 school year, and empowered the State Board of Education to approve through rules a method for assigning letter grades.   She said on October 19, 2014, the Board approved for emergency adoption rules that mirrored the proposed permanent rules for assigning letter grades.

Ms. Zook moved, seconded by Dr. Barth, to repeal the emergency rules for the Arkansas Department of Education Rules Governing the Public School Rating System on Annual School Report Cards (Emergency Rule—Adopted 10-13-14).  The motion carried unanimously.

**A-2 Consideration for Release for Second Public Comment Period: Arkansas Department of Education Rules Governing the Public School Rating System on Annual School Report Cards**

Department Deputy General Counsel Ms. Lori Freno said Act 696 of 2013 (codified in Ark. Code Ann. §§ 6-15-2105 and 6-15-2106) required that each public school receive a letter grade score of "A" through "F" effective with the 2014-2015 school year, and empowered the State Board of Education to approve

1


EXHIBIT

through rules a method for assigning letter grades. She said the Board approved a method developed by the University of Arkansas Office of Innovation for Education, in conjunction with the ADE and stakeholders. She said after the public comment period ended, the Board revised the proposed rules to exempt from receiving a letter grade Alternative Learning Environments (ALEs) that have their own LEA (Local Education Agency) number. The Administrative Rules and Regulations Subcommittee of the Arkansas Legislative Council subsequently referred the proposed rules (with this revision) to the Joint Education Committee, to which the ADE presented a possible alternative to the language exempting ALEs from receiving a letter grade.

Ms. Saviers moved, seconded by Mr. Davis, to approve the Arkansas Department of Education Rules Governing the Public School Rating System on Annual School Report Cards for second public comment period. Ms. Mahony made a substitute motion to change the language in the proposed rules to remove "may opt" and replace with "shall" in 4.03 and remove the last sentence in 4.03. Dr. Barth seconded the substitute motion. Ms. Zook voted no. The final vote was 5-1. The motion carried.

### Adjournment

The meeting adjourned at 1:30 p.m.

*Minutes recorded by Deborah Coffman.*

Sam Ledbetter, Chair

Tony Wood, Commissioner of Education

2



**ARKANSAS
DEPARTMENT
OF EDUCATION**

**RECEIVED**

JAN 1 2 2015

**SUPERINTENDENT'S OFFICE**

January 8, 2015

Tony Wood
*Commissioner*

**State Board**
**of Education**

Sam Ledbetter
*Little Rock*
*Chair*

Toyce Newton
*Crossett*
*Vice Chair*

Dr. Jay Barth
*Little Rock*

Joe Black
*Newport*

Kim Davis
*Fayetteville*

Alice Mahony
*El Dorado*

Mireya Reith
*Fayetteville*

Vicki Saviers
*Little Rock*

Diane Zook
*Melbourne*

Dr. Dexter Suggs, Superintendent
Little Rock School District
810 West Markham
Little Rock, AR  72201

Mr. Greg Adams, President
Little Rock School District Board
2413 Gristmill Road
Little Rock, AR  72227

Mr. C.E. McAdoo, Secretary
Little Rock School District Board
8700 Labette Drive
Little Rock, AR  72204

Ms. Dianne Curry, Board Member
Little Rock School District Board
12405 Goldleaf Drive
Little Rock, AR  72210

Ms. Leslie Fisken, Board Member
Little Rock School District Board
5223 Sherwood Road
Little Rock, AR  72207

Mr. Jim Ross, Board Member
Little Rock School District Board
9 Breeds Hill Ct.
Little Rock, AR  72211

Ms. Tara Shephard, Board Member
Little Rock School District Board
P.O. Box 56468
Little Rock, AR  72215

Ms. Joy Springer, Board Member
Little Rock School District Board
2208 Rice Street
Little Rock, AR  72202

Re:   **Notice of State Board of Education Special Meeting**
**VIA ELECTRONIC MAIL, REGULAR MAIL, AND**
**CERTIFIED MAIL**

Dear Superintendent Suggs and Little Rock School District Board Members:

On May 1, 2014, the Arkansas Department of Education (ADE) notified the Little Rock School District that the following schools within the school district met the criteria for being classified in academic distress:

Baseline Elementary
Cloverdale Middle School
Henderson Middle School
Hall High School
J.A. Fair High School
McClellan High School

Four Capitol Mall
Little Rock, AR
72201-1019
(501) 682-4475
ArkansasEd.org

The Little Rock School District did not appeal that notification.  On July 10, 2014, the State Board of Education (State Board) classified the above-listed schools as being in academic distress.

*An Equal Opportunity*
*Employer*

1



EXHIBIT
12

Pursuant to the State Board's January 8, 2015 directive, please accept this letter as notice that the State Board will hold a special meeting on **January 28, 2015** to discuss whether to invoke any of the actions listed in Ark. Code Ann. § 6-15-430. The special meeting will take place at **10:00 a.m.**  The special meeting will take place in the **ADE Auditorium, Four Capitol Mall, Little Rock, Arkansas.**

The State Board will conduct the meeting under the legal authority and jurisdiction of Ark. Code Ann. §§ 6-15-429, 6-15-430, and the Arkansas Department of Education Rules Governing the Arkansas Comprehensive Testing, Assessment and Accountability Program (ACTAAP) and the Academic Distress Program.

During the special meeting, the State Board may decide to take the following actions, without limitation, pursuant to Ark. Code Ann. § 6-15-430:

- Remove permanently, reassign, or suspend on a temporary basis the superintendent of the school district and appoint an individual in place of the superintendent to administratively operate the school district under the supervision and approval of the Commissioner of Education and compensate from school district funds the individual appointed to operate the school district;

- Suspend or remove some or all of the current board of directors and call for the election of a new board of directors for the school district, in which case the school district shall reimburse the county board of election commissioners for election costs as otherwise required by law;

- Require the school district to operate without a board of directors under the supervision of the superintendent or an individual or panel appointed by the Commissioner of Education;

- Waive the application of Arkansas law, with exception of the Teacher Fair Dismissal Act of 1983, § 6-17-1501 et seq., and the Public School Employee Fair Hearing Act, § 6-17-1701 et seq., or the corresponding state board rules and regulations;

- Require the annexation, consolidation, or reconstitution of the school district;

- In the absence of a board of directors, direct the Commissioner of Education to assume all authority of the board of directors as may be necessary for the day-to-day governance of the school district;

- Require the reorganization of the public school or reassignment of the administrative, instructional, or support staff of the public school;

2

- Require the public school to institute and fully implement a student curriculum and professional development for teachers and administrators that are based upon state academic content and achievement standards, with the cost to be paid by the school district in which the public school is located;

- Require the principal of the public school to relinquish all authority with respect to the public school;

- Under the Teacher Fair Dismissal Act of 1983, § 6-17-1501 et seq., reassign or remove some or all of the licensed personnel of the public school and replace them with licensed personnel assigned or hired under the supervision of the Commissioner of Education;

- Remove the public school from the jurisdiction of the school district in which the public school is located and establish alternative public governance and supervision of the public school;

- Require closure or dissolution of the public school;

- Take any other appropriate action allowed by law that the State Board determines is needed to assist and address a public school classified as being in academic distress.

The above-listed actions are provided as a summary. You should review Ark. Code Ann. § 6-15-430 to ascertain the specific actions available for consideration by the State Board. Please be aware that the State Board may choose to take any of the actions, alone or in combination, contained in Ark. Code Ann. § 6-15-430 during its January 28, 2015 meeting. The State Board may also choose to take no action.

Please find enclosed copies of Ark. Code Ann. §§ 6-15-429 and 6-15-430. You may find a copy of the corresponding rules (ADE Rules Governing the Arkansas Comprehensive Testing, Assessment and Accountability Program and the Academic Distress Program) on the ADE website at the following address:

http://www.arkansased.org/divisions/legal/rules/current.

Should you wish to provide written materials to the State Board, please provide those materials by **4:00 p.m. on January 21, 2015**. You may provide those materials to Ms. Deborah Coffman, State Board Liaison, at deborah.coffman@arkansas.gov.

Please attend the State Board meeting and bring with you any personnel necessary to address any questions or concerns the State Board may have. Thank you in advance for your attention to this important matter.

Sincerely,

Tony Wood

Tony Wood
Commissioner of Education

Enclosures

cc (w/encls):   State Board of Education Members
                Ms. Deborah Coffman, State Board of Education Liaison
                Ms. Annette Barnes, Assistant Commissioner
                Ms. Katina Ray, Principal, Baseline Elementary
                Ms. Wanda Ruffins, Principal, Cloverdale Middle School
                Mr. Frank Williams, Principal, Henderson Middle School
                Mr. Larry Schleicher, Principal, Hall High School
                Mr. Jeremy Owoh, Principal, J.A. Fair High School
                Mr. Henry Anderson, Principal, McClellan High School