**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**PARENT PLAINTIFF LAKESHA DOE and her**
**minor child, DENNIS DOE; PARENT PLAINTIFF**
**CLAUDIUS JOHNSON and his minor child,**
**CHRISTIAN DOE; PARENT PLAINTIFF EVELYN**
**DOE and her minor child, EDWARD DOE; PARENT**
**PLAINTIFF CANDICE DOE and her minor children,**
**JAMES AND JADE DOE; and PARENT PLAINTIFF**
**SONYA DOE and her minor child, JOHNNY DOE;**
**JOY C. SPRINGER; and JIM ROSS**                    **PLAINTIFFS**


**v.**                              **CASE NO. 4:15-cv000623 DPM**


**ARKANSAS DEPARTMENT OF EDUCATION;**
**TOYCE NEWTON, [Chair]**
**JAY BARTH**
**JOE BLACK**
**SUSAN CHAMBERS**
**CHARISSE DEAN**
**MIREYA REITH**
**VICKI SAVIERS**
**R BRETT WILLIAMSON**
**DIANE ZOOK, Members of the ARKANSAS**
**STATE BOARD OF EDUCATIO N, in their**
**Official Capacities; JOHNNY KEY, Commissioner**
**Of Education [and LRSD SCHOOL BOARD],**
**in his Official Capacity; BAKER KURRUS,**
**Superintendent of the Little Rock School District,**
**in his Official Capacity**                          **DEFENDANTS**


## *BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION*

## I.    Introduction

On the basis of their claims that Defendants are engaging in purposeful race

discrimination under the Thirteenth and Fourteenth Amendments, the parent Plaintiffs and the

student Plaintiffs move for injunctive relief.  Specifically, they request that the Court issue an order enjoining Defendants from (a) spending desegregation funds on a new middle school in an almost entirely white area of the Little Rock School District ("LRSD") rather than on the majority-black schools operated for several years in a high state of disrepair and (b) closing   ten schools with the result that thousands of black pupils would be subjected to a racially discriminatory one-way transportation program.  These Plaintiffs seek injunctive relief under 42 U.S.C. § 1983.

## II.    Factual Background

### A.    <u>Racial disparity in school facilities</u>

In its state-mandated "Facility Preliminary Master Plan," the LRSD acknowledged the "positive relationship that exists between school conditions and student achievement and behavior" and that "[f]acility condition may have a stronger effect on student performance than the influences of family background, socioeconomic status, school attendance and behavior combined." (*Amended Complaint*, Para. 80).  This Plan recognized that "[c]lassrooms that are well ventilated, suitably lighted, and properly maintained actually facilitate learning." *Id.*  By contrast, classrooms with poor air quality "negatively affect [] alertness and result [] in increased student and teacher absences, which can have a corresponding impact on student achievement." *Id.*  From 2010 to the present, Cloverdale Middle School ("Cloverdale"), Dunbar Middle School ("Dunbar"), and Henderson Middle School ("Henderson") have been placed by the Arkansas Department of Education ("ADE") in classifications evidencing unsatisfactory test results. Rather than attempting to correct these academic deficiencies, the LRSD expended a substantial amount of money on building a cutting-edge school in Roberts Elementary School ("Roberts"). Indeed, the LRSD exacerbated the racial inequities within the district by creating Roberts.

(*Amended Complaint*, Para. 79; Ex. B, Affidavit of Karen DeJarnette, information obtained from ADE Online Data Bank).

Plaintiffs' Amended Complaint describes the racial disparity in the quality of facilities within the LRSD between those schools located in majority-black areas and those schools that are located in affluent, mostly-white areas of the city.  Since at least 2008, the buildings in Cloverdale, which is located in the majority-black southwest Little Rock, have been in a disreputable state of repair.  For instance, the school's buildings have had cracks in walls, peeling paint, inoperable bathrooms and students' lockers, poor lighting, and a tiny and otherwise inadequate library.  (*Amended Complaint,* Paras. 63-64; Ex. A, Affidavit of Monica Norwood).  Other problems with the physical plant at the school have included the following: water dripping from classroom ceilings; exposed insulation; and broken furniture. (*Amended Complaint,* Para. 73 and Exhibit 3; and Exhibit B, Affidavit of Karen DeJarnette.)  The LRSD Operations and Maintenance Department shirked its duty to fix these problems by failing to complete over 100 "work orders" during the 2012-13 school year. (*Amended Complaint,* Para. 72).

Dunbar is another majority-black school located in the majority-black area of southwest Little Rock that has relatively poor facilities.  From 2009-2012, an employee noted that the buildings at the school had problems such as mold in classrooms, offices, and stairways; water damage; a windowless basement with a classroom and a cafeteria that was occasionally subject to flooding; and classrooms that were small in physical size.  These deficiencies in the physical plant and classrooms worsened the learning experience for students.  (*Amended Complaint,* Para. 66; and Ex. A, Affidavit of Monica Norwood;).

Other schools in majority-black areas of Little Rock have been experiencing similar problems with their facilities.  For example, at the beginning of the 2012-13 school year, Wilson Elementary School was closed down by order of the City of Little Rock because it failed inspection.  That same school year the air conditioning broke down periodically during the spring and had problems with squirrels entering ducts, which led to a foul odor in the facilities. (*Amended Complaint,* Para. 71; and Ex. A, Affidavit of Monica Norwood).  Another majority-black school with comparatively deficient facilities is Henderson Middle School ("Henderson"). Henderson has classrooms and a library which lack natural lighting.   This school also has bathrooms that are subject to flood and that are in serious need of renovation.  Henderson also lacks an auditorium. (*Amended Complaint,* Para. 74, Ex.  Affidavit of Monica Norwood). Furthermore, McClellan High School and Baseline Elementary School have had chronic heating problems during the winter, causing cold classrooms and a difficult learning environment for their students.  (*Amended Complaint,* Para. 75; and Ex. A, Affidavit of Monica Norwood).

The difference in facilities between the majority-black schools and the Roberts Elementary School ("Roberts") is stark.  In 2010-11, Roberts was opened by the LRSD in the northwest corner of the district.   At 148,000 square feet and located on a 46-acre site, this school is approximately 58,000 square feet greater in size than the next largest elementary school. Roberts has cutting-edge equipment, classrooms, science, art, and music labs, and abundant office space for administrators and staff.  The school has a library that is comparable in resources to a nearby branch of the city library.  In addition, there is abundant natural light within the facilities, which make the learning environment more comfortable for both staff and students. The entire school is reliably air-conditioned.  (*Amended Complaint,* Para. 68, Exhibit 2; and Ex. B, Affidavit of Karen DeJarnette).

**B.**    **Release of LRSD from supervision by the federal courts and subsequent management of the LRSD by the Board of Directors and the ADE**

On September 13, 2002, the LRSD was released from court supervision (except for program evaluation) and granted partial unitary status.  *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 237 F.Supp.2d 988, 1077 (E.D.Ark. 2002).   At this time, the ADE and the State Board of Education began oversight of schools with high percentages of black students under the No Child Left Behind Act of 2001.  The state and district officials were aware of the gross disparities in student achievement between black and white students in the school district.

On February 23, 2007, Judge Billy Roy Wilson granted unitary status to the LRSD.  *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 2007 U.S. Dist. LEXIS  12833, *affirmed by Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 561 F.3d 746 (8th Cir. 2009).  The school district officials, in concert with state officials, under the aegis of the ADE, oversaw and substantially controlled the activities and educational undertakings of many of the schools located in the areas where the black and Hispanic populations lived, especially southwest and central Little Rock.  State defendants allowed the school facilities in the predominately black areas to deteriorate to the point where they became less safe and exacerbated the racially disparate conditions for learning and educational opportunity.

Before the Court ended the desegregation lawsuit, the State of Arkansas and the LRSD, as a condition of settlement,[1] had agreed on a resolution of the use of the final years' portion of state funding [2] to spend the final years' portion of state funding in the approximate amount of $37.5 million for construction of new schools to replace the unequal school facilities located in

---

[1] Because the settlement agreement was contractual, the third-party beneficiaries of the contract between the LRSD and the State of Arkansas, the Black school children as a class, seek its enforcement. The state's disregard of that contractual commitment amounts to contempt of court.

[2] Ex. C, LRSD Board Resolution dated November 18, 2013.

the southwest part of the LRSD and attended primarily by black children, including the Plaintiffs. Within weeks after the Court's approval of the settlement agreement, the ADE, whose Board was led by individuals committed and dedicated to charter schools, took immediate steps to remove the majority-African American LRSD Board. The ADE's reasons for doing so were specious and pretextual. [3] (*Amended Complaint*, Paras. 217-28).

The takeover was orchestrated by private citizens who are sponsors of the E-Stem Charter School, including members of the Chamber of Commerce and the civic organization 50 for the Future, and Walter Hussman, the publisher of the *Arkansas Democrat-Gazette*. Some of the members of those organizations appeared before the ADE. They professed great concern for the education of African-American children and urged the state to take over the district in an effort to bring educational equity to the predominantly black student enrollment of the LRSD. Those interest groups, however, were also advocating for more charter schools to be created within the area of the LRSD. These proponents of a state takeover were not parties to that litigation which resolved the issues of school desegregation. (*Amended Complaint,* Paras. 277-79).

During the process of state takeover, those parties, in collusion with LRSD Superintendent Dr. Dexter Suggs, began an effort to discredit the entire LRSD so that takeover could be justified. He was supported by board member Leslie Fisken, who is white. She publically called the LRSD Board "dysfunctional." The ADE Board removed the majority African-American Board of Directors, in part, because the LRSD Board did not appear to support Dr. Suggs's ostensible efforts to change the "culture" of the LRSD.

---

[3] The state did not take over the PCSSD schools for reasons of academic distress even though they had multiple schools in academic distress. In addition, other school districts had broader achievement gaps than the LRSD had at the time.

Defendant Baker Kurrus, former school board member and real estate attorney, was selected by Defendant Key as the Superintendent of LRSD in April 2015. Suggs had been dismissed because of fraudulent representations regarding his qualifications for the position. Kurrus did not have the educational background, license, or other necessary qualifications to be superintendent. Indeed, the ADE Board had to waive the requirement that superintendents possess a District Level Administrator license so that Kurrus could be hired. The Board also did not solicit applications for this position, which would be the usual procedure utilized by an equal opportunity employer.

C.   **Disparate treatment of black and white students within the LRSD by Defendants**

Superintendent Kurrus, with express approval of Defendant Key and the Governor of Arkansas, has made public a plan to address the unequal facilities issue by taking actions to close at least 10 schools, including the following, in majority African-American communities.

a.   Carver Elementary, located on East 6th Street;

b.   Rockefeller Elementary, located on East 17th Street;

c.   Booker Magnet Elementary, located on Springer Blvd (East);

d.   Geyer Springs G/T Academy

e.   Western Hills, located in SW South of 630

f.   Wilson

g.   David O. Dodd, located in SW

h.   Bale

i.   Franklin, located in central LR.

j.   Gibbs Elementary.

Kurrus also has proposed to close Cloverdale, McClellan High School, Hamilton High School, and J.A. Fair High School.  He intends to relocate some Hamilton students to a vocational school campus.  In addition, Kurrus has made known his intention to build one new high school sometime in the future in southwest Little Rock to replace the both McClellan and Fair high schools. (Ex. E, "LRSD planning to open two new schools," http://on.kthv.com/1KQik5C).

On October 1, 2015, Kurrus announced the plan of the LRSD to open a new middle school in a relatively affluent area of west Little Rock where the Leisure Arts building is currently located for the 2016-17 school year.  He signed a conditional contract giving the LRSD Board of Directors 180 days to approve the purchase of the facility and land for $11.5 million. (Ex. D, Letter dated October 1, 2015, from Baker Kurrus).  The funding for this project will come, in part, from the desegregation payments of $37.5 million a year that the LRSD receives from the State of Arkansas. (Ex. E, "LRSD planning to open two new schools," http://on.kthv.com/1KQik5C). Although Kurrus also announced a plan to open the replacement school in southwest Little Rock, he reportedly stated that the new school will not be ready for at least four years.[4] Id.

In sum, Kurrus, Key, and the State Board of Education, propose to eliminate virtually all of the schools attended by black students in the areas where black students live and to focus upon new schools and improved schools with use of desegregation funds previously committed to the schools in southwest Little Rock.  The Defendants clearly favor the schools of north and west Little Rock. It is Kurrus and Key's intention to strengthen and enhance all of the schools in majority-white residential areas and to have them populated by one-race transportation of blacks students from their neighborhoods to predominately-white neighborhoods.

---

[4] When the LRSD makes the payment of $11.5 million for purchase of the Leisure Arts property this year, the district will only be able to do so because of the desegregation payment of $37.5 million that they receive from the State of Arkansas.  The desegregation payment allows the LRSD to avoid a negative balance.

## III.   Argument

### A.   <u>Standard for Granting Preliminary Injunctive Relief</u>

Whether a preliminary injunction should issue involves consideration of: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

"Probability of success on the merits" does not mean that the party seeking preliminary relief must prove a greater than fifty percent likelihood that it will prevail on the merits. *Dataphase*, 640 F.2d at 113.[5]   The question is whether the balance of the equities favors the movant in such a way that justice requires the court to intervene in order to preserve the status quo until the merits are determined. *Id.* at 113 n.5. In balancing the equities, no single factor is

---

[5] In *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 730-733 (8th Cir. 2008) (en banc), the Eighth Circuit changed the standard for granting a preliminary injunction from one requiring the plaintiff to demonstrate a "fair chance" that it will succeed on the merits to one requiring the plaintiff to show that it will "likely prevail" on the merits. *Id.* at 730-733 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *Able v. United States*, 44 F.3d 128, 131-132 (2d Cir. 1995) (per curiam)). The "likely to prevail" standard, however, is only applicable to cases where a preliminary injunction is sought to enjoin the implementation of a duly enacted state or federal statute. *Rounds*, 530 F.3d at 732-733 n.6 (citing *Able*, 44 F.3d at 131-132). This more rigorous standard for demonstrating a likelihood of success on the merits in cases involving statutes ensures that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis. *Rounds*, 530 F.3d at 733. This more rigorous standard reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly. *Rounds*, 530 F.3d at 732 (quoting *Able*, 44 F.3d at 131).

District courts should apply the "fair chance of prevailing" test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes. *Rounds*, 530 F.3d at 732. "Fair chance" means something less than fifty percent. *Rounds*, 530 F.3d at 730 (citing *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 375 F. Supp. 2d 881, 885 (D.S.D. 2005)); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc) (rejecting the construction of "probability of success on the merits" to mean a greater than fifty percent likelihood that the moving party will prevail on the merits).

determinative. *Id.* at 113.   In every case, it must be examined in the context of the relative injuries to the parties and the public. *Id.*  If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties should the injunction be granted, the moving party faces a heavy burden of demonstrating that it is likely to prevail on the merits. *Id.* Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in its favor, the showing of success on the merits can be less. *Id.* Where the balance of other factors tips decidedly toward the moving party, a preliminary injunction may issue if the movant has raised questions so serious and difficult as to call for more deliberate investigation. *Dataphase*, 640 F.2d at 113.

**B.      There is a threat of irreparable harm to the student plaintiffs**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because his injuries cannot be compensated through an award of damages." *Rogers Group, Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009)).   Black students in the LRSD will suffer irreparable harm to their education unless the Defendants' attempt to close the schools in the areas of the city where they predominate is preliminarily enjoined.  Many will have to be bussed one-way to schools far from their neighborhoods in a perversion of prior Court-ordered attempts to integrate schools through the use of transportation. The preexisting burdens imposed upon African American children by the inferiority of their schools will be greatly exacerbated.  Rather than using funds for the construction and improvement of schools in majority-black neighborhoods, Defendants intend to divert these funds required as a condition of settlement in order to construct new schools in predominately-white neighborhoods.   Because of institutional inertia, the harm will be irreparable if the Defendants are allowed to proceed with the closing of the

aforementioned schools and to proceed with new construction for (high income) mostly white students in far west Little Rock before the Court issued its final judgment in this case.  These schools would likely never be reopened once closed. *Cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1,  21 (1971) ("In devising remedies where legally imposed segregation has been established, it is the responsibility of local authorities and district courts to see to it that future school construction and abandonment are not used and do not serve to perpetuate or re-establish the dual system") (citations omitted).[6]

**C.**     **The threat of irreparable harm to the Plaintiffs substantially outweighs the possibility of any injury to Defendants if a preliminary injunction is granted**

There is no possibility of any injury to Defendants if a preliminary injunction is granted. Defendants would only be required to delay implementation of its plan to close the schools located in majority-black neighborhoods until the Court makes a final ruling on the issues.   The schools located in predominately-white areas of Little Rock are already in far better condition than the schools located in predominately-black areas of the city.

**D.**     **Plaintiffs have a "fair chance" of prevailing on the merits of this lawsuit**

There is a "fair chance" of success on the merits for the Plaintiffs on their race discrimination claims.   Plaintiffs' Fourteenth Amendment Claims must be proved through a showing that Defendants engaged in purposeful discrimination on the basis of race.  *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040 (1976). The Defendants' unlawful consideration of the majority race of the students and the school board members is the basis of the state takeover and for the refusal to address the historic, gross disparities in the facilities and

---

[6] The state defendants have further approved new charter schools for more than 5,000 mostly black students and a construction plan for such expansion.  The ADE, the University of Arkansas, and eStem are the parties to this effort with Defendant Vicki Saviers in its leadership.

learning experiences of the black children in LRSD. The state Defendants subsequently have taken actions to re-segregate the schools, to deny students in racially identifiable schools equal facilities, quality instruction, educational opportunities. They have also made a conscious decision, by approving the Kurrus plan, to use designated funds for minority students for the construction and opening of a school located far distant from the southwest part of LR with the intent to attract white students. The closing of the schools in predominately-black areas of Little Rock and the diversion of settlement funds to schools in majority-white neighborhoods are the only acts in this lawsuit that Plaintiffs seek to be immediately enjoined.

Defendants cannot put forth a legitimate, nondiscriminatory reason for (1) closing many schools in majority-black areas and bussing them west and (2) using funds intended for the construction and improvement of schools in the majority-black areas of southwest Little Rock in order to benefit white students who are either not currently enrolled in the LRSD or are otherwise enrolled in an LRSD school located in north or west Little Rock.

### E.    Plaintiffs' case is in the public interest

The public interest favors preliminary injunctive relief to afford an opportunity for a full hearing on the merits of Plaintiffs' claims regarding the closing of certain schools, opening of new schools in west Little Rock, and the diversion of settlement funds. The public has an interest in public school districts complying with the Thirteenth and Fourteenth Amendments.

## IV.   Conclusion

The Plaintiffs contend that the preliminary injunction is necessary to secure the relief being sought, which is in part, equal facilities and learning opportunities for the public school children who live in the majority African-American areas of Little Rock and the prohibition of the State of Arkansas and the LRSD from acting contrary to their agreement to utilize settlement

12

funds for public school construction in the majority African American areas of Little Rock rather than the majority-white areas of west Little Rock.  For the reasons stated above, the Court should grant Plaintiffs' Motion for a Preliminary Injunction.

Respectfully submitted,

/s/ Shawn G. Childs
John W. Walker
Ark Bar #64046
Shawn G. Childs
Ark. Bar #99058
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas  72206
501-374-3758
501-374-4187 (facsimile)
Email:  johnwalkeratty@aol.com
schilds@gabrielmail.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
781-862-1955
Email: ehpressman@verizon.net

Austin Porter
PORTER LAW FIRM
323 Center Street
Little Rock, Arkansas
501-244-8200
Email: aporte5640@aol.com

OF COUNSEL:
Gale B. Stewart – AR #76120
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758
501-374-4197 (facsimile)
Email:  letchworth1942@comcast.net

ATTORNEYS FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE**

I, Shawn G. Childs, certify that on February 12, 2016, a copy of the foregoing paper has

been electronically filed with the Clerk of the Court using the CM/ECF system, which shall send

notification of such filing to the following:

Lee Rudofsky
lee.rudofsky@arkansasag.gov

Rosalyn L. Middleton
rosalyn.middleton@arkansasag.gov

Patrick Hollingsworth
Patrick.hollingsworth@arkansasag.gov

Christopher Heller
heller@fridayfirm.com


_____ /s/ Shawn G. Childs _____
           Shawn G. Childs