IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**PARENT PLAINTIFF LAKESHA**                                                     **PLAINTIFFS**
**DOE and her minor child**
**DENNIS DOE; et al.**

v.                         CASE NO. 4:15-CV-0623 DPM

**ARKANSAS DEPARTMENT OF**
**EDUCATION; et al.**                                                                       **DEFENDANTS**

BRIEF IN SUPPORT OF JOHNNY KEY'S
MOTION FOR SUMMARY JUDGMENT

Each of the adult Plaintiffs is unhappy about some aspect of their child's schooling. Their grievances, however, do not support their claims.

A few basic principles control the outcome of this case. First, any alleged discrimination must be intentional. Second, "discrimination in the air" won't do – to have standing each plaintiff must establish that he or she was directly and detrimentally affected by an intentional act of discrimination. Third, isolated events, like those alleged by some of the Plaintiffs, do not support a cause of action against the Little Rock School District without proof that the acts were taken under a custom, policy or practice of the LRSD. Fourth, the prospective relief sought is not available for students who no longer attend LRSD schools, who are no longer attending allegedly inadequate facilities, or who have graduated, because these claims are moot.

I.   **Standard of Review**

Once a defendant challenges the sufficiency of the complaint, a plaintiff may not rest on her allegations, but must respond with evidence to show that there is a genuine issue of material fact for trial. Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment against a party who does not make a showing sufficient to establish the existence of an element essential to her burden of proof at trial. *Pourmehdi v. Northwest Nat'l Bank*, 849 F.2d 1145, 1146 (8th Cir. 1988).

The existence of factual disputes does not defeat summary judgment. The disputed fact must be a genuine dispute of *material fact*. A fact that is material is one that affects the outcome of the suit under the governing law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011).

II.   **The Plaintiffs' Allegations**

The Plaintiffs with pending claims generally contend that the LRSD has discriminated against black students in the quality of facilities and educational resources, that student discipline unfairly targets black students, that LRSD's attendance zones and admissions practices favor white students, and that the LRSD faculty is segregated.[1] In effect the Plaintiffs contend that, notwithstanding the unitary status of the LRSD, the LRSD is a *de facto* segregated district. But their individual stories do not bear out their claims. Each includes a story of

---

[1] Jim Ross and Joy Springer are nominally plaintiffs, but all of their claims have been dismissed.

dissatisfaction with some aspect of a child's education that the Plaintiffs have not connected to intentional discrimination as a practice, policy or custom of the LRSD.

### III. The Legal Framework

The Plaintiffs must meet several burdens to proceed to trial. First, each must demonstrate that he or she has been personally harmed, that the harm is fairly traceable to a defendant's unlawful conduct, and that the harm is likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984). The injury must be distinct and palpable. *Id.* A claim to have the government act in accordance with the law does not confer standing. *Id.* at 754. In the equal protection context, only those individuals who are personally denied equal protection have standing to challenge allegedly discriminatory government action. *Id.* at 755. The Plaintiffs here request prospective injunctive relief, and thus must show that there is a threat of future or ongoing harm likely to occur or to continue, and that the threatened injury is certainly impending. *Park v. Forest Service of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).

Second, if a plaintiff shows that she has been personally harmed and has a live controversy, she must demonstrate that the alleged harm is a result of action taken with the intent or purpose to discriminate based on race. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). Discriminatory purpose "implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its

adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Third, if a plaintiff demonstrates intentional and unlawful discrimination that has harmed her, she must prove that the act complained of "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" LRSD policy makers. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978); *see also, Los Angeles County, Cal. v. Humphries,* 562 U.S. 29, 30–31 (2010) (holding that the policy or custom requirement applies when plaintiffs seek prospective relief such as an injunction or declaratory relief). So, isolated acts of school district employees can't establish liability. If the Plaintiffs *could* show that they were subjected to race-based discrimination, they must also prove that the LRSD effectively approved of the practice.

### IV. The Plaintiffs' Individual Claims

The Amended Complaint makes sweeping allegations about discrimination in the LRSD, but the allegations, and evidence, pertinent to the individual Plaintiffs are much more limited. Some of the Plaintiffs' claims are moot because they are no longer subject to the conditions they claim are the result of discrimination. For the rest, their deposition testimony does not establish a link between their experiences and any discriminatory intent on the part of the LRSD.

### A. Parents and children whose claims are entirely moot.

**Evelyn Fisher (Evelyn Doe)**.

Evelyn Fisher, named Evelyn Doe in the Amended Complaint, is the mother of Eshawn Fisher (Edward Doe). Eshawn is not an LRSD student. He transferred out of the LRSD to SIA Tech Charter School not long after the Amended Complaint was served. Exhibit 9 to Statement of Material Facts, Eshawn Fisher deposition, pgs. 5-6.[2]

The Article III case or controversy requirement means that there must be "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." *Schanou v. Lancaster County School Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995). The Fishers are no longer subject to the conduct or conditions they allege, and thus their claims are moot and summary judgment should be granted against the Fishers.

**Alvronia Robinson (Alice Doe) and Lakesha Robinson Smith (Lakesha Doe).**

The claims of Alvronia Robinson and her daughter Lyric Louden (Lisa Doe), and of Lakesha Robinson Smith and her son Dezury Ashford (Dennis Doe), will become moot this month. Both Lyric Louden and Dezury Ashford will graduate from Central High School on May 25, 2017. Exhibit 6, Lyric Louden deposition, pg. 6 and exhibit 8, Dezury Ashford deposition, pg. 59. Graduation from a school against which prospective relief is sought moots a claim if graduation occurs at any

---

[2] Unless stated otherwise, all exhibit citations refer to the exhibits to Johnny Key's Statement of Undisputed Material Facts.

time while the case is pending. *See Nomi v. Regents for University of Minnesota,* 5 F.3d 332, 334 (8th Cir. 1993).

When a defendant questions standing the plaintiff must provide evidence of specific facts sufficient to establish standing. *Constitution Party of South Dakota v. Nelson*, 639 F.3d 417, 422 (8th Cir. 2011). Unless they demonstrate after May 25 that they did not graduate, these plaintiffs' claims will be moot.

### B. Parents and children who do not state a claim.

### Ronyah Beyah.

The parties have stipulated that Ms. Beyah and her children are to be dismissed without prejudice. But her deposition testimony is typical of the others – her experiences are not consistent with the Plaintiffs' allegations. Ms. Beyah alleges that her children Kareem and Rasheed are assigned to schools with facilities and resources inferior to schools in which "white students … are concentrated." Am. Compl. ¶ 54B-1, ECF 91, but her testimony does not identify deficiencies in the facilities or resources available to her children. She only complains that the children at Dunbar Middle School are disrespectful, that some of the teachers are disrespectful, and that Rasheed was not treated fairly after being accused of harassing a fellow student. Exhibit 2, Beyah deposition, pgs. 27, 31-32, 37-38, 45.

The Plaintiffs assert that disparities in gifted and talented program participation demonstrate discrimination, but Ms. Beyah's son Kareem is in the gifted and talented program at Dunbar Middle School. Beyah deposition, pg. 16. Next year he will attend Central High School – one of the schools that the Plaintiffs

characterize as top grade. Beyah deposition, pg. 45. Ms. Beyah chose Dunbar over Forest Heights Middle School for Kareem, and Rasheed followed under a sibling preference. Beyah deposition, pg. 16. Forest Heights is one of the schools that the Plaintiffs claim excludes black students. Obviously, neither Ms. Beyah nor her children are affected by any alleged discrimination in assigning children to Central High School, Forest Heights, or gifted and talented programs.

**Sonya Lampkin (Sonya Doe).**

Ms. Lampkin has alleged that her son Jaylen Lampkin (Johnny Doe) attended academically distressed schools in 2014 to 2015, but he's now attending Parkview High School, and thus not in an academically distressed school. Exhibit 3, Sonya Lampkin deposition, pg. 5. In fact, Jaylen Lampkin attended Forest Heights Middle School for all of his middle school years, although he resided in the Cloverdale Middle School zone. Sonya Lampkin deposition pgs. 9, 11. The Plaintiffs' discovery responses portray Forest Heights as one of the "top-end facilities." Exhibit 21, answer to interrogatory 1(b), Plaintiffs' Responses to Defendant Michael Poore's First Interrogatories and Requests for Production to Plaintiffs. Jaylen's current school, Parkview, is not one of the schools that the Plaintiffs claim is deficient. There is no factual basis for the Lampkins' claim that Jaylen attended a deficient facility.

The Lampkins' second claim is that Jaylen was affected by a campaign to rid Forest Heights Middle School of black students. Am. Compl. ¶ 51. But Lampkin readily admits that Jaylen was admitted to Forest Heights, that it was not hard to

7

do, and that no one discouraged Jaylen from continuing at Forest Heights. Sonya Lampkin deposition, pgs. 9-11 and exhibit 4, Jaylen Lampkin deposition, pg. 5. Jaylen does not recall a time when he felt he was treated different from white students. Jaylen Lampkin deposition, pg. 7. The Lampkins' testimony does not support their claims, either. Summary judgment should be granted to the Defendants on the Lampkins' claims.

### Alvronia Robinson (Alice Doe).

Ms. Robinson's claims will soon be moot. But even if not moot, the testimony does not support her allegations.

Ms. Robinson has two complaints. First, she says she was told by an assistant principal at Central High School that her daughter, Lyric Louden (Lisa Doe) could continue attending Central even after they moved from the Central High attendance zone. Am. Compl. ¶¶ 19-22 and exhibit 5, Robinson deposition pgs. 16-24. This, it turned out, was incorrect information. Lyric attended McClellan High School instead. According to Ms. Robinson, their new address was about a block from McClellan High School. Ms. Robinson can't identify any white student that was treated differently in terms of student assignments. Robinson deposition, pgs. 34-35.

Ms. Robinson and Lyric have since moved, and Lyric is back at Central High School. Robinson deposition pgs. 14-15, 20. For this reason, any claims related to McClellan High School are moot.

Ms. Robinson also claims that the LRSD discouraged Lyric from taking advanced placement courses when she returned to Central High. Lyric testified, however, that it was her decision to forego AP classes in her sophomore year because her mother was having medical problems and she was trying to reduce the pressure on her. Exhibit 6, Louden deposition, pgs. 10-11.

Lyric feels like she got a good education in the LRSD and is prepared for college. Louden deposition, pgs. 6-7. She will graduate from Central High School in May of this year. Any claims for prospective relief against the LRSD will be moot upon Lyric's graduation.

**Lakesha Robinson Smith (Lakesha Doe).**

Like Ms. Robinson, Ms. Smith's claims will soon be moot. But, again, even if not moot, the testimony does not support her allegations.

Ms. Smith alleges that her son Dezury Ashford (Dennis Doe) was subjected to false discipline in 2014-2015, and unsuccessfully attempted to enroll in a school that was not classified academically distressed. She also claims that his schools are "unequal facilities." Dezury presently attends Central High School. Central High School is one of the schools that the Plaintiffs characterize as a "top-end" facility. Exhibit 21, Plaintiffs' answer to interrogatory 1(b). Accordingly, these plaintiffs have no standing to pursue their claims about discrimination in school facilities.

Similarly, Dezury has no standing to obtain prospective relief about discipline meted out at J.A. Fair High School, because he no longer attends Fair. Dezury's claims about unfair discipline are moot.

9

Finally, as already noted, Dezury's claims are altogether moot because he is set to graduate from high school on May 25. He knows of nothing that would prevent him from graduating. Exhibit 8, Dezury Ashford deposition, pg. 59. By the time this motion is submitted for decision, Dezury will not be a student in the LRSD.

**Ida Pettus.**

Ms. Pettus' sole allegation in the Amended Complaint is that her grandchildren, Lazareous and Ezekiel Pettus, have attended schools with inferior facilities and fewer course offerings than Central or Parkview high schools. Am. Compl. ¶¶54C-1 and 54c-2. By stipulation of the parties, Ezekiel's claims are to be dismissed.

Ezekiel and Lazareous Pettus attend J.A. Fair High School, although they live in the Hall High School zone. Their mother transports them each morning to Southwest Little Rock, where they board a bus to Fair.

Pettus complains that Lazareous, who was in the band, was required to buy drumsticks. She also says that Dunbar, which the Pettus children attended in middle school, is not as well lighted as Forest Heights and does not have a STEM program, that the desks at Dunbar are not updated and the classrooms were overcrowded. She says that their elementary school, Geyer Springs Elementary School, was not in good condition. Exhibit 12, Ida Pettus deposition, pgs. 46-52.

Ms. Pettus admits that grandson Ezekiel was briefly admitted to Central High School. This changed, apparently after a Facebook photo of Ezekiel holding

10

what appeared to be a handgun came to light. Ida Pettus deposition, pg. 65 and exhibit 13, Lazareous Pettus deposition, pgs. 25-29, exhibits 1, 4 and 5.

Ms. Pettus' complaints focus on Dunbar Middle School, but her grandchildren no longer attend Dunbar. She offered no criticism of the facilities or resources available at their present school, J.A. Fair High School. Summary judgment should be granted to the Defendants on Ms. Pettus' claims.

**Latasha Covington (Tasha Covington).**

Latasha Covington claimed that her children are assigned to Cloverdale Middle School, and that it has inferior facilities. Am. Compl. ¶ 54A. But both children now attend Henderson Middle School. Exhibit 10, Covington deposition, pg. 6. Ms. Covington asked about placing daughter Amoryea Love (Amoxyea in the Amended Complaint) in Pulaski Heights Middle School, but was told that there was a long waiting list, so she did not pursue the matter. Covington deposition, pgs. 36-37. She complains that Henderson Middle School is old and outdated. Covington deposition pg. 4. Ms. Covington does not seem to have any more specific complaints about Henderson Middle School's facilities.

Ms. Covington's testimony does not support any claim of discrimination. The most that can be said is that her children attend school in a facility that is "old and outdated." This does not state a valid claim.

**Christy Winfrey (Christy Doe).**

Ms. Winfrey is the mother of Chase and Christian (Chase Doe and Christian Doe). Chase attends Henderson Middle School. Exhibit 13, Christy Winfrey

deposition, pg. 83.  Chase Winfrey does not feel he is treated differently than white students at Henderson.  Exhibit 15, Chase Winfrey deposition, pg. 15.

Christian Winfrey attends Romine Elementary School. He is in the second grade.  Ms. Winfrey has experienced significant behavior issues with Christian.  She is unhappy with the way these problems were handled in first grade at Baseline Elementary School.  Christy Winfrey deposition, pgs. 22-83.  But, Ms. Winfrey believes that Christian's current teachers at Romine Elementary School are great, and that "what is saving him education wise" is the team of teachers working with him at Romine.  Christy Winfrey deposition, pgs. 84-85.

Christy Winfrey does not believe that anyone in the LRSD is intentionally trying to harm her children because they are African-American, and she does not believe that the individuals she has dealt with have intended to discriminate based on race.  Christy Winfrey deposition, pgs. 104-105.   The Winfrey's testimony does not support an equal protection claim.

******

Whether taken individually or in the aggregate, the Plaintiffs' testimony does not support their allegations about discrimination in admissions, facilities or programs.  Several successfully transferred their children to the school of their choice.  One, Ronyah Beyah, could have sent one of her children to Forest Heights, which the Plaintiffs portray as a sort of Taj Mahal, but chose Dunbar Middle School instead.  Sonya Lampkin's son Jaylen graduated from Forest Heights and is attending the high school of his choice, Parkview High School.  But for his own

behavior, Ezekiel Pettus could have attended Central. Lyric Louden and Dezury Ashford have attended Central.

None of the Plaintiffs can say, based on anything other than second hand information or suspicion, that the schools with a larger percentage of white students have consistently better facilities or programs. The Plaintiffs' testimony does not demonstrate a pattern that might evidence some race-based policy or practice, and there is no direct evidence of a district policy that discriminates against the Plaintiffs based on their race.

### V. The Condition of LRSD School Facilities does not Demonstrate Race-Based Decision Making

The Amended Complaint identifies six LRSD schools, out of more than 40, that are claimed to be deficient: Cloverdale Middle School, Dunbar Middle School, Wilson Elementary School, Henderson Middle School, McClellan High School, Baseline Elementary School, and Washington Elementary School. Am. Compl. ¶¶ 63-66, 71, 74, 75. But only Henderson is presently attended by any of the Plaintiffs or their children: Ms. Covington's children and one of Ms. Winfrey's children.

The Plaintiffs are apparently unable to personally offer any useful comparisons of their schools to so-called white schools. Instead, they rely on select LRSD records, and the photographs and observations of an architect, John Poros, who they consider to be an expert. Professor Poros offers observations based on brief tours of 14 LRSD schools. The list of schools toured was provided to Poros by

the Plaintiffs' lawyers.  Exhibit 18, Poros deposition, pgs. 24-25. Poros spent about an hour at each of the schools. Poros deposition pg. 57.

Poros did not examine Dunbar Middle School at all, so there's no evidence to support the Plaintiffs' claims that it is deficient.  Poros judges Henderson Middle School to be in need of replacement doors, windows, and finishes.  He criticizes the design because classrooms receive no natural light, and says much of the casework and equipment is old and needs replacement.  Exhibit 19, Poros Report at 73.  But Poros did not examine all of the district's middle schools.  So, while the Plaintiffs characterize the alleged deficiencies at Henderson as evidence of a racial disparity, they completely ignore the condition of Pulaski Heights Middle School – the middle school with the highest percentage of white students enrolled.  Exhibit B to Exhibit 1, Declaration of Linda Jenkins. The Fanning Howey report prepared for the LRSD ranked Pulaski Heights Middle School near the bottom in the facilities condition index measure – which compares the cost of required repair against the value of the building.  Exhibit 17, Fanning Howey report at 23.[3]

The Fanning Howey report makes clear that the condition of facilities in the LRSD runs the gamut, with only one clear theme:  the newer schools tend to be in better condition, and are designed consistent with modern standards.  Fanning Howey observed that, overall, LRSD buildings have been well maintained, with most needs simply a result of age.  Fanning Howey report at 3.  The alleged

---

[3] The full report was admitted into evidence March 23, 2016, as LRSD exhibit 19.

deficiencies at Henderson, or any other school, prove nothing about discrimination. They speak to the age or design of the buildings.

Nor does construction of a new middle school in West Little Rock permit an inference of discriminatory purpose. Building such a school was identified by Fanning Howey as a phase I priority, and was proposed and approved by the majority black LRSD board. Fanning Howey report at 89-90. The Plaintiffs may quibble over the timing of the project but, as testimony at the preliminary injunction hearing established, the project was able to move forward more quickly because it appeared that an existing building provided an opportunity to save money. Meanwhile, there's no dispute that the LRSD is moving forward with the rest of phase I – construction of a new high school in the southwest portion of the city, and renovation of the existing McClellan High School to replace Cloverdale Middle School. Again, the Plaintiffs may quibble over timing or details, but planning to spend tens of millions of dollars to replace schools attended primarily by minority students with state of the art facilities is not evidence of discriminatory intent—if anything, it shows that there is *no* discriminatory intent.

Nor does the LRSD's capital improvement program support an inference of discrimination. The capital projects summary produced by LRSD in discovery reflects that since 2010 the District has spent more than six million dollars at Cloverdale Middle School alone. Exhibit 16. By contrast, less than one hundred thousand dollars was spent at Pulaski Heights, which has the highest percentage of students listed as white. Exhibit 16 reflects that the lion's share of the spending at

15

the high school level has been at the high schools with the highest concentrations of black students: J.A. Fair, McClellan, and Hall.

The District's capital improvement expenditures are inconsistent with facilities programs meant to favor white students over black students. The evidence demonstrates conclusively that there is no actionable discrimination and no discriminatory intent or purpose.

The sum and substance of the Plaintiffs' proof will be that there are old and new facilities in the LRSD. Some are in better condition than others and, predictably, the newest ones are generally in better condition. Some require more work than others. Some should be replaced and, indeed, LRSD is moving forward with plans to do so. Exhibit 20, deposition of Kelsey Bailey, pg. 33. The evidence does not support any of the Plaintiffs' claims—to the contrary, the evidence supports summary judgment for the Defendants.

## CONCLUSION

Math, demographics and age explain the circumstances about which the Plaintiffs complain. A large majority of the LRSD's students are black, and consequently any action the district takes is likely to have a greater impact on black students and their parents. Most school assignments are based on attendance zones – which have been in effect for years. This means, of course, that students who live in the zone for an older school will attend that school, regardless of race. The existence of these older schools is not evidence of intentional discrimination.

New schools meeting modern standards have been built where population growth is the greatest.  These new schools were proposed by majority African-American schools boards and recommended by Fanning Howey.

Nor do the Plaintiffs' individual grievances demonstrate district approved discrimination.  Taking their testimony as true, the Plaintiffs can't establish anything more than a belief that they have not been treated fairly.  They have not provided admissible evidence of statements, events, policies or practices that suggest racial animus or motivation.

Because the Plaintiffs cannot demonstrate intentional discrimination that is part of a practice, policy or custom of the LRSD, the Defendants are entitled to summary judgment.

Respectfully submitted,

LESLIE RUTLEDGE
ATTORNEY GENERAL


By:   /s/ *Patrick Hollingsworth*
     LEE RUDOFSKY, Solicitor General
     Arkansas Bar No. 2015105
     (501) 682-8090
     ROSALYN L. MIDDLETON, Assistant
      Attorney General
     Arkansas Bar No. 2001257
     (501) 682-8122
     PATRICK HOLLINGSWORTH, Assistant
      Attorney General
     Arkansas Bar No. 84075
     (501) 682-1051
     323 Center Street, Suite 200
     Little Rock, AR  72201-2610
     Facsimile: (501) 682-2591
     lee.rudofsky@arkansasag.gov
     rosalyn.middleton@arkansasag.gov
     patrick.hollingsworth@arkansasag.gov

     Attorneys for Johnny Key in his official capacity

## **CERTIFICATE OF SERVICE**

    I, Patrick Hollingsworth, hereby certify that on May 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, AR  72206
Email:  johnwalkeratty@aol.com

Robert Pressman
22 Locust Avenue
Lexington, MA  02421
Email:  ehpressman@verizon.net

Austin Porter
PORTER LAW FIRM
323 Center Street
Little Rock, AR  72201
Email:  aporter5640@aol.com

Gale B. Stewart
1 River Oaks Circle
Little Rock, Arkansas 72207
Email:  letchworth1942@comcast.net

Christopher Heller (#81083)
Friday, Eldredge & Clark
400 West Capitol, Suite 2000
Little Rock, AR 72201-3493
(501) 370-1506
heller@fridayfirm.com

                               /s/ *Patrick Hollingsworth*
                               Patrick Hollingsworth