IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**PARENT PLAINTIFF LAKESHA**                          **PLAINTIFFS**
**DOE and her minor child**
**DENNIS DOE; et al.**

v.                  **CASE NO. 4:15-CV-0623 DPM**

**MICHAEL POORE, in his**
**official capacity, et al.**                                       **DEFENDANTS**

## TRIAL BRIEF OF JOHNNY KEY, IN HIS OFFICIAL CAPACITY

Johnny Key is a defendant in a very limited capacity. He is the Arkansas Commissioner of Education, but his capacity as a party in this case is limited to his role as the person who exercises the authority of the Little Rock School District Board of Directors in the day-to-day governance of the Little Rock School District. ECF No. 101. His interests as a party are therefore aligned with the interests of the LRSD.

The principal legal issues in this case have already been extensively briefed. This brief will touch on three issues of particular significance, including one that has not been briefed – remedies.

### I. Standing

Standing is a threshold issue, which the Plaintiffs must plead and prove. *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1036 (8th Cir. 2000). Each Plaintiff is required to prove that he or she has suffered an injury, that the injury was caused

by the LRSD, and that the injury is likely to be redressed by a favorable ruling. *Id.* at 1037. Where an injunction is requested they must also show that they face a threat of ongoing or future harm. *Id.* The Plaintiffs' claims may not rest upon the rights of third parties, and must present more than "'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474-475 (1982).

After this year's graduations four sets of parents and children have ostensibly live claims. Ida Pettus and her grandson Lazareous, Latasha Covington and her children Amoryea Love and Auxzavian Love, Sonya and Jaylen Lampkin, and Christy, Chase and Christian Winfrey. They do not have standing because their individual circumstances are not "fairly traceable to the government conduct [plaintiffs] challenge as unlawful." *Allen v. Wright*, 468 U.S. 737, 757 (1984).

The Amended Complaint alleges that: (1) facilities attended by African-American students are inferior to those attended primarily by white students (Am. Compl. at ¶¶63-80, ECF No. 6); (2) creation of the Forest Heights STEM Academy resulted in fewer black middle school students at the school (*Id.* at ¶¶ 81-92); (3) there were delays in providing some schools with computers at the beginning of the 2014-2015 school year (*Id. at* ¶¶93-97); (4) Central High School's attendance zone is gerrymandered to favor admission of white students (*Id.* at ¶¶ 98-104); (5) Central High School and Parkview Magnet High School offer more advanced

placement classes than the other high schools, students at other high schools are not offered a chance to travel to Central to take these classes, and there are too few black students in Pre-AP and AP courses at Central (*Id.* at ¶¶105, 107-111); (6) the students assigned to Hamilton Academy, an alternative learning environment school, are disproportionately black, and the school is not well run (*Id.* at ¶¶112-117); (7) LRSD's faculty is *de facto* segregated (*Id.* at ¶¶118-126); (8) planned and funded off-campus activities for students at McClellan High School were cancelled (*Id.* at ¶ 127); (9) Central High School's football program receives a greater amount of "resources" than the other high schools (*Id.* at ¶ 128); (10) African-American students are more likely to be subjected to discipline (*Id.* at ¶¶ 129-131); (11) the District provides "grossly insufficient resources and educational materials" for black students (*Id.* ¶ 132); and (12) white students from outside of the LRSD are given priority in admissions to Central High School and Parkview High School (*Id.* at ¶ 133).

In contrast to their written allegations, the Plaintiffs complained in their depositions about circumstances that resemble the ordinary travails of parents and students navigating a public school system. For instance, Ida Pettus is upset that Lazareous had to pay for drumsticks in band, and that she had to pay for summer school for one of her grandsons. Lazareous was suspended once or twice for fighting in middle school. Christy Winfrey faces challenges with her youngest son, Christian, who has behavioral problems. Ms. Covington's son was suspended once in 2014 for fighting, and she thinks his current school is "old and outdated." Ms.

3

Lampkin's son attends one of the so-called preferred high schools, and has attended Forest Heights STEM Academy.

It is expected the evidence will show that that no Plaintiff was denied admission to one of the "preferred" schools, lacked "computer capacity," wanted to attend Central High and was denied in preference to a white student[1], or asked to take an advanced placement course and was denied. None of the student plaintiffs attend the schools most criticized in the Amended Complaint, and no one complained of having too few African-American teachers. These circumstances do not establish that the Plaintiffs have been personally affected by the constitutional issues identified in the Amended Complaint.

In effect, the Plaintiffs ask this Court to view them as representatives of others who they posit may have been affected by the conditions alleged. This is not, however, a class action case. Principles of standing require that a plaintiff "assert his own legal rights and interests, and [the plaintiff] cannot rest his claim to relief on the legal rights or interests of third parties." W*arth v. Seldin*, 422 U.S. 490, 499 (1975).

## II.  Alleged Intentional Discrimination.

The Plaintiffs bear the burden of proving that each of the acts of which they complain was motivated by unlawful discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977). They

---

[1] Lazareous Pettus says he was on a waiting list for Central and "one lady" at Central told him the waiting list was "too long."

4

must also prove that these acts were carried out by an LRSD official with final authority to establish policy with respect to the challenged action. *Bolderson v. City of Wentzville, Mo.*, 840 F.3d 982, 985 (8th Cir. 2016). So, for instance, Lazareous Pettus must show that his band teacher made him, but not white students, pay for his drum sticks instead of giving him free ones, and he must show that his band teacher had final authority to make this decision.

For their broad propositions about such things as facilities, student discipline and staffing, the Plaintiffs rely in large measure on statistics such as enrollment by race in selected schools, disciplinary action by race, advanced placement enrollment by race, and faculty percentages by race. But more is required to prove discriminatory intent. Official action is not unconstitutional solely because it results in a racially disproportionate impact. *Arlington Heights,* 429 U.S. at 265. In a school district in which 64% of all students are African-American and 14% are Hispanic, the District's neutral decisions and policies will often, and as a simple matter of math, affect a greater number of minority students. This fact necessarily informs decision makers that their acts sometimes have a greater effect on minority students. Simply knowing that a decision will affect one group more than another, however, does not prove intent or purpose to discriminate. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

The Plaintiffs try to equate so-called racial imbalances in the District with intentional segregation. But the Constitution does not require racially balanced schools. *See Milliken v. Bradley*, 433 U.S. 267, 281 n. 14 (1977). "Racial imbalance

5

is not segregation." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 750 (2007)(Thomas, J., concurring). Segregation, in the context of public schooling, "is the deliberate operation of a school system to 'carry out a governmental policy to separate pupils in schools solely on the basis of race'." *Id.* at 749. Again, the Plaintiffs must show that any lack of racial balance is due to intentional discrimination. They cannot prove this.

### III.   Remedies.

Even when an Equal Protection violation has been established, the remedy must be designed to address the specific violation found. *Freeman v. Pitts*, 503 U.S. 467, 489 (1992). Any remedy must "take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Milliken*, 433 U.S. at 280-81.

What are the remedies that the Plaintiffs would have the Court impose? The Amended Complaint is not specific, but a recent filing provides clues. Responding to Michael Poore's summary judgment motion, the Plaintiffs say they would like: (1) an order enjoining the opening of the new Pinnacle View Middle School to seventh and eighth grade students, (2) adoption and court approval of a "constitutionally adequate facilities plan for the LRSD," and (3) an injunction "ending the unconstitutional practices alleged in the Amended Complaint with relief addressing areas including school facilities, "computer capacity" and high school attendance zones." Brf. in Supp. of Pl.s' Opp. to Separate Def. Michael Poore's Mot. for Summ. J. at 37-38, ECF No. 146.

It appears as though the Plaintiffs are asking the Court to once again control and oversee multiple and wide-ranging aspects of the District's operations. There is no longer a system of *de jure* segregation to be dismantled – that task has been completed – and the broad, seemingly infinite, remedies that might be available in such a case cannot be squared in this case with the individualized nature of the Plaintiff's circumstances.

System-wide remedies of the kind mentioned by the Plaintiffs may not be imposed unless the constitutional violation has a system-wide impact. *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 420 (1977). These Plaintiffs' individual complaints about discrete experiences do not justify remedies that reach across the District to control fundamental aspects of the District's operations.

In addition, the Plaintiffs have no standing to seek system-wide remedies. The redressability requirement of standing demands that it be "more than merely speculative" that the relief requested in some way remedy the alleged harm to the Plaintiffs. *Young America Corp. v. Affiliated Computer Services (ACS), Inc.*, 424 F.3d 840, 845 (8th Cir. 2005). The Plaintiffs have never clearly articulated what they want, but the broad district-wide remedies they seem to request do not help them individually. Am. Compl., p. 72. For example, the Amended Complaint requests unspecific relief concerning the Hamilton Academy – but none of the student plaintiffs attends Hamilton Academy. Nothing that has been requested addresses Christy Winfrey's challenges with Christian's education or Lazareous Pettus' drumsticks or summer school costs. We do not expect to see any Plaintiff

7

demonstrate that they will be helped in some way by changing attendance zones or altering the way that advanced placement classes are offered.

### A. Facilities

As demonstrated in the summary judgment filings, only three of the remaining student plaintiffs attend a school that the Plaintiffs claim is defective – Henderson Middle School.[2] But they do not ask to solve a problem with the Henderson building; they ask the Court to deny other LRSD students, of all races, the opportunity to attend Pinnacle View Middle School. ECF No. 146, pp. 37-38. Indeed, as students of a school classified as academically distressed, these student Plaintiffs already have a right to transfer to a non-distressed school. ARK. CODE ANN. § 6-18-227. The remedy they seek would assure they have no chance to transfer to the District's newest middle school.

A court supervised "facilities plan" for the LRSD goes far beyond remedying defects at the only allegedly deficient school attended by one of the student Plaintiffs, and thus exceeds the scope of the claims for which they have standing. And it intrudes on the District's legitimate efforts to address its facility needs.

The District is repairing and improving its schools, and is in the planning and design stages of building a new high school – a school approved by a majority African-American board, in a location approved by the same board. Funding is always finite, and there are limits to the amount of construction and remodeling that can be done at the same time by any school district. LRSD cannot unilaterally

---

[2] Amoryea Love has since matriculated from Henderson and will be attending high school next year.

raise money by increasing taxes because new school taxes require an affirmative vote of LRSD voters. Ark. Const. Art. Art. 14, §3(c)(1). Nor is there authority for this Court to order an increase in taxes – even in the extreme (and inapposite) circumstance of dismantling a so-called dual school system, a district court may not impose a tax increase in order to pay desegregation related costs where there are other, less intrusive alternatives.[3] *Missouri v. Jenkins*, 495 U.S. 33 (1990). "Local officials should at least have the opportunity to devise their own solutions to these problems." *Id.* at 52. The LRSD has a plan, but it cannot be implemented overnight. The LRSD should be left to implement its plan.

### B. Computer capacity.

The Plaintiffs do not articulate what is deficient in "computer capacity" or how they propose to address the issue. ECF No. 146, p. 38. This much is clear: a remedy cannot be justified unless one or more of the Plaintiffs demonstrates that he or she received less access to computer resources than similarly situated students of other races, and that this situation exists across the LRSD. Any order addressing "computer capacity" beyond the needs of the individual plaintiffs would exceed the scope of remedies that are permissible.

### C. High school attendance zones.

Again, it is not clear what the Plaintiffs want. Their summary judgment filings suggest that they believe the attendance zone for Central High School is

---

[3] In fact, it is not clear whether a court can validly command a district to raise taxes when the district has no power to do so under state law. In *Jenkins* it appeared that taxes could be increased by the school board, subject to state approval.

gerrymandered and they would like to see some unspecified change in the attendance zone. But even if they could somehow show prohibited discrimination in the attendance zone design, none of the Plaintiffs appears to have been affected. It is expected that the evidence will show that only two of the student Plaintiffs are currently in high school. Jaylen Lampkin is at his desired school, Parkview Magnet School. Lazareous Pettus is attending J.A. Fair High School, which appears to be the school he wishes to attend. Changing Central's attendance zone will not cure any constitutional violation for these Plaintiffs.

### D. Other alleged "unconstitutional policies and practices."

The Plaintiffs' recent filings mention that they would like to see remedies for alleged racial disparities in teaching staff, differences in the percentage of white students and other students enrolled in advanced placement courses, alleged disparities in disciplinary outcomes for African-American students, and heightened admission standards imposed when Forest Heights Middle School was converted to a STEM academy. ECF No. 146 at 37-38, Am. Compl., p. 72. It is impossible to specifically address the permissible scope of the remedies requested, because the Plaintiffs have not described what they want.

It is worthwhile to note that the LRSD's practices in conducting and staffing advanced placement programs, encouraging minority participation in advanced placement programs, and addressing racial disparities in student discipline, were all addressed when the District was declared substantially unitary in 2002. *Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 964-965, 968-971 (8th Cir. 2004). The

District was found to be unitary in these areas. So far, the Plaintiffs have not explained what has changed since 2002.

If what the Plaintiffs want is a separate set of race based rules to remedy alleged disparities, their demands must yield to established constitutional principles. Where a school district is unitary, or has never operated a dual system, official action that uses race as a primary factor in public school programs is inherently suspect. *See Parents Involved*, 551 U.S. at 725-726. Classification based on race "carries the danger of perpetuating the very racial divisions the polity seeks to transcend." *Schuette v. Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary*, ___ U.S. ___, 134 S.Ct. 1623, 1634–35 (2014). Consequently, even in the unique circumstances of remedying a dual system – which does not exist here – a court may not order specific, fixed racial balances. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S.1, 23-24 (1971). But this is apparently what the Plaintiffs would like the Court to order with respect to teachers and programs.

Similarly, the District cannot make special exceptions, based on race, for admissions standards for the Forest Heights STEM Academy, for discretionary admission to other "preferred" schools, or for advanced placement courses, because admissions standards based on race are also suspect. *Parents Involved*, 551 U.S. 701; *Gratz v. Bollinger*, 539 U.S. 244 (2003).

The only remedies potentially available to the Plaintiffs are remedies that address their specific and individualized circumstances. If Christy Winfrey is not

receiving proper assistance with Christian's education, and if that is found to be a product of intentional district sponsored discrimination, the Court may order some special education assistance for her. If Lazareous Pettus faces the prospect of paying for summer school and the Court finds this is a product of intentional district sponsored discrimination, the LRSD could be ordered to provide Lazareous with free summer school. If one of the student Plaintiffs wants to take an advanced placement course and qualifies, but because of intentional district sponsored discrimination is unable to, the Court can order that he be provided the opportunity to take the AP course. Remedies that go beyond addressing the individual parties' specific circumstances, however, exceed the scope of what's permissible.

## IV.   CONCLUSION

The Plaintiffs propose that this Court order and monitor unspecified changes to the way the LRSD conducts its business. But the Plaintiffs cannot clear the most basic hurdles. Their almost exclusive reliance on racial imbalance cannot establish intentional discrimination, and on an individual basis the Plaintiffs cannot show they have been personally harmed by the LRSD practices alleged in the Amended Complaint. Judgment should be entered in favor of Key and the LRSD on all of the Plaintiffs' claims.

Respectfully submitted,

LESLIE RUTLEDGE
ATTORNEY GENERAL


By:   /s/ *Patrick Hollingsworth*
     LEE RUDOFSKY, Solicitor General
     Arkansas Bar No. 2015105
     (501) 682-8090
     ROSALYN L. MIDDLETON, Assistant
      Attorney General
     Arkansas Bar No. 2001257
     (501) 682-8122
     PATRICK HOLLINGSWORTH, Assistant
      Attorney General
     Arkansas Bar No. 84075
     (501) 682-1051
     323 Center Street, Suite 200
     Little Rock, AR  72201-2610
     Facsimile: (501) 682-2591
     lee.rudofsky@arkansasag.gov
     rosalyn.middleton@arkansasag.gov
     patrick.hollingsworth@arkansasag.gov

     Attorneys for Johnny Key in his official capacity

## **CERTIFICATE OF SERVICE**

    I, Patrick Hollingsworth, hereby certify that on June 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record. the following:

                                                      /s/ *Patrick Hollingsworth*
                                                      Patrick Hollingsworth