## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**PARENT PLAINTIFF LAKESHA DOE**　　　　　　　　**PLAINTIFFS**
**And her minor child**
**DENNIS DOE; et al**

**v.**　　　　　　　　**CASE   NO.   4:15-CV-0623**

**DPM**

**MICHAEL POORE, in his Official**　　　　　　**DEFENDANTS**
**Capacity, et al**

### LITTLE ROCK SCHOOL DISTRICT'S TRIAL BRIEF

There are six plaintiffs who are enrolled in the Little Rock School District ("LRSD"): Amoryea and Auxavion Love, Chase and Christian Winfrey, Jaylen Lampkin and Lazareous Pettus.

### FACTUAL BACKGROUND

Poore and Key have presented extensive renditions of the facts in their summary judgment papers. The summaries below relate to the six Plaintiffs who are LRSD students.

**Amoryea Love**

Amoryea Love attended Henderson Middle School last year and is expected to attend Hall High School for the coming school year. She used Chromebook computers while at Henderson. Covington Deposition, p. 42. Amoryea did not have any problems with teachers at Henderson other than her band teacher. Amoryea Love Deposition, p. 7 attached to the Motion for

Summary Judgment as Exhibit I.  The band teacher told her she had to play the clarinet even though it was hard for her to blow into it and she was getting dizzy but he told her she was going to be all right and nothing was going to happen to her.  Amoryea Love Deposition, pp. 7-8. She has no other complaints about her band teacher (Amoryea Love Deposition, pp. 7-8), and she has no complaints about any other teachers in the Little Rock School District or about any of the schools that she has attended in the Little Rock School District. Amoryea Love Deposition, p. 8.  Unless Amoryea Love says something more or different at trial, LRSD is unlikely to present rebuttal evidence.

**Auxavion Love**

Auxavion Love had a teacher at Henderson who he says would give him a behavior document if he answered a question for somebody else.  Auxavion Love Deposition, p. 7, attached to the Motion for Summary Judgment as Exhibit J.  He has had no "school punishment" as a result of the behavior documents, but he has gotten in trouble at home.  Auxavion Love Deposition, p. 8.  None of his other teachers at Henderson or in the Little Rock School District have done anything that he thinks has been unfair.  Auxavion Love Deposition, pp. 7, 9-10.  There is nothing else about his education in LRSD that he thinks was unfair or wrong.  Auxavion Love Deposition, p. 11.  He uses Chromebook computers at school.  Auxavion Love Deposition, p. 5-6.  Unless Auxavion Love says something more or different at trial, LRSD is unlikely to present rebuttal evidence.

**Chase Winfrey**

Chase is twelve years old and goes to school at Henderson. Chase Winfrey Deposition, p. 6, attached to Motion for Summary Judgment as Exhibit O. His extracurricular activities include chess club and mathletes and he can't remember the rest of them. Chase Winfrey Deposition, p. 7. He takes AP or pre-AP classes "for social studies and health science." Chase Winfrey Deposition, p. 8. He never tried to get into any schools other than the ones he has attended. Chase Winfrey Deposition, p. 8.

Chase has not had any discipline problems in any of the schools he attended. Chase Winfrey Deposition, p. 15. He was not treated differently than the white students in LRSD that he went to school with. Chase Winfrey Deposition, p. 15.

When Chase was in fifth grade at Baseline, his younger brother Christian, a first grader, was sometimes put in Chase's class "because of his behavior." Chase Winfrey Deposition, pp. 9-11. Chase believes Christian came to his class at least ten times at Baseline. Chase Winfrey Deposition, p. 11. Even when Christian was in his class, Chase kept doing his schoolwork, did not have any problems finishing his work, and got good grades. Chase Winfrey Deposition, pp. 13-14.

Chase says other students called Christian "stupid, dumb, gorilla, chimpanzee" and other names. Chase Winfrey Deposition, p. 17. When that happened, "the teacher would say 'stop it,' and if the students didn't listen she sent them out of the classroom and told them to go to the principal's office.

3

She was trying her best."  Chase Winfrey Deposition, p. 17.  Chase's teacher tried to teach Christian and did not do anything to indicate she did not want him in her class.  Chase Winfrey Deposition, pp. 17, 19.  Unless Chase Winfrey says something more or different at trial, LRSD is unlikely to present rebuttal evidence.

**Christian Winfrey**

Christian is eight years old and now attends Romine Elementary. (Christian Winfrey Deposition, p. 5, attached to Motion for Summary Judgment as Exhibit P).  Christian started having a lot of behavior problems during his kindergarten year at Baseline.  Christy Winfrey Deposition, p. 19 attached to Motion for Summary Judgment as Exhibit Q.  By Christian's first grade year, his behavior "went from just tearing up homework and screaming and yelling to now we're turning our desk over, throwing chairs.  I remember a glass vase that got shattered in her room because of him, which put everybody in the room in danger."  Christy Winfrey Deposition, p. 23.

Christian has severe anger management problems.  When other students would bother him, "sometimes I would try to yell or hit them. Sometimes I might attack them."  Christian Winfrey Deposition, p. 8.  The only student he didn't have a problem with was his brother.  Christian Winfrey Deposition, p. 9. Christian says other students would sometimes call him ugly or talk about his shoes.  Christian Winfrey Deposition, p. 12.  When a female student hit him, he "did more than hit her. I attacked her."  He said he "attacked a girl, and I put little bruises on her."  Christian Winfrey Deposition, p. 13.

By November of Christian's first grade year he was spending time in his brother's fifth grade class.   Christy Winfrey Deposition, p. 43.   LRSD will present evidence that this was part of an intervention process designed to keep Christian in school rather than suspend or expel him.   When he was put in class with his brother Chase, the teacher gave him "all of the love she had, just like my mama."  Chase Winfrey Deposition, p. 13.

Christy Winfrey resisted LRSD's efforts to have Christian evaluated for special education.  She felt that the school didn't want to deal with Christian's problems and the easiest thing to do was "throw him in special education with other kids with special needs and not have to deal with him."  Christy Winfrey Deposition, p. 37.  LRSD will present evidence of the Special Education services that were provided for Christian.

Christy Winfrey says that Christian was attacked by a female fifth grade student and became very upset.   "He threatened to shoot her.   He also threatened to shoot Mr. Crossley, and he also threatened to shoot Ms. Freeman."  Winfrey "immediately called Pinnacle Pointe, and I had my child admitted into Pinnacle Pointe for acute care."   Christy Winfrey Deposition, p. 48.  That was one of several times Christian went to Pinnacle Pointe during his first grade year at Baseline. Christy Winfrey Deposition, pp. 53-54.  During the second semester of his first grade year, Christian spent "maybe a month" at Pinnacle Pointe.   Christy Winfrey Deposition, p. 56.   Christian was offered various options by LRSD at special education meetings including programs at

Carver and Roberts schools.   Christy Winfrey Deposition, p. 72.   LRSD will present evidence of its significant efforts to meet Christian's special needs.

**Jaylen Lampkin**

Jaylen Lampkin is a student at Parkview High School.   Jaylen Lampkin Deposition, p. 4, attached to the Motion for Summary Judgment as Exhibit F. He was in middle school at Forest Heights when it became a STEM school, and he remained at Forest Heights once it was a STEM school.   Jaylen Lampkin Deposition p. 5.   No one tried to discourage Jaylen from remaining at Forest Heights and he does not know anyone who was discouraged from staying there. Jaylen Lampkin Deposition, p. 5.   Jaylen Lampkin was asked in his deposition if there were times in the LRSD when he thought he was being treated differently from white students and he responded, "No, sir, I don't believe so." Jaylen Lampkin Deposition, p. 7.   Unless Jaylen Lampkin says something more or different at trial, LRSD is unlikely to present rebuttal evidence.

**Lazareous Pettus**

Lazareous Pettus attended Dunbar Middle School for three years and now attends J.A. Fair High School.   Lazareous Pettus Deposition, p. 7, 10. Lazareous played drums in the band at Dunbar when he was in the sixth grade.   Lazareous Pettus Deposition, p. 13-14.   The drums he played were provided by the school but he complains that he had to pay for drumsticks.   He tried to make an argument that "whites" "get the brass" so they "don't really too much have to buy nothing," but he later admitted that other students who

played other instruments provided their own instruments.   Lazareous Pettus Deposition, p. 13-14, 31-32.

Lazareous also claims that a friend of his was abused by a "black security guard" at J.A. Fair High School.  Lazareous Pettus Deposition, p. 14-15.   He then testified that he neither witnessed nor experienced any other discrimination at LRSD.  Lazareous Pettus Deposition, p. 16.  He went on to say, however, that when he was in the first grade at Geyer Springs Elementary School, he was moved from a "class with all whites" into a "black class with nothing but black kids in there."   Lazareous Pettus Deposition, p. 16-18. LRSD's evidence will be that this is a total fabrication because, when Lazareous was in the first grade at Geyer Springs, there was no "all white" class.   There was only one white student in the entire first grade.

Lazareous was enrolled in Advanced Placement classes during the past school year at J.A. Fair, and there are no courses Lazareous wanted to take that were not available at J.A. Fair.  Lazareous Pettus Deposition, p. 25, 60.

## LEGAL OVERVIEW

The issues of mootness, standing (including the gap between the individual Plaintiffs' experiences and the broad allegations of the Amended Complaint), and the required (but absent) proof that LRSD maintains a policy or custom of intentional race discrimination are fully briefed in the summary judgment papers.   Additionally, LRSD adopts Key's trial brief pursuant to Fed.R.Civ.P. 10(c).  One issue which is likely to arise at trial but has not yet been addressed concerns Professor Poros' testimony.

7

Plaintiffs' witness, Professor John Poros, expects to testify as an expert "in architecture and educational planning and design." Poros deposition, p. 33. According to Professor Poros, those are two separate fields of expertise. Poros deposition, p. 33. LRSD does not dispute Professor Poros' qualifications to testify under Federal Rule of Evidence 702 with respect to matters within the field of architecture. LRSD will likely object to any testimony proffered by Professor Poros under Rule 702 that purports to be within his expertise in the field of educational planning and design.

Professor Poros has no formal education in educational planning and design. Poros deposition, pp. 34 – 35. He has written no peer-reviewed articles in that field. Poros deposition, p. 36. More importantly, there are no accepted standards in the field of educational planning and design that Professor Poros used in his assessments of the physical condition or educational adequacy of LRSD's facilities. Poros deposition, p. 36. The following exchange during his deposition illustrates the problem:

Q.      Did you determine that any of the fourteen schools you looked at were inadequate in terms of educational adequacy?

A.      Compared to what standards?

Q.      Well, that's a good question.

A.      Yeah.

Q.      Whether this field has any standards.

Poros deposition, p. 63.

**CONCLUSION**

There is a huge gap between the sweeping allegations of systemic race discrimination dating back to LRSD's unitary status which are set out in the Amended Complaint, and the limited, contradictory, anecdotal and varied descriptions of their experiences in LRSD provided by the student Plaintiffs. The evidentiary and procedural issues at trial are likely to focus on the relevance of testimony to the constitutional issues presented and the sufficiency of evidence to show institutional race discrimination.

Respectfully submitted,

Christopher Heller (#81083)
Khayyam M. Eddings (#2002008)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol, Suite 2000
Little Rock, AR 72201-3493
(501) 370-1506
heller@fridayfirm.com

By:     /s/  Christopher Heller
             Christopher Heller

Attorneys for Defendant
Superintendent Michael Poore,
in his Official Capacity as
Superintendent of the Little Rock
School District

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of June, 2017, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following parties of record:

Lee Rudofsky
Lee.rudofsky@arkansasag.gov

Rosalyn L. Middleton
Rosalyn.middleton@arkansasag.gov

Patrick Hollingsworth
Patrick.hollingsworth@arkansasag.gov

Shawn G. Childs
Schilds@gabrielmail.com

Robert Pressman
ehpressman@verizon.net

John W. Walker
johnwalker@aol.com

Austin Porter
Aporte5640@aol.com

Gale B. Stewart
Letchworth1942@comcast.net


By:    */s/  Christopher Heller*
       Christopher Heller

5821067.1