IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LAKESHA DOE, Parent, *et al.*            PLAINTIFFS

v.            No. 4:15-cv-623-DPM

JOHNNY KEY, In His Official Capacity
as Commissioner of Education and the
LRSD School Board, and MICHAEL
POORE, In His Official Capacity as
Superintendent of the Little Rock
School District            DEFENDANTS

## ORDER

1. The Poore and Key motions for summary judgment are partly granted and mostly denied. The denial, though, is without prejudice.

2. There are some threshold issues. First, some of the students have graduated or left the district. Poore and Key argue that these students and their parents now lack standing, or that their claims are moot. Plaintiffs have not opposed this point. The Court therefore dismisses these particular students and their parents without prejudice.* Second, the three-year statute of limitations. It bars all parents' claims accruing before December 2012. But

---

*They are: Evelyn Fisher, Eshawn Fisher, Alvronia Robinson, Lyric Louden, Lakesha Robinson Smith, and Dezury Ashford.

the children's claims are preserved by Ark. Code Ann. § 16-56-116(a), and, as Plaintiffs argue, at least some claims might be sheltered as potential continuing violations. So, the limitations point doesn't make much real difference. On *res judicata*, the plaintiffs are right that this Court's declaration that LRSD was unitary in several material ways in 2002 doesn't bar claims about decisions made and policies pursued since. LRSD's unitary status is an important fact, but it doesn't stop this lawsuit. Last, no argument is made that the 2014 global settlement in case No. 4:82-cv-866 bars the current claims.

**3.** Poore and Key are entitled to summary judgment on the discipline issues. Taking the record in the light most favorable to the students and parents, there's insufficient evidence to support a judgment that LRSD has a racially motivated policy, custom, or practice of disciplining black students more harshly or differently than white students. The record shows isolated instances involving a few teachers and perhaps principals, generalized feelings of disparate treatment, and some bottom-line numbers from across the district. *№ 146 at 35–36*. All this is insufficient as a matter of law. *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). Because many things influence student behavior, years ago

Brother Wilson rejected similar statistics when the Court declared LRSD unitary in discipline. *№ 3675 at 164–66* in No. 4:82-cv-866. I agree. And the rest of the plaintiffs' proof on this issue is just too thin.

**4.** LRSD's motion is also granted on teacher-assignment issues. Key suggests that where the teachers work is mostly a function of the collective bargaining agreement. Maybe, but the Court doesn't rule on this basis. Instead, Plaintiffs simply haven't offered sufficient evidence to support a judgment that LRSD assigns teachers based on a racially discriminatory custom, policy, or practice. The raw data about the teacher numbers doesn't suffice. *№ 146 at 21–24*. Neither do the remarks heard by Dr. DeJarnette, which (as Poore and Key point out) were made more than ten years and six superintendents ago. No LRSD teacher or other person recently involved has testified that assignments are influenced by the race of students or teachers. *Arlington Heights*, 429 U.S. at 265.

**5.** The core of Plaintiffs' remaining claim is about facilities and other resources, such as school programs. Has LRSD intentionally discriminated based on race through district policy, custom, or practice in providing them?

-3-

№ 166 at ¶ 9; Plaintiffs' Trial Brief at 3–11,** № 163 at 3–4. And there's an embedded issue about the attendance zone for Central High School. Though Poore and Key make strong arguments about traceability and on the merits, the Court concludes that it can make a better judgment on the facilities/resources claim after seeing and hearing the witnesses, plus considering all the documents with the context that only live testimony, as well as oral argument, will provide.

**6.** Plaintiffs' motion for more trial days is granted in part and mostly denied. The Court now has the benefit of all the parties' pretrial filings to help in evaluating how much time is needed to fairly present the case. We don't need the fifteen requested days. Two days of proof are in. If we all proceed efficiently — with a steady focus on the key facts about facilities and programs, especially in recent years — this case can be well tried in about six more days. The Court is confident that the experienced and able lawyers on the docket can accomplish this. The Court allocates plaintiffs twenty-five hours for direct and cross examination of all witnesses. Defendants are

---

**Notwithstanding standard practice, Local Rule 5.5(f), the Court directs plaintiffs to file their trial brief and the Clerk to accept it, so that the record is complete.

entitled to the same, though they appear, based on their witness lists, to require much less.

Here's the trial architecture. The parties' good pretrial briefing eliminates the need for extended openings. Instead, the Court requests a daily ten-minute mini-opening from each side: Sketch the ground you will cover with each witness that day. Inform opposing counsel by noon each day who will be called on the following day. Each side will have one hour for a comprehensive closing argument. We'll start at 9:30 a.m. on Tuesday, July 18th, and 8:30 a.m. thereafter, unless the Court orders otherwise. On this schedule, Plaintiffs should be able to complete their case by the close of business on Friday, July 21st. We'll probably spill over into the following week for Defendants' case and closings, and as needed for unforeseeable circumstances.

To keep things moving at trial, the Court directs counsel (or their representatives) to meet in person, review all proposed exhibits, and agree on as many as possible, on a mutually convenient date before July 18th. Please address Key's objections, № 167, at this meeting. Be prepared to inform the

Court about agreed exhibits when we start on July 18th. We'll handle any disputed documents as the issue arises.

* * *

Motions for summary judgment, № 126 & 129, partly granted and mostly denied without prejudice. Motion to extend the length of trial, № 158, partly granted and mostly denied.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

7 July 2017